THE PROPOSED 2ND AMENDED COMPLAINT.
AS EX: 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.    20-cv-02516-RBJ-KMT

(To be supplied by the court)

Khalfan Khamis Mohamed        , Plaintiff

v.

Jones, Nurse, Ind. and Off. capacities      ,

Huddleston, Nurse, Ind. and Off. capacities    ,

Osagie, Physc. Asst., Ind. and Off. capacs. as to delib. indiff. claim.

Brush, officer, Ind. and Off. capcs. as to 1st. amend. Defendant(s). See attached

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN - 1 2021

JEFFREY P. COLWELL
CLERK

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

### PRISONER COMPLAINT

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

1

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Khalfan Khamis Mohamed, Reg.#44623-054, U.S.P., MAX P O Box 8500,
(Name, prisoner identification number, and complete mailing address)

Florence, CO 81226-8500
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____  Pretrial detainee
____  Civilly committed detainee
____  Immigration detainee
____  Convicted and sentenced state prisoner
✔   Convicted and sentenced federal prisoner
____  Other: (*Please explain*) _____

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1: Jones, Nurse, not known
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✔ Yes ____ No (*check one*).  Briefly explain:

He was on duty and employed by the BOP at the ADX
in all relevant times.

Defendant 1 is being sued in his/her ✔ individual and/or ✔ official capacity.

2

DEFENDANTS:

Espinoza, Officer, Ind. capacity.

Miller, Officer, Ind. Capacity.

Murton, Lieutenant, Ind. Capacity.

Armijo, Lieutenant, Ind. Capacity.

Unite States of America.

NOTE 1: Defendants and their capacities: In this Second Amended complaint, nine defendants are named: the three medical staff: Jones, Huddleston and Osagie in the three deliberate indifference claims, are each respectively, sued under both, official and individual Capacities. However, Osagie in the "failure to entervine" claim is only sued on his individual capacity.

The rest of the individual staff-defendants, with exception to officer Brush, in the First Amendment claim, are each sued on individual capacity, respectively. However, Brush, is sued on both, official and individual capacities in the First Amendment claim.

As for relief: I am only seeking compensatory relief on individual defendants on their individual capacities. I'm not suing the u. states through Bivens, for damages based on alleged wrongs of its employees. However, I use Bivens in seeking injunctive reliefs, on the 3-medical claims claims 8- through 10, and claim seven; first amendment claim.

The u. states is a defendants in the last five claims: tort claims...

3.

Defendant 2: Huddleston, Nurse, not known
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes ___ No (*check one*).  Briefly explain:

He was on duty and employed by the BOP at the ADX in all relevant times.

Defendant 2 is being sued in his/her ✓ individual and/or ✓ official capacity.

Defendant 3: Osagie, Physician's Assistant, not known
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes ___ No (*check one*).  Briefly explain:

He was on duty and employed by the BOP at the ADX in all relevant times

Defendant 3 is being sued in his/her ✓ individual and/or ✓ official capacity.

## C.   JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___   42 U.S.C. § 1983 (state, county, and municipal defendants)

✓   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

___   Other: (*please identify*) 28 U.S.C § 1346 (b); 1346 (b) (2); 1331.
Injunctive Relief : 28 U.S.C. § 2283 & 2284, and Rule 65 of F.R.Civ.Proc.
The U.S. waives Sovereign immunity under 28 §§ 2671-2680.

8

B. DEFENDANTS' INFORMATION:

Defendant 4: Brush, officer, not known.
Ind. and Off. capacities as to the first Amendment claim.
He was on duty and employed by the BOP at the ADX
in all relevant times.

Defendant 5: Espinoza, Officer, not known.
Ind. capacity.
He was on duty and employed by the BOP at the ADX
in all relevant times.

Defendant 6: Miller, officer, not known.
Ind. capacity.
He was on duty and employed by the BOP at the ADX
in all relevant times.

Defendant 7: Murton, Lieutenant, not known.
Ind. capacity.
He was on duty and employed by the BOP at the ADX
in all relevant times.

Defendant 8: Armijo, Lieutenant, not known.
Ind. capacity.
He was on duty and employed by the BOP at the ADX
in all relevant times.

Defendant 9: the United States of America.

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the aate(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   EXCESSIVE FORCE AGAINST OFFICER BRUSH

Supporting facts:

1- The term "my cell" in all bellow mentioned allegations, unless stated otherwise, shall refer to cell # 108, Range A-Lower, in C-Unit, here at the ADX. That is for all dates between 8·19·2018 and 8·23·2018, while the "my cell" shall refer to cell # 406, Range B-upper in the same Unit for all dates from 8·25·2018 on wards. That is because, I was housed in cell 108 untill the evening of 8·24·2018, when I was moved to cell 406.

2- In the morning of monday of 8·20·2018 at the breakfast tray, I started and declared my peaceful protest in the way of Hunger Strike ("H·St") while I was housed in cell 108.

3- I sent several written requests to some senior staff members here at the ADX, declaring my H·St. This including, the unit Manager, Mr. Pockor, the ADX's medical director, Dr. Oba, along with the Physician Assistant ("PA"), who was also my long time medical provider, Osagie, and to one of the ADX's high-level SIS official. I also verbally, told the C-unit officer of my H·st.

4- The main purpose of informing these staff of my H·St. was to give the ADX's notice, so I could be afforded all necessary medical attentions with accordance to the BOP's program statements.

5- H·St. does not violate any of the BOP's policies or regulations. Since early 2000's I have gone in more than 10-different H·Sts. However, I have never been disciplined for violating any policy as a result of my H·St.

6- It is my practice in all H·sts, including that one, to refrain from eating and drinking any thing, apart from some water, even before I declares my H·st. In that H·St, my last meal I took, was at the dinner time in 8·19·2018.

4

## D. STATEMENTS OF CLAIMS:

7- On evening of 8.22.2018, at the dinner tray, I had missed a total of 9-consecutive trays. The BOP's H.st. policy requires the medical staff to perform the initial H.st. medical assessment ("M.A.S.") once a H.str. prisoner misses his 9th consecutive meals and in some cases, the assessment may be performed even earlier. No such assessment were performed on me in that H.st.

8- Also, in the same evening, the case manager, Carlson, came to me and said that the unit manager, Pocker, had received my request that I sent him declaring my H.st., and he said that the unit officers, Lieutenant ("Lt") ARMIJO, and the unit Team are informing the warden's office, the captain, and the medical staff on my H.st., and that every one was aware of my H.st., ever since I started refusing trays on monday morning, 8.20.2018.

9- Next morning of 8.23.2018 I wake up feeling very weak, dizzy, tied and with heavy headache. I had missed 10- consecutive trays by that time, but there was no M.as. performed on me.

10- At the lunch time, after refusing the 11th consecutive tray, the three unit officers: MILLER, Baca and BRUSH wanted me to submitt to handcuffing so they could remove my food-commissary items. BRUSH told me that since I had refused 11-consecutive trays, they had to remove my personal food items. I submitted to handcuffing.

11- The BOP's program statement requires the removal of food items and drinks from a Hunger striking prisoner's cell after he refuses the 9th consecutive tray. However, the policy does not authorize the removal of the non-food items, such as books, legal materials, cosmetics...etc.

12- The officers escorted me to the range-law library about 30-feet away from my cell. It was around 11:40 A.m.

13- Each of the three officers was physically much bigger than myself. They collectively, would easily make 600+lbs. BRUSH and Baca each was over 200lbs, while MILLER was close to 200lbs. On 8.26.2018, three days later, I weighed at 138lbs.

14- Because I was too weak and dizzy, I couldn't put on my training shoes as I usually do when I go out of my cell. I was escorted to the law library wearing a pair of socks and shower sleepers.

15- The three officers noted my extreme and obvious physical weakness to the extent that Officer Baca, seeing me I could hardly walk and appearing dizzy and sick, asked me as they escorte me to the law library "mohamed, are you OK?", I said "No, I'm not ok." He said "yes, I can see that, you need to eat man!"

## D. STATEMENT OF CLAIMS:

16- Even though I was physically weak, I was in full control of my feelings and emotions. I made sure that I stay calm, peaceful and respectfull to the staff. This has been my behavior in all of my H·sts. I never behaved otherwise.

17- After I was placed in the law library, I could see BRUSH removing almost every thing from my cell as he was putting them in plastic bags.

18- About an hour later, since I was placed in the law library, the three officers came back and BRUSH told me that Lt. ARMIJO wanted me to take off my personal clothes and put on the BOP's-provided khakis. I told BRUSH that the policy does not require a H·st· prisoner not to have personal clothes while he's in H·st· It does not· I asked to speak with Lt. ARMIJO, and BRUSH said ok, and the officers left.

19- About 10-minutes later, the three officers came back and BRUSH told me that Lt. ARMIJO wanted me to be taken to his office so we can talk there. However, because I had previously learned that the staff often beats up prisoners in Lt's office because there is no camera in it, I said "NO, the Lt. can come here and speak with me, or, put me back in to my cell and the Lt. come there and speak with me.

20- At that point, BRUSH said "OK" we take you back to your cell. He then put handcuffs on me, doubled lock the cuffs, and then the three officers started to escort me through the hall-way towards my cell.

21- By that moment, my previous mentioned H·st· symtoms, supra: 9, were worsening rapidly, but I continued to stay calm.

22- As I was escorted, at no time I did became ever released from the restraits, nor did the officer lose their control of my hands. I never moved suddanly, became angry, combative, resistive, attempted to assault any officer, or even raised my voice.

23- When I arrived at my cell, I stopped, thinking that the officers have missed my cell, and looking towards it, I said; calmely and without posing any threat; "here is my cell, you told me that you're going to put me back into my cell".

24- It is a normal practice for a prisoner who is escorted to his cell or to any other destination that he's aware of, to stop at that cell or destination when he and the escorting officers reachs there. It is not normal to do otherwise, nor it's normal or is a policy for a prisoner to ask officers' permission to stop at such known destination or to declare to the officers, that "now I am stopping".

25- At that moment, officer BRUSH immediatelly without any warning nor any need, threw me against the wall in the area between my cell, #108 and cell 107, while he aggressively, maliciously and sadistically

8-

## D- STATEMENT OF CLAIMS:

smashing my head multiple times against the wall, at the same time shouting " stop resisting, stop resisting" while infact I was not resisting at all.

26- BRUSH's above statement was just a pretext that he choce to make up to justify his malicious and sadistic violence. I had previously learned that prison guards regularly uses such similer statements when they unprovokedly beats up prisoners.

27- I never resisted nor showed any sign of resistance, and I had no energy in me even if I wanted to resist. I said as loudly as I could " I am not resisting... I never resisted any thing... You told me that you're going to put me back into my cell. As the beating on me were going on that day, I repeated these and similer statements in attempt to show that I was being tortured maliciously and sadistically.

28- The smashing of my head against the wall brought me an excruciating and extreme pain that I never experienced in my life. I thought that my head was basting open. The smashing of my head and other beatings that follow also worsened my previously stated H. St. symptoms, supra.

29- I then found my self being crushed on to the ground, face-down, while BRUSH and another officer most likely, MILLER, punching and kicking me, and also spitting on me.

30- As soon as I was put on the ground, officers also restrained my legs with the legcuffs, and from this moment to the end of the beatings in the Observation cell, I was fully restrained with the hand and leg cuffs.

31- Many officers, possibly 10- or more, now swammed into the range like insects and all of them were taking part in punching and kicking me as well spitting on me. The officers carried out these malicious and sadistic attacks against allover my body.

32- As I was on the ground, now lying on my jaw, BRUSH placed his working boot on my neck to the jaw, and used it as a weapon by pressing it maliciously and sadistically, while moving it right and left as if he was trying to crush something solid, leaving me with another deadly pain.

33- At one moment as BRUSH's boot still on my neck and other officers were beating me, I found my self that I couldn't breath, and had to cry out that " I can't breath, I can't breath..., you're trying to kill me."

34- As I was on the ground, also BRUSH with help from other officers, made concerted attempts to break my arms, legs, feet and toes. Brush was twisting and manupulating them aggressively in order to break them. I cried out in excruciating pain again " he's breaking my legs and my hands, they're trying to kill me."

9-

D. STATEMENT OF CLAIMS:

35- When BRUSH, MILLER and their fellow officers were trying to break my bones and attacking me, my feet were vulnerble open, because those shower-sleepers I had when I was escoted to the law library, See supra 14, had come or taken off by the officers once the attacks started.

36- BRUSH and his fellow officers made multiple threats and verbal abuse against me. For example, BRUSH said, shorting on me" we gonna fuckin kill you..""no one's gonna believe you", "scream louder bitch, this's America, not an Iraq or Afghanistan", or similer statements.

37- The above death threats, also cursings, racial slurs, spittings and many other kinds of abuses apart from the physical attacks that were going on un stop, continued up to the end of those beatings that day.

38- I dont know for sure for how long I was being tortured in that particuler area, see supra. 25, but I assumes that, the beating went on for several minutes, subject to the discovery determination. I was truck at least 70-times at that spot, before I was truck more as I was escoted to observation cell, and then, in it.

39- When I was on the ground and then in the following beatings, to the end of the beatings in the Observation cell ('Oc'), the officers always forced my upper body and head down, so I couldn't identify most of the officers who were tortucing and abusing me.

40- I was then violently made to stand up and walk through the hallway toward the entrance of the range A-, c-unit, while the officers continues to maliciously and sadistically beating me, as at the same time jacking me up by the handcuffs from behind, using the cuffs themselves as another tool and method to punish me with, and as a result, delivering me another execciting pain.

41- I could not walk strait because of the worsening of my Hist-symptems, See supra. 9, and because of the deadly pain allover my body, and especially my right ankle, which I believed was already broken by BRUSH and his collegues. I had to limp in the excruciating pain as the beatings, spittings and all other kinds of abuses and threats continue.

42- I had no doubt the the officers intended to murder me because they tortured me without no limit. I wished they had already murdered me due to the extreme pain I was forced to go through.

43- Because of the excruciating pain, the limping and the physical weaknes... etc, all most all moves I made were the result of officers' physical assault on me... I couldn't control my moves. But at no time I ever tried to attack any one.

44- Not long after I was assaulted, I heard that, BRUSH has been made a Lt, and he and Lt MURTON were transferred other prisons... ADx's officers, fear no concequences...

## D. STATEMENT OF CLAIMS.

CLAIM TWO: FAILURE TO INTERVENE AGAINST LIEUTENANT ARMIJO.

45- I hereby re-allege and incorporate by refrance the above allegations, 1-44.

46- When we reached the entrance of the range-A, officers unintentionally and very briefly eased their grip off my head, and because of that I could raise my head and see Lt. ARMIJO and Lt. MURTON standing next to each other above the stairs of the entrance as they were witnessing me limping in pain while the officers continues to maliciously and sadistically attack and abuse me.

47- When I saw the two Lts, I repeated my previous crying, see supra, 27, even more lowdly because I was expecting them to stop the beatings and I wanted them to know that I was being tortored maliciously and sadistically. However, the two Lts, didit stop the beatings even though each possessed realistic opportunity to do so.

48- Each of the two Lts, saw me being attack, while I was limping in pain, fully restraites and each heard and saw me begging for their intervantion...

49- On information and believe, Lt. ARMIJO and Lt. MURTON had been present in the unit and witnessing the beatings previously; before I had seen there standing by, witnessing the beatings.

50- On information and believe, Lt. ARMIJO was the unit's Lt, on 8-23-18 and merefore, was incharge of the unit's daily operations and its officers.

51- Later that day, after the beatings stopped, Lt. ARMIJO along with some officers intered into the Observation cell where I was put, and ARMIJO lied to me; ARMIJO asked me what happened?... And asked me to explain the events. But I told him that he had already knew every thing" because of what officer BRUSH had told me earlier that day. See supra; 18-19. and I told him that I have seen him standing by with Lt. MURTON witnessing me being beaten...etc, supra 46-48. However, ARMIJO denied all these statements and claimed that he didit know any thing, and that, he had just came in that moment to report to his duty. ARMIJO also told me that he was treating my above statements "as an insaults to him".

52- Later on, in 9-12-2018, when I was housed in cell #408, Lt. ARMIJO with another Lt, Alexander, came to my cell and both made even larger effort trying to convince me that Lt. ARMIJO was not present at the time of the attack on me in 8-23-2018, and they suggested that I was confusing him (ARMIJO) wish another Lt, 'Sukdeo'(2), who might have been present in the unit at the time of the attack. I said; "no, I didnt confuse him with any one... He was there and I saw him.

(2) This may suggest or show that; Lt. Sukdeo was also present during the attack and possibly, played a role in it. He and others might qualify as addit. defendants after discovery

-11-

## A. STATEMENT OF CLAIMS:

### CLAIM THREE: EXCESSIVE FORCE AGAINST OFFICER MILLER.

**53-** I hereby re-alleges and incorporate by refrance the above allegations, 1-52.

**54-** Passing the entrance while the beatings continues, I was then pushed into the O.C. under Lt's. MURTON's orders and supervision.

**55-** As I was being pushed through beatings into the O.C., officer MILLER with a huge effort maliciously and sadistically hit me on my face with his knee maltiple times, delivering me another excruciating and deadly pain on my face.

**56-** Because my upper body and head were being constantly forced down, see supra, 39, MILLER whom I believe was at that time one of the officers holding me from back through the handcuffs, has to sneak himself in order to hit my face... without such huge efforts, MILLER couldnt get into my face

**57-** Officer MILLER was also one of the officers who initiated the beating on me that day, supra 29, MILLER was the officer #1 in the unit that day. Officer BRUSH could not have accomplished his initial attacks on me without MILLER's and very likely, Baca's full support and agreement.

### CLAIM FOUR: FAILURE TO INTERVINE AGAINST LIEUTENANT MURTON

**58-** I hereby re-alleges and incorporates by refrance the above allegations 1-57.

**59-** Soon after I reached the entrance of the range, see supra. 46-49, Lt. MURTON took full controll of the ongoing tortures against. From that moment to the end of the beatings, MURTON was maliciously and sadistically giving orders to the officers on how to beat me.

**60-** MURTON started by ordering the officers to place me in the O.C., while at the same time abusing me verbally. For example, he told me "you wanna Hunger strike in the G.P., ( that's general population units, i.e: in oppose to H-unit where I first new his as an officer several year prior) this's what you gonna get mother fucker... etc.

**61-** MURTON also told me that I had to walk strait, not to limp and also stay silent not to cry out, otherwise I'll be beaten me. He told me that even after I had already said to him that I can't walk strait because I believed the officers have broken my leg.

**62-** Because I could not walk strait and couldn't be silent, under MURTON's orders and supervision I was beaten more.

**63-** The O.C. in C-unit, is located beyond the entrance to Range-A, at the opposite side to the unit officers' and Lt's offices. The O.C. has no camera in it, and for that reason officers often beats prisoners there.

**64-** Later that day I learned the officer BRUSH lied in the incident report that he fabricated against me. He claimed that I had committed

## D. STATEMENT OF CLAIMS:

the prohibited act of "attempting to assault him" while I was being escorted to the D.C. In reality, BRUSH and his fellow officers, had told me that: they were taking me back into my cell. See Supra 19-20

65- In the D.C, MURTON kept giving orders to the officers who were physically torturing, such as: "put him against the wall ... bend, bend him over..., place him on the bed..." He also said to the officers "show this dirty Arab terrorist what's ADX". At another time he told me, in response to my crying out that I never resisted any thing, see supra, 27, "look at you an Arab (or he said "Arabic) bitch, you think there gonna be any one who gonna believe you, you must be crazy".

66- At another time, as officer ESPANO2A was maliciously and sadistically hitting me on my face, MURTON told him " keep it to the body", which I allege that, he was trying to avoid an incriminating evidence.

67- On information and believe, Lt. MURTON, officer BRUSH and ESPANO-2A, all have long history and reputation in abusing prisoners at the ADX, including using of excessive force against them and then fabricating incident reports against those prisoners.

68- I personally heard prisoners who have been abused by BRUSH and ESPANO2A; In one specific case, ESPANO2A participated in torturing a prisoner, whose several ribs were fracture in the torture, about one year after I was tortured.

69- Several years prior to 8-23-2018's torture on me, MURTON had used excessive force against me when he was an officer, in one of my H.St, when I was housed in H-unit...

### CLAIM FIVE: EXCESSIVE FORCE AGAINST OFFICER ESPANO2A:

70-I hereby re-alleges and incorporate by refrance the above allegations, 1-69.

71- ESPANO2A worked in perfect coordination with Lt. MURTON in torturing me in the D.C. As MURTON, I knew ESPANO2A since H-unit.

72- ESPANO2A and other officers that I could not identify, maliciously and sadistically beat me, spate on me and verbally abused me, causing me to go through an excrenciating pain and great deal of humiliation

73- At one moment, ESPANO2A was very aggressively pulling my beard and ears up and down, forcing me to follow his movements in order to reduce the deadly pain that was causing me, while the officers were holding me to stay put. Espano2a also maliciously and sadistically hit me on my face. Supra 66.

74- Among ESPANO2A's statements to me in the D.C is "stupid little terrorist, you think this's Saudi Arabia, this's United States of America, ...son of a bitch..." "we got your Leader, Bin Laden, we soon gonna send you where he is... hell", or some statement in that meaning. He also said " this's not H-unit".

13-

## D. STATEMENT OF CLAIMS:

### CLAIM SIX: FAILURE TO INTERVENE AGAINST OSAGIE

75- I hereby re-alleges and incorporate by refrance the above allegations. 1-74.

76- The P.A. OSAGIE ; was among the senior ADX's staff who witnessed the beatings against me and chose not to stop them. As I was being maliciously and sadistically beaten and abused in the O.C., I heard OSAGIE from the cell's door, very close to where I was being beaten, saying approvingly " is he still resisting"; while, infact, I was not resisting and I was in full restraints.

77- After hearing OSAGIE's above statement, I repeated my previously made statement, that I never resisted any thing, and also said, " are you also OSAGIE witnessing this, see how they beat me? OSAGIE never replied.

78- OSAGIE's voice was very close from where I was being beaten. At that moment I was already place on the concrete bed inside the O.C. The bed is several feet high from the O.C. floor, and OSAGIE must have seen me and the beatings very easly and- without any efforts. OSAGIE must also have heard my for ever repeated statement that I never resisted any thing before his above mentioned approving statement and after it when I repeated my statement.

79- I knew OSAGIE from at least early 2002, and his voice and accent are obviously identifiable to me and to any one who knew him.

80- OSAGIE was a top BOP's/ADX's official who had a realistic opportunity to stop the torture against me in that day, but he decided to be deliberate indiffent.

81- OSAGIE was at the time, a fully trained law enforcement, BOP's senior staff; with accordance to BOP's Program Statement: OPI; HRD/ PDB No: 3300.3, of 5/8/2017 (Employment), section 11. : all staff working "in correctional enviroment" "must be proficient in the knowledge, skills and Abilies (KSAs) needed for correctional work". And " the attainment of proficiency in these areas...".. is a condition of employment for all staff in correctional institutions". Id. All these staff must train "in three areas; firearms, physical abilities and a written test of job knowledge." Only " physicians and dentists may elect to waive, and chaplains & and PHs staff do not participate in the firearms portion...: Id.

82- Further, all BOP's staff, or at least the ADX's, including OSAGIE himself, would in times work as regular prison guards. I have seen OSAGIE at different occassions, wearing the BOP's guards uniforms, and works as one of them.

83- The only meaningful difference between OSAGIE, and say, Lt. MURTON, and others, is that OSAGIE was both ; a fully trained prison guard, as well, a medical professional while MURTON was only a prison guard. OSAGIE could have used either of these two position he hold to stop the abuses, but he chosed to use neither.

84- After OSAGIE's above statement; the tortures continued and even got worse. But eventually stopped. By that time I had been beaten for perhaps 15-minutes, un-stop. The beatings, stretched over possibly 50-miters or more ( from cell 108, see supra 25) to the O.C. during which I was truck more than 150-times

D. STATEMENT OF CLAIMS:

CLAIM SEVEN: VIOLATION OF MY FREEDOM OF SPEECH / FIRST AMEND. AGAINST OFFICER BRUSH:

85- I hereby re-allege and incorporate by refrance allegations 1-44.

86- BRUSH came to me at the O.C, where I was left for several hours after the beatings, and said to me behind the glass door" I am not finished (or he said "I am not done) with you, I'm gonna kill you, and I saw your journals, and manuscripts and othershits in your cell, trust me, every thing is gonna be in the trash", or some statements with similler meanings.

87- Few hours Later when I was escoted back to my cell, it found it's virtually empty. BRUSH had removed from my cell almost every thing. He did that even before the above described beatings that he initiated. See supra, 17. Among the materials that BRUSH took from my cell, are include but not limitted to:

88- MY DAILY JOURNAL or Dianies: In 12-note books, starts from late 2001 through August 2018 just a day or two before BRUSH took them. I spent between 5 to 45 minutes daily, depending on the quantity of materials to write and my health... I wrote about my daily life in prison and whatever important events that I heard or read from the media, with short comments or backgrounds.

89- MANUSCRIPTS: at the time, I was working on two large manuscripts, The larger one was already 900-pages long, yet, unfinished. This was about the concept of peace and tollerance between the three major Religions: Islam, Christianity and Judaism... throghout their respective scriptures and history.

90- Onother manuscript, also unfinished, was Qur'an translation into "Swahili", my native language. The text was complete, about 550-pages, but when BRUSH took, I had just recently statted the commentary, with 200-pages. I had started to work on the Qur'an translation about 10-year earlier. I revised the text twice.

91- The third manuscript was complete. This was about the 'slavery' throught the history. I revised the manuscript. It was about 450-pages.

92- These manuscripts along with shorter works that BRUSH took, were the result of many years of reading, studying and collecting. The manuscripts along with my above refranced journals that BRUSH took from me, were the most important and the only material achievement that I have worked so hard and so long to acquire in my intere life. They are irreplaceble.

93- Onother valuable item BRUSH took were my notes; a summary of between 130-150 important books that I have read previously.

94- BRUSH also took number of books fthat survived with every thing he took from my cell, the shake-down of 8.19.2018, see infra ) these include-de, but not limitted to: (1) Mawsuuatul-Hadiy th (2) N-Awtar, (3) Shachu-Muslim (4) Bidaa-yah wannihaayah (1-of 2-volumes) (5) Qamus Al-Mwhiyt (6) Al-Mughniy (7) Tafs-Ibn Atiyych, Ibnu Kathiyr and Fat-hul-Qadiyr...

25-

## D. STATEMENT OF CLAIMS:

**95-** Each of these books was in a single or double valumes, but originally was in several vulumes. mostly religious, and each was important and expensive.

**96-** Each of these stollen materials was taken by BRUSH from my cell, each was clearly marked as belonged to me with my name and initials, and registration number...etc. manuscripts, journals and notes, were in three different folder; each holding the above identification information, and each was in my hand-writing. The journals also hard each the starting and ending dates. (In every H·st, I pack and mark my materials as such for easy identification by the staff who often inter my sell for the removal of food/drinks items)

**97-** No officer or staff could ever mistaken my materials for trash or any thing else unimportant, because each was clearly packed and marked as described. BRUSH must have maliciously and intentionally targetted them.

**98-** Few days after the removal of materials I submitted written request to correctional counselor, insisting on my materials, especially. my journals, manuscripts and notes, stating that: they must be kept for me, and if I'm not allowed to keep them, I'll send them out of prison. The counselor responded by stating that: every thing will be kept in the storage untill I come off my H·st.

**99-** After I was told that my material cannot be found after my H·st, in October, 2018, I sent several written requests asking any and all help to find my material·... The requests included, but not limited to: the ADX's warden, the unit team, the property officer, and Lt, and an SIS staffmember.

**100-** I also filed an Administrative Remedy on the above materials. The warden's and subsequent responces carry: false and incorrect findings, that: the effect were made for me to identify my materials... See EX. 2 . That is clear and intentional lie. The discovery will show my countless efforts to get my things back.

**101-** Before I ended my H·st, and right after it, few items were returned to me. These included: 2-valumes of Arabic-Bible, English Dictionary, bunch of Old Admn· Remedies, 3 or 4-Religious books, photo album, prayer rug, pair of shoes, shower sleepers, a t-shirt,... and some 17-or 30, soups.

**102-** Besides the above expensive materials that BRUSH took fom me; he also took other items include but not limited to: few shorter works/researches, personal clothes, legal and religious materials, cosmetic, all writing and postage materials, all dental materials, toiletries... and every thing. He even took the cup of water I used to drink with. He also stole all books and commessary recepts. I spent for almost a week with no toilet paper, tooth paste, tooth brush, soap... and a cup to drink water with. He only left in my cell a matcess, a pillow, and blanket.

**103-** The material officer BRUSH stole, including: journals, manuscripts and notes, had previously survived all H·st's, and shake-downs, including the large shake-down of 8·19·2018, 4-days earlier. That organized shake down confiscated majority of my books claiming to be "contraband" but never touched my above materials!

-16-

## D. STATEMENT OF CLAIMS:

104- The BOP has no remedy for recovering damages arises from such materials related to the First Amendment, such as journals, manuscripts... and notes. The small claims program, (small Tort) only covers to $1000.00 damages. As stated above, supra, 102. BRUSH even stole my books receipts. I managed to get few receipts, from the book store, and filed that with my claim, but even with receipts me BOP, refused to pay any thing... My journals, manuscripts and notes, are priceless... BOP don't have remedy for such First Amendment guaranteed rights.

105- BRUSH's confiscation of my materials, was motivated by evil intent, malicious and harassment against me. There was no single reasonable relation to any legitimate penological interest... with such confiscation. As stated, see supra, 103; all the materials BRUSH maliciously stole, were left untouched 4-days earlier. And several of ADX's senior staff told me, that: BRUSH lacked any rational reason in removing and apparent destroying of such materials. One of the staff who told me this, is the case manager who led the shake-down of my cell in 8.19.2018. The case manager and his officers, saw the materials but didnot touched them, because posed no threat, and there was no reasonable pelogical interest in confiscating them.

106- In removing and apparent destroying my materials, BRUSH also knowingly and intentionally, violated a number of BOP's own policies. See infra. 178-a.

107- Later, in the evening of 8.23.2018 I was given an incident report for "attempting assault" against BRUSH. BRUSH fabricated the incident to justify the above described crimes against me. See supra 1-84.

108- I was later found "guilty" for attempted assault, by me ADX's disciplinary officer... The statements used to find me "guilty" were of the staff who themselves, may be found guilty in assaulting me... Subject to the discovery determination. BRUSH, MILLER and BACA, each fabricated report that was used to find me "guilty". BRUSH and MILLER, both initied and advanced the tortures of 8-23-2018 against me. The discovery will reveal Baca's role in that attack. He was the third unit officers in that day, see supra, at 10. About a year since I was tortured, Baca apparently, based on prisoner's conversation with me, participated along with ESPANOZA to beat up that prisoner after tieding him on 4-points... several of his ribs were broken as result. Baca and the rest of me "witnesses" whose statement's were used to "convict" me, through the discovery, they might be revealed as BRUSH's assistants in the crimes against me that day.

109- The disciplinary process that convicted me was rigged. The staff representative was bias, and fabricator, who fabricated my witnesses' statement. She was imposed on me, after my own picked staff representative were both disqualified.

110- Before the fabricated incident report of 8.23.2018, I had more than 12-years of clear conducts. I've never been disciplined for assaulting any ADX's staff prior to that fabrication.

18-

## D. STATEMENTS OF CLAIMS:

111- When I was waiting for my trial at the MCC, N. York in 2001, I was maliciously and sadistically beaten by even larger group of correctional officers who were led by captain Aponte, Lt. Carrino, and counselor Santiago. I was tied on 4-points on a bed and beaten for several hours... Among the injuries I sustained, we included but not limited to fracture of my eye-socket and broken nose... I was hospitalized for 10 or 11-days.

112- After that event, as in this present case prison staff fabricated a case against me to justify their own crimes. I a separate case and without me being present or represented, the court concluded that I had committed two acts: grabbing a radio from an officer and covering a camera. See U.States V. Salim, 287 F. Supp. 2d, 250, 294 (2nd Cir. 2005).

113- The court's conclusion was based on another prisoner's statement on my absent. I have denied those allegations and all others surrounding the case. I've similarly denied the BOP's disciplinary charges and findings arised from the same case.

## PHYSICAL INJURIES:

114- The attack of 8.23.2018, left me with several serious and parmanent injuries. The injuries I received includes but not limited to: during the assault and shortly after it, my body was full of lacerations, bruises and brasions acompanied with deadly pain. My left wrist to this day, almost three years later carrys scars that replace the painful injury caused by the officer's using of the handcuff as a device of punishment in manupulating my wrists and jacking me from back on the ground and as they violantly escoted me to the OC. See Supra 34, 40. These short time injuries some took up to two weaks or so to heal.

115- My ankle and writs, all were swollen. I thought initially all were broken, because BRUSH and his collegues made a concerted attempt to break them. Supra 34; my jaws also were badly targeted. In the first two months, the pain on my wrists and jaws was 8 out of 10. Few hours after the assault, my nose violently stated to bleed; The bleeding came down after 2 or 3-days.

116- The permanent physical injuries continue to this day, include but not limited to, pain and swelling of my right ankle, pain on my wrists, jaws and periodically, but some times, heavy bleeding through my my nose.

117- The medical staf desregarded my complaining of pain on my wrists and jaws and multiple requests for an X-Ray. The x-ray of my wrists and jaws were delayed untill 10.18.2018, almost 2-months after the beating. I was told, the result were normal... However, the pains continues.

118- My right ankle was injured with an acute fracture. The X-ray was only conducted on 8.31.2018, 8-days after the beatings. The medical staffs' actions and inaction that followed, shows the high extent of their deliberate indiff.

## D-STATEMENT OF CLAIMS:

119- On 9.3.2018, JONES told me: x-ray shows "twisted muscles". Next evening, 9.4.18, came with splint and a wheel chair... saying: my leg was fractured. He also said, in the coming few days a an orthopedist will examine my ankle. On 9.12.18, Dr. Oba replaced the splint with hard cast. When I asked him about the orthopedist JONES had previously mentioned, Dr. Oba said: he looked into my x-ray and told Oba to put cast on me. He said that, the orthoped said: the cast must stay on me for 3-weeks, then remove it, x-ray again, if not healed, put second cast for another 3-weeks, remove the cast, x-ray again, if not healed, the surgery must follow.

120- After the cast was put on me, I was then x-rayed on 9.25.2018 with the cast. On 9.26.18 JONES told me: the fracture was there, unhealed. On 9.30.18 I received OSAGIE's paper work on the recent x-ray, stating "partial healing". On 10.23.18, second x-ray again, with the cast taken, and the x-ray techician told me: the previous x-ray had missed some details... On 11.2.18, I received OSAGIE's another paper work on the second x-ray, which I assumed was saying "continue to heal" (his handwriting wasn't that clearer to me).

121- After 3 or 4-weeks, the cast was not that effective: old, loose, stinks.. etc but was never changed. It stay on me till was removed for the first and last time on 11.16.2018. On this day, the wheel chair also was taken from me.

122- OSAGIE removed the cast on 11.16.2018. My ankle was very much swollen almost as it were the day the cast was put on me, 2+ months prior. The pain was also very high. I asked OSAGIE for any physical therapy follow up, or any other help, but he said: I didn't need any. On 11.18.2018, I submitted a sick call for the terrible pain on my ankle and wrists. On 11.20.18, my ankle was x-rayed again. On 12.6.2018, a medical staff came in response to my sick call. He issued me 14 Ibuprofen tablets, and said: he'll give me a steriod shot after two weeks. He never came back. Those 14-tablets were the first pain medication given to me since I was injured on 8.23.18.

123- On 12.23.18, I sent a cup-out/request to Dr. Oba, complaining about the ankle and wrists pains. On 1.9.19, P.A Saroski sees my swollen and painful ankle and hears my complain of pain in ankle and wrists... She told me: I must learn to live on those pains, they might never goes away. She refused my request for pain medication and told me that: I must get from the commissary... I told her, I've tried all commissary medications didn't work. But she refused any medication for me.

124- The pain continued. And on 2.19.19, a nurse refused to give me a sick call request, stating, I must get when P'A Saroski makes her rounds. Saroski, never made round on me next 2-weeks. She eventually made in 3.6.19, but she said: she didn't have sick call request, I must write in regular paper (previously said: I can't).

125- I finally was seen by Dr. Oba in 4.23.19. He finally prescribed me with Sulindac 200 mg tab. for pain. He also issued me a compression garment/sock for the swelling. Sulindac was replaced by Meloxian 7.5 mg. in 4/2020. I'm now since 4/2021 on Sulindac again.

19-

## D- STATEMENT OF CLAIMS:

### EMOTIONAL AND MENTAL INJURIES:

126- The assault of 8.23.18 against me and the loss of my materials left me with high level of depression that I never experienced before. The excessive anx enxiety, fear of prison guards, lack of concentration, poor memory, dessapearence of desire to interact and associate with others, enjoyment of doing things that once I enjoyed..., poor sleeping, almost daily night mares that depict the violent acts of 8.23.18 against me ...etc, are only some of my new normal that I'm forced to live with.

127- My life is full of shame and humiliation and the feeling of failure to accomplish any thing after the humiliation of 8.23.18 and the huge loss of every thing that I have worked for almost 20-years. These feelings are so serious, that have forced me to seriously consider to end my own life. I have tried to contact some religious authority who may provide the necessary islamic ruling that justfy the ending of my life.

128- Since Oct., 2019, I have been prescribed with citalopram 20 mg. tab. for my depression. I'm on 40 mg. now. Also, in march 2021, Mirtazapine, has been added. I am now on the above Citalopram and Mirtazapine 45 mg. tab. I was also told that I'am suffering from the PTSD.

### CLAIM EIGHT: DELIBERATE INDIFFERANCE AGAINST JONES:

129- I hereby re-alleges and incorporates by refrance the above allegations 114-128.

130- JONES, a nurse, came with the "force team" and a camera to perform the medical assessment ("M.A) related to the beatings, after the beatings stopped in D.C.

131- JONES's M.A, was superficial, not real: I complaint to him infront of the camera about the substantial and excruciating pain all over my body, and especially my right ankle that was already and obviously swollen to about ½ of an orange size in either side. JONES noted the swelling and said he'll comeback.

132- JONES cameback about an hour later without the camera. I complaint to him again as I did previously and even more. I told JONES that I believed that my leg/ankle was broken, I couldn't walk due to the excruciating and substantial pain, and that I needed an x-ray to check my jaws, wrists... and especially my ankles. JONES refused all these and other reqvests. He said, the swelling will go away by themselves from my ankles. He refused my reqvest to see the ADX's doctor or even the P.A, just as he refused me any pain medication or even a bag of ice.

133- JONES, even though my injuries and symptoms, including the swellings of my both ankles, my wrists, one side of my face, cuts by handcuffs on my left wrist, lacerations, bruises and brasions on my whole body..., he refused to exame my injuries. Responding to my excruciating and substantial pain complaint, JONES told me "Mohamed, you must take your trays, this would be alot easier if you eat!" The he left. I never saw JONES taking any notes in neither visit.

## D. STATEMENT OF CLAIMS:

**134-** I also asked JONES when he came back to me in the U.C. to assess me for my H.St. JONES said that, the medical staff are aware that I was in H.St, and have already missed 11-consecutive trays, but he was only asked to assess me for the use of force incident, not H.St. However, I did complained to JONES about my then, worsening H.St. symptoms. See supra.9, but he equally ignored my complaints

**135-** The injuries sustained and their symptoms, along with my worsening H.St, were very obvious, serious and substantial, easy noticeable and recognizable by any one who saw them, see supra. 15, regardless whether he's a medical professional or not. Further, JONES, as HUDDLESTON, knew that the force ~~used~~ was used against me... and in the use of force, the injuries, often, substantials, are to be expected.

**136-** JONES' and the ADX's medical staff refusal to assess me for my H.st, that day despite them being required to do so by the BOP's Program Statement, was an attempt to avoid any medical record that would indicate that I was beaten when I was very substantially weak in H.st. Furthermore, JONES' that day and his, HUDDLESTON's and OSAGIE's subsequent refusal to exame my substantial and obvious injuries, denial of giving any pain medication, and ordering an earlier x-ray,.. were motivated by, but not limited to their effort to avoid making any record of my substantial injuries I sustained from the 8.23.18 attack, and also, wanted to punish me for my being in H.st, and therefore, used my obvious, serious and substantial medical need as a tool to force me out of the H.st.

**137-** JONES also saw me in several more time for H.st. M.A. In each, he totally refused to assess my injuries, provide pain medication, refer me to the doctor, or even issue me with an ice bag to reduce my ankle's pain. On 8.27.18, JONES led HUDDLESTON on H.St. M.A. on me. JONES, saw me hobbling my way to cell door, cell # 406, while my ankle was unsocked, obviously exposed to show them the seriousness and substiality of my injury. My right ankle was swollen to about 75% of an orange size, while my 4-small toes were almost black and obviously and substantially swollen to about 3/4 of an inch. I complaint about the excruciating and substantial pains and that I can't sleep, pray or walk, and that I wish I kill myself... I asked for pain medication or at least an ice bag, an x-ray and to see the doctor. JONES however, refused each of my request and he even to look at my injuries, he only conducted H.st assessment. He told me "Once you eat, we'll exame you."

**138-** JONES also led M.A. for H.st, on 9.3.18, 9.5.18 and participated several more in each, he refused all my serious and substantial medical need.

**139-** Unrelated to JONES' inaction, I received x-ray on 8.31.18. On 9.3.18, JONES told me, x-ray shows "twisted muscles", no fracture. On 9.5.18, after assessing me for H.st. in the morning, cameback in the evening with a wheelchair and applied a splint on my ankle saying x-ray shows I sustained a fracture. But he denied me pain medication or ice.

## D. STATEMENT OF CLAIMS:

### CLAIM NINE: DELIBERATE INDIFFERANCE OF HUDDLESTON

140- I hereby re-alleges and incorporates by refrance the above allegations, 129-139.

141- HUDDLESTON, a nurse, conducted the first H.St. assessment in my cell on 8-26-18. He saw me nabbling in excruciating pain, while my ankle was naked exposed with an obvious and substantial swellings, as I was telling him I can't walk, pray in reguler position or sleep, due to the excruciating and substantial pains on my ankle and to a less extent, other areas of my body. I begged HUDDLESTON for an x-ray, pain pills or ice, or at least reffrral to the doctor, however, HUDDLESTON, even though aknowledge that he was aware that the force was used against me few days earlier, he absulutelly refused even to look at my obvious, serious and substantial injuries. He told me "I'm here to do the H.st. assessment... Any treatment for your injuries that you want, that will come... after you come off your H.st. That's all we care about right now.

142- HUDDLESTON apart from hearing my complains about the substantial pains, and that I wished I kill myself due to the unbearable pains... etc, he witnessed the obvious, serious and substantial injuries on my body including swellings and other injuries and symptoms stated earlier, see sopra, 133, 137, and he admitted that he knew that the force was used against me...

143- The injuries and the symptoms... that HUDDLESTON witnessed, all were so obvious, serieous and substantion and easily noticeble and recognizable by any one who saw them, regardless if was a medical pofessional as HUDDLESTON or a layman.

144- HUDDLESTON saw me in other occcassions often with JONES or OSAGIE. Each time they refused to treat my injuries. This includes 8-29-18, 8-31-18 and 9-3-18.


### CLAIM TEN: DELIBERATE INDIFFERANCE AGAINST OSAGIE

145- I hereby incorporates by refrance allegations 75-84, and 114-144.

146- OSAGIE ordered me to be escoted from cell 604 upper to medical room downstaier for H.St. M.A. OSAGIE witnessed my uncovered, obvious and substantially swollen right ankle, observed my crying-in-pain face, and heard my complains about the excruciating and sabstantial pains on my ankle, wrists, jaws and other areas of my body... I told him that because of the pain I couldn't walk, pray in reguler way or sleep... and that I wish to die. However, OSAGIE only performed the H.st. assesments and absolutelly declined to look at my injuries, which were obvious any way and to any one, order for an x-ray, issue pain medication, or even a bag of an ice. OSAGIE wanted me to come off H.st, in order to get treatments, including an x-ray... and said "everything will be allright if you eat".

147- After the M.A. under OSAGIE's order, I was tightly strapped and tied will leg cuffs right on broken ankle on the wheel chair, and then pushed to the medical unit for me force feeding. After the feeding, OSAGIE ordered me to walk back and forth with the heavy leg cuffs on my painful ankle. I told OSAGIE that I couldn't

## D. STATEMENT OF CLAIMS:

walk, but OSAGIE insisted, even though he and every one present could easelly observe my crying face due to the pain I was in. For fear of being beaten again, I had to walk and obey OSAGIE.

148- After the walk, I was once again trapped in the same previous manner, and then I was left in the same fixed, excruciating position for about 2-Hours.

149- On 8.31.18, OSSAGIE and HUDDLESTON assessed me for Ht. st., and then OSAGIE and his collegue, again refused me all my previous requests, even though my ankle now was almost swollen to 90% of an orange size...

150- I was then strapped in the same previous manne, supra. 147, and pushed on the wheel chair to the medical unit for another force feeding. In this day, I repeated my injuries complains, especially my ankle... stating that was broken, I need x-ray...etc. OSAGIE, initially refused again, now claiming that I had been already assessed on the injuries, which I denied.

151- After that, OSAGIE forced me to take walk again. and rejected my statements that I couldn't walk, see supra. 147,... and I had to obey him again. My face was clearly full of crying-in pain, OSAGIE and every one else, observed that.

152- After the forced walk, OSAGIE very briefly, pretended to exame my right ankle... The whole process lasted in few second. He then ordered an x-Ray.

153- My injuries, especially, my right ankle, were so obvious, serious and substantive, and any one, whether a medical professional or any one else, would easly notice and recognize my serious and substantial medical needs: I couldn't walk except with extra ordinary hardship, the swelling was so obvious and extentive; my face, especially during walking express the excruciating pain; I complained; I was subjected to use of force.... Each of these needed no special/medical training to be identified as a symptom or indication of a serious medical need.

154- OSAGIE didnot infact exame my ankle after I complained infront of the camera. He pretended as such for the later-camera reviewal. He; nor any one, needed to exame my ankle; the injury were obvious, serious and substentive, noticeble to every one. He as with JONES and HUDDLESTON, knew all along that I faced substantial risk of serious harm. OSAGIE ordered an x-ray. He could have done it long time prior.

155- After OSAGIE ordered an x-ray, he again recklessly, ordered me to be trapped in the previous manner, supra. 148. After 2-hours of excruciating pain, I was x-rayed. After the x-ray, I was forced to walk back to c-unit, possibly 300-400 mitters away, limping my way to the unit. I couldn't refuse, because I knew I could be beaten again.

156- After the above forced walking, my ankle pain and swelling got worsen in the next 2-days, forceing me to cry in excruciating pain as I never did before.

157- In 9.3.18, OSAGIE warned me in my cell, not to complain again on camera, or write to superior staff... He said, he didnt want to see me going through more problems...I didnt complaint again for fear of another beatings. OSAGIE saw me several more times, but refused to give me pain medication... Only once, ordered a bag of ice for my ankle.

D. STATEMENT OF CLAIMS[32]

CLAIM ELEVEN: BATTERY, AGAINST THE UNITED STATES: Based on the Attack occurred outside my cell #108, and on the Ground:

158- The defendant, the UNITED STATES OF AMERICA ("the 'U.S') is liable under the Colorado Law, because: its agents inflicted on me an intentional, wanton and willfull harms: officer BRUSH initiated these attacks in the area between cell #108 and 109, by aggressively smashing my head multiple times against the wall,... supra. 25. The smashing was harmful, caused excruciating pain, at 28. BRUSH and other, likely, MILLER, then punched and kicked me, and also spate on me. at 29. Thereafter, possibly 10-or more officers took part in wantonly and willfully punching and kicking me, and spitting on me. They attacked me allover my body, at 31. BRUSH also willfully and wantonly, placed his working boot on my neck to my jaw, and then aggressively, pressed his boot... resulting to more harmful pains, at 32. Due to the aggression of BRUSH act, he deprived of breath at one moment... I couldn't breath, at 33. Brush and others tried to break my limbs and toes... resulting to more harmful pain. at 34. BRUSH and other officers also, verbally threaten and abused me. BRUSH told me "we gonna fuckin kill you..." "scream louder bitch, this's America, not an Iraq or Afghanistan", or similar statements. at 36. I was possibly beaten in that place for several mute minutes; at 38

CLAIM TWELVE: BATTERY AGAINST THE U.S: Based on the beating occurred After I was made To stand up, in the Way Towards the O.C:

159- After the above beatings and abuses, supra. 158, I was violently made to stand up and walk.. Now, officers willfully and wantonly and intentionally, continued to beat me.. They also, intentionally jacked me up by the handcuff from behind, using the cuffs as a tool and method to harm me with... They again harmed me through excruciating pain and cuts on my wrist. Supra, at 40. I couldn't walk right, they forced me to walk as they beat me and spate on me. at 41. As I was walking towards the O.C; Lt. MURTON, verbally abused me... He also ordered more beatings on me way because I couldn't walk straight and I refused to be silent, at 60-62.

CLAIM THIRTEEN: BATTERY AGAINST THE U.S: Based on the Beatings occurred inside the O.C:

160- As I was being pushed into the O.C. officer MILLER willfully and wantonly hit me on my face multiple time. He did it intentionaly and with great effort. Supra, at 55. Lt. MURTON gave orders on how to beat me in the O.C, as he verbally abused me: at 65-66. In the observation cell, officer ESPANOZA also, willfully and wantonly hit me on my face, at 66, 73. ESPANOZA and others also beat me, spate on me and verbally abused me in the O.C, at 72, 74. ESPANOZA also willfully and wantonly pulled my beard and ears, causing more harms and humiliation. at 73.

D. STATEMENT OF CLAIMS:

CLAIM FOURTEEN: NEGLIGENT SUPERVISION. AGAINST THE U.S. Based on Lt's, Armijo's and Murton's Actions and Omissions:

161- Each of the two Lt's, due to his official status was both, the duty to legally supervise the lower officers, and the legal duty towards me...Both Lts, wilfully and wantorly breached those duties. As a result, the tortures against me were much prolonged and harmful; Both Lti, witnessed the tortures against me, Supra. 46. After I saw them, I made my crying louder, expecting them to stop the beatings, but they didn't. at 47. Each of the Lts, saw me being atta-cked, while limping, fully restrained, and each heard and saw me begging for their intervention..., at 48. Lt. Armijo, was Lt. incharge of the unit operations on 8-23-18, at 50. Armijo, lied to me to avoid his legal duty. at 51-52. Lt. Murton, supervised the tortures on me, at 59, 65, 66. He also verbally abused me, at 60, 65. Murton, ordered me to beaten more because I couldn't walk straight and I couldn't remain silent, without crying out... at 61-62.


CLAIM FIFTEEN: NEGLIGENT PERFORMANCE. AGAINST THE U.S. Based on Actions and Omission of Jones, Huddleston, and Osagie:

CLAIM 15-A: The Intentional Failure to Diagnose my ankle injury for 2-weeks: 162- I was injured on 8-23-18. But the x-ray was ordered on, 8-31-18, Supra, 139, 152. The diagnose was made in 9-5-18, at 139. This 2-weeks delay was intentional. Each of the 3-medical staff could have ordered earlier x-ray, hence, produced earlier diagnose, but each wilfully and wantonly declined to do that: JONES saw me minu-tes after the beating stopped, saw me obvious symptoms, heard my complains but refused to order an x-ray ... or even look at the injuries, at 131-133. My injuries were so obvious, ...noticeble to any one, medical or non-medical professional, at 135. Each, JONES (at 133) HUDDLESTON (at 141), and OSAGIE (at 146) made statements that indicates the motive of the early treatment/diagnose was my Hist. HUDDLESTON also, witnessed my obvious and substantial injuries, and heard my complains, and, he knew that forced was used against me..., but he refused to do any thing to get the diagnose earlier, at 141. The injuries he saw on me were obvious to medical proffe-ssional to a lay man, at 142-43. OSAGIE saw my injury and crying and heard my complains, but repeatedly acted with high level of reckless...at 145-51. OSAGIE didn't actually exame my ankle on 8-31-18, because the need of x-ray was obvious to any one he simply ordered for an x-ray. at 153-54. The delay of diagnose caused huge injury through unnecessary pain and possibly, prolonged it

CLAIM 15-B: Intentional Deprevation of Pain medication, for almost 8-months: 163- Each of the 3-medical staff, willfully and wantoly refused me pain medication. Supra. 162. Each recognized and saw my serious injuries, at. 131-57. The only pain medic. give-n to me before April 2019, was 14 ibuprofen in 16-6-18. I made all efforts to get pain me-dic. before April 2019, but ADX's-medic-staff refused or were unresponsive...at 121-25.

## D. STATEMENT OF CLAIMS:

### ADDITIONAL FACTS:

164 - When I was in H. st. and in need of pain medication, I put repeated commissary requests for pain medication and other stuff, but I never got the medication.

165 - After the H. st. I got pain medication from the commissary, some time purchased by other prisoners for me. But non if these medication helped my pain. Among the medication that I got from commissary were: Ibuprofin, Aspirin, and Naproxen Sodium 220 mg. Non helped, and I told medical staff but kept refusing prescribe me pain medication till April 2019, see supra. ¶21-125.

166 - In previous hunger strikes, and even in that one of 2018, I was allowed to use at least some medications. The medical wouldn't take my medications which I almost always hapened to have in my cell. In that H. st. even though the medical staff refused to provide me any pain medication, they gave me a milk of magnesia, laxative for my constipation.

167 - After the 2018 H. st. I have at twice gone on H. sts. and in both I continue to keep and used all of my medication, including the pain medication that was first prescribed for me in April 2019.

168 - Right after I was injured in 8-23-18, I also complained about my substantial and obvious injuries to the unit staff. This include, but not limited to, ms. Torre, the then c-unit correctional counsel. I spoke with her in the following morning of 8-24-18... I told her that I'm full of pain and I thought that my legs and hands are broken... and I need pain medication and be examed by medical staff. She saw me limping in pain toward the cell bars to show her the substantiall and obvious swellings on my legs, hands and one side of my face... I also showed her the cuts on my left wrist, caused by officer's mis-used of the hand cuffs. Supra 40. Noticing the obvious injuries, especially the substantial swellings, she asked me whether I was x-rayed, to which, I said no. She said she'll contact the medical because she think, as she put it "those swelling must show that some thing is really wrong". She said, she think I need an x-ray, and don't know why I haven't got one. Also, at the evening of that day I asked the unit officer to contact the medical for the same stated reasons. Later, the officers told me that I'll be moved to cell #406, See supra 1. When they opened my cell door, with them a fimale Lt, I told them I cant work to upstairs of B-range due to the pain. When the officers observed my obvious injuries, especially the huge swellings on my legs, they asked whether I got any pain medication and x-ray. I said: No, they said, they'll call the medical, they said, because obviously I needed x-ray and pain medic. but insisted: I must work to cell #406, because even though obviously I'm injured, medical didn't provide them any memo indicating that I cant work.

169 - To this day, due to un healed fracture on my ankle, I cant prolong my standing prayers, jog, seat in certain positions, jump with my right leg... etc. without experiencing serious pain and risking to trigger a fresh fracture. I don't believe that my fracture was healed during the cast removal and I know, the cast was too old to be affected d. ¶114-2).

26-

## D. STATEMENT OF CLAIMS

### CAUSES OF ACTION: RIGHTS VIOLATED BY THE DEFENDANTS:

- **EXCESSIVE FORCE CLAIMS: Claims: 1, 3 and 5. against Brush, Miller & Espanoza:**

170- Officers, BRUSH, MILLER and ESPANOZA, individually and collectively, violated my 8th Amendment right, by inflicting on me cruel and unusual punishment, through maliciously and sadistically using physical excessive force... The force used was unnecessary and excessive; the officers knew that I was weak and in Hist., supra 10-15. They attacked me without prior warning, nor need, at 25, I was not resisting, at 27, and at all times of the attacks, I was in full restraints, at 22, 30. Further more, they made huge efforts to heet me on face, at 55-57, pulling my beard and ears and attacked me in other means, at 72-74. These and the rest of the attacks left me with substantial physical and emotional injuries and pains, at 114-124.

171- The three officers along with others and Lt. MURTON, also knowingly violated several BOP's own regulations. These include but not limited to; Prog-Statement, No: P.5566. 06, (of. 11.3.2005)* "USE OF FORCE", Ex. 5, "the BOP authorize use of force as a last alternative." and "staff must only use that amount of force necessary..." Id. at 1. And "force will...be used only when attempts to gain voluntary cooperation...have not been successful" Id. 2 a.b. The officers should have used "calculated use of force" because I was in secured area. Id. 4. b. page. 6. But they violated this policy, because they pre meditated the attacks on me. See also, other violations, Id. b. a., b., hn. (1) (3). also at. 14 c, Pg: 23 (Video taping the use of force). They also violated Pr. stat. No: 3420.11. (. 12.6.2013) "STANDARDS of Employee conduct", by using physical violence, threats...and "profane...abusive language... and brutality... on me, Ex. 2 at 5 c. (page 2)

- **FAILURE TO INTERVENE CLAIMS: Claims, 2, 4 and 6. V. Acmiso, Murton and Osagie:**

172- ACMISO, MURTON and OSAGIE, violated my 8th Amendment rights: right to be free from cruel and unusual punishment, each had "a concomitant constitutional duty to protect me from such harm" Hudson v. McMillan. Each of these 'three' had "realistic opportunity" to stop further violations of my right, but failed to do saw. Each watched the attacks on me and MURTON organized them. Supra, at. 46-51, 59-62, 65, 76-84. Each of the three was in a supervisal; senior position, and could easily stop the abuses. Their choice to stand-by and perticipate in the abuses, prolonged my sufferings and injuries.

173- The two Lt's also knowingly violated BOP's program stats, see Ex. 5, at. 15, a. page, 24-25 (stating that Lt. must "display professional behavior..." and "ensure only the force necessary to control the inmate is used...")

174- OSAGIE was one the most influencial ADX's staff in dealing with muslim prisoners including myself. I have witnessed him in many occassions overriding others' judgments.

- **DELIBERATE INDIFFERENCE CLAIMS: 8, 9, and 10. V. Jones, Huddleston, and Osagie:**

175- Each of these three defendants, violated my 8th Amendment right by acting with deliberate indifferent manner towards my substantial and serious medical needs. Each, even refused to exame my injuries, even though they were obvious and I have complained to them about those injuries. Supra at. 131-37, 140-44, 146-57.

## B. STATEMENT OF CLAIMS:

176- These defendants' deliberate indifference resulted to substantial harms and damages. This includes but not limited to: the delay of x-ray, resulted in to delay of diagnose. For two weeks, I was force to make long walks (up stairs-down stairs in med assessment), forced to walk to distance cell, at 168, forced to walk and trapped with chains for hours, forced to walk back from medical unit, limping perhaps 400-mitters, forced to walk within my cell... for 2-weeks... without a wheel chair, splint or cast... All these unnecessarily increased me excruciating pain, and increased the undiagnosed fracture to be more clearly and to prolong the healing process... to this very day. See Injuries, at 114-125.

177- When JONES came to my cell with the wheel chair and splint, at 139, he said that the Orthopedist, said the officer should no longer strapp my ankle until the hard cast put on me, because the strapping increase the injuries. From now on, I was always moved through a wheel chair... But these only came after 2-weeks of intentional, unnecessary deadly pain... The 3-of defendants also violated my 8th Amend. by refusing me pain medication for almost 8-months, supra, at 119-25. Also, they violate B.O.P's prog. statement.

## - FREEDOM OF SPEECH CLAIM: CLAIM 7. Against BRUSH:

178- BRUSH violated my 1st. Amendment right of the U.S. Constitution that forbid "abridging the freedom of speech, ur of the press." Brush's actions were motivated by evil intent, at 86, 105. His action had no reasonable correlation with any penelogical interest, Id. Brush's actions against my materials left me with irreplaceble loss and damages and caused me to suffer a great deal of emotional and mental pain and damages.

179- BRUSH also knowingly violated BOP's pr. stat. see EX. 8 (inmate personal property) at 5(b) (2)(i) through (v) (stating me policy on "contraband"... inmate must be provided with envetory list, given oppurtunity to identify his material, chance to send them home... and in case material destroyed, staff will documents the materials and reasons for such destruction...) BRUSH never did any of these requirements. BRUSH also violated Prog. stat. of Hunger strike, see EX. 6 at 9. C. (stating that staff only remove "any commissary food items..." during H.st. "inmate may still purchase noon food items..."). BRUSH took my precious materials and everything else. at 102-103. BRUSH also violated Prog. stat. on inmate manuscripts, EX. 9, at 6-8 (stating that inmate is allowed to prepare... and, send out and publish manuscripts") BRUSH stole myne. at 89-92.

## - BATTERY CLAIMS: CLAIM 11-13. Against the United States of America.

180- The U.S is liable under Colorado law because its agents intentionally, willfully and wantonly attacked me... at 158-160. And caused long time and irrepeable harms, damages and injuries. See the injuries, at 114-128. The officers, repeatedly verbally expressed their evil intents... See example at 36, 60, 65, 72, and 74.

## - NEGLIGENT SUPERVISION AND NEGLIGENT PERFORMANCE CLAIMS: 14-15, V. U.S.

181- The U.S. is liable under colorado law because the 2-Lts (claim 14) and the 3-medical staff (claim 15) had legal duty of care and supervising others, respectively. The Lts breach of the duty, prolonged the harm on me... supra at 161. The 3-medics breach of the duty caused and prolonged the harms and injuries at; 162-3. The injuries were foreseeble, and my conditions were obvious equally to medical professional and lay men; at 168, 135, 143, 153.

-28-

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):          Erick Holder, et al.

Docket number and court:          07-cv-02697-MSK-GNB

Claims raised:          Several constitutional claims

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)    Trial, partially relief granted

Reasons for dismissal, if dismissed:    _____

Result on appeal, if appealed:    _____

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. § 1997e(a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

        ✓ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

        ✓ Yes ___ No (*check one*)

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF.* wherefore, asking the court to grant me the followings:

A- Issue injunction order to Jones, Huddleston and Osagie (claim 8-10, offic. capacities) to arrange immidiatelly for me to be examed by an expert in broken bones, and follow his recommendation on treatment, including suggery.

B- Immidiatelly arange for psychiastrist to evewate and treat me for the PTSD, etc.

C- Issue an injunction, ordering Brush (claim 7, offic. capacity) to immidiately locate the material he confiscated from my cell, and submit them to me in their enterety.

D- Award me compensantory damages jointly and severally against Jones, Huddleston, and Osagie for their deliberate indiff. (claims 8-10, individual capacities).

E- Award me compensantory damages against Brush, Miller and Espanoza, for exc. force (1,3,5).

F- Award me compensatory damages against Us-himeljo, Murton and Osagie, for failure to intervine (claim 2,4, and 6).

G- Award me demage against Brush, for 1st Amend violation (claim 7, individual capacity).

H- Award me punitive damage against each of individual defendant.

I-J- Attorney+expert fees, if one will vownter or opponte. Also my filing fee, postage..etc.

K- Award me 2-million dollers, against the US, (Tort claims: 11-15).

## H.     PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Mohammed
(Plaintiff's signature)

May 19, 2021
(Date)

(Form Revised December 2017)

30

## CERTIFICATE OF SERVICES:

I, Khalfan Kh: Mohamed, hereby certify that on May 19, 2021, have mailed out my Second Amended Complaint with the attached exhibits, addressed to:

Office of the Clerk
United States District Court
901-19th street, Room A105
Denver, CO 80294, 3589.

Dated, May 19, 2021

Khalfan Kh. Mohamed.
U.S.P, Florence, PO BOX 8500               Khalfan Kh. Mohamed, #44623-054
Florence, CO 81226-8500                    May 19, 2021
                                           S/ Mohammed

---

## DECLARATION OF MAILING:

I, Khalfan Kh. Mohamed, declare under penalty of perjury, under 28 U.S.C § 1746, that on May 19, 2021, have submitted my above refranced document with attached exhibits, as a legal mail, with all necessary legal mail Requirement at ADX and sufficient Postage. Addressed to:

Office of the Clerk
United States District Court
901-19th street, Room A105
Denver, CO 80294-3589.

Dated: May 19, 2021

Khalfan Kh. Mohamed                        Khalfan Kh. Mohamed, 44623-054
U.S.P, Florence, PO BOX 8500               May 19 2021
Florence, CO 81226-8500                    S/ Mohammed.