C. Ex:1- through:91 Are exh. with the 2nd Amended Complaint

Attachment :1

EX:1: EXCESSIVE FORCE ADMN. REMEDY + RESPONSE.

U.S. Department of Justice

Federal Bureau of Prisons

*Received   1.29.19*

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Mohamed Khapan K | 44623-054 | D | ADX |
|-------|------------------|-----------|---|-----|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** I'm asking the expunge of Inc. report # 224 issued by C.O.BRUSH on 8.23.18. Also asking that C.O.BRUSH and his associates be held criminally responsible for their crimes against me. The Adx-authority also responsible. The Reg. Director failed to respond.
- C.O. BRUSH Lied in the Inc. report, Claiming that he asked me to be moved to the holding cell. Infact, all what he said was to move me to my cell # 108, C-unit, after I declined to go to see Lt Armulla, as he first asked me to. This claim was then rejected by the Lt. him self, who said to me; he didn't know anything about that.
(see # 1) The Reg. Director wrote that I must appeal to the warden the DHO finding. But I'm forced not to since I never received the DHO report. Also I request the appeal was used to punish me even more.
- and C.O. MILLER, among other, be held responsible along with the top Adx-authority.
- on 8.23.18 C.O BRUSH, Lt MURTON, CO. ESPANOLA, CO MILLER etc, committed a serious crimes against me without any provocation. C.O BRUSH, possibly with help from others, broke my right ankle intentionally and without any provocation. last received many other injuries.
- LT MURTON, Supervised and led the assault and beating on me. He was there to give orders in these crimes, especially in the holding cell.
- I have never assaulted or harmed no one that day. Only I refused to go to Lt office.
- The Adx and BOP in general can't be an investigative and judge in these crimes.
- The Adx fully responsible in the crime and there be accountable for the damage I was made to receive unprovocaly.

| 12.19.18 | Mohamed |
|----------|---------|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

RECEIVED

JAN 2 8 2019

Administrative Remedy Section
Federal Bureau of Prisons

_____

| | GENERAL COUNSEL |
|---|---|
| DATE | |
| ORIGINAL: RETURN TO INMATE | CASE NUMBER: 955144-A1 |

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

| | |
|---|---|
| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |

UPN LVN          PRINTED ON RECYCLED PAPER          BP-231(13)
JUNE 2002

**Administrative Remedy No. 955144-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you allege on August 23, 2018, staff members at the ADX physically assaulted you without provocation. You also claim a false incident report was prepared to cover staff's actions. You request the incident report be expunged and the responsible staff members held criminally responsible for their alleged actions.

As indicated by the Warden and Regional Director, your allegation of physical assault by staff members at the ADX was forwarded to the appropriate authority for review. A thorough review will be conducted and proper action will be taken as deemed necessary. However, a decision to personally press criminal charges is one which is yours to make. You may contact whichever prosecutorial entity or legal advisor you believe is appropriate to assist you with this matter.

In addition, you have the ability to file a remedy appealing any sustained disciplinary action. Therefore, the incident report you received on August 23, 2018, will not be addressed in this response.

This response is provided for informational purposes.

_____3 | 29 | 19_____              _____
Date                                Ian Connors, Administrator
                                    National Inmate Appeals

RECEIVED
APR 2 4 2019
ADX Warden's Office

Attachment : 2

EX: 2 : DESTRUCTION/CONFISC. OF MY MATERIAL ADMN. REMEDY + Respons.

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: MOHAMED KHAFAN K.          44623-054          A          Adx
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL** The Reg. Director and the warden failed to address my complaint.
- I'm asking the full return of my personal property or complete payment of its cost
if those property are lost/destroyed.
- The staff /gov./BOP cant steal /destroy my property without full due process afforded me
- the removal of my personal property and stealing them, is a complete violation of my const. rights
under 5th Amend. off U.S Constitution.
- On 8/13/14, C.O. Brush /and others, took my personal property that includes a) my invoices
(2) 3- large and other manuscripts. (3) my journals. (4) My notes, from 100+ diff. books (5)
my books, 9-10 of them, (6) 15-20 personal letters (7) N. papers. (8) Differ. Commissary items
including my personal clothing, religious items, cosmetics, writing materials, medical items
(9) C.O. Brush also has stolen my legal materials and (10) 20 photo tickets. He also stole
many other materials.
- Repeated Lies. No it ever worked with me to prove/my ownership of stolen items. I sent
a lie their trevor complaint about my missing property. I have done so even during my Histrike
before I knew that my property not to be returned. I spoke/wrote to unit staff, Lt., and even
the warden him self.
- I'm asking for my property or complete payment of them.
- The org /gov./ crime. The Adx-planned the crimes and now the whole BOP defend it. No good.
4/5/15                                        Mohamed
DATE                                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

proper!

RECEIVED
APR 1 5 2014
Administrative Remedy Section
Federal Bureau of Prisons

EX. 2

DATE          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 960784-A1

**Part C - RECEIPT**
                                        CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

DATE          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN          PRINTED ON RECYCLED PAPER          BP-231(13)
JUNE 2002

Administrative Remedy Number 960784-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal, in which you claim your staff members have not returned all
of your property.  For relief, you request the return of your
property or compensation.

We have reviewed documentation relevant to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns at the time of
your Request for Administrative Remedy and subsequent appeal.  Your
property was taken while you were on a hunger strike.  Once you
declared your hunger strike was over, authorized property was
returned.  Staff members have made attempts for you to show proof
of ownership for some items and have provided you with a confiscation
form.  You provide no additional information to support your claim
of staff members acting contrary to established policy and procedures
or outside the scope of their duties.

Lastly, regarding your request for compensation, Program Statement
1330.18, Administrative Remedy Program, does not provide such
relief.  There is a statutorily-mandated procedure in place for
addressing such a request.  Therefore, your request will not be
considered in this response.

Accordingly, your appeal is denied.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

RECEIVED

JUL 16 2019

ADX AW Office

Attachment :3

EX: 3: DE PRAVATION OF MEDICAL TREAT. ADMN. REMEDY+RESPONSE

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: MOHAMED KHATRAN K      44623-054      D      ADX
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL The Reg. director failed to respond. I'm asking that my const./prisoner rights including adequate medical needs be respected and holding the ADX [BOP/DW respons. for all damages. - ADX medical intentionally neglected and ignores my medical needs. Examples:

1- The medical ignored my being in H. strike even though I informed them and other staff. I started H. strike in 8/21/18, but I was assessed only in 8/23/18. A c/o broke my right ankle, but medical refused to assess my ankle and gave me an x-ray till 8/31/18.

2- While my ankle was broke and in H. strike, medical staff forced me to work with legg cuffs chains and black box and I was chained on a solid black chair at least twice... causing deadly pain and possibly increased the fracture. Only in 9/5/18 I was given a wheelchair.

3- Since 8/26/18 up to 10/2/18, I have been complaining about the pain in my legs, wrists, jaws, backs at least 3-time per week during the H. strike assessment. And my first complaint, was in the day I was brutally assaulted by a group of officers in C-unit in 8/23/18

4- I didn't have to put a sick call req, but I put it multiple times incl. 9/25/18, 10/14/18 ..etc

5- Only in 10/30/18 I got x-ray on my wrist and jaws, almost 70-days after I was assaulted.

6- Today, as of 1.3.19, my ankle, wrist..etc still full of pain. Her In recent weeks I put 2-sick call C/18/18, and another one after that, but no medical treatment I receive but a few tablets.

★ I'm asking that my const. and prison rights be kept. All above violations violates my rights... and I am holding the ADX [BOP responsible for all and each damages I'm receiving.

    Mohamed

1/3/19
DATE                                    SIGNATURE OF REQUESTER

Part B - RESPONSE

RECEIVED

JAN 28 2019

Administrative Remedy Section
Federal Bureau of Prisons

_____                    _____
DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE              CASE NUMBER: 958295 A1

Part C - RECEIPT                        CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT: _____

_____                    _____
DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**Administrative Remedy No. 958295-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal wherein you allege your medical negligence with regard to
various injuries. For relief, you request to receive adequate
medical treatment.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal. Most recently, you were evaluated by the physician on
December 6, 2018, at which time the ankle fracture was noted to
be healed and x-rays of your right wrist were noted to be
normal. You were prescribed Ibuprofen and counseled on
safety/accident prevention. There is no evidence to suggest
medical negligence.

The record reflects you have received medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons. You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your condition change.

Considering the foregoing, this response is provided for
informational purposes only.


_2 (11 19_
Date

_JC_
Ian Connors, Administrator
National Inmate Appeals

Attachment: A

EX: 4, ADMN. TORT CLAIM + RESPONSE.

Ex. 4

page 1

1. Submit to Appropriate Fedrlag TO: The Regional Director, Federal Bureau of Prisons North Central Regional Office Gateway Complex, Tower II, 8th Floor 400 State Avenue, Kansas City, Kansas 66101-2492.

2. Name, Address of claimant, et...

Khalfan Khamis Mohamed Reg# 44673-054, U.S. Penitentiary max, PO Box 8500 Florence, CO 81226-8500

| 3. TYPE OF EMPLOY. | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME. |
|---|---|---|---|---|
| N/A | 7-25-1973 | | 8.23.2018, (~Unit AOx Floor App ~12:20 pm | |

8. BASIS FOR OF CLAIM...

                                         I was severely beaten, punched, kicked by large number of officers/prison guards in retaliation for my hunger strike. The beatings took place when I was already restrained and handcuffed and while I was weak in hunger strike.
Over the course of his beating my ankle was fractured and my other limbs were aggressively twisted in attempt to break them and I received bruces in that to s. upper body. My face, head, heels and legs all were swollen. Eventually over the next several months I was given neglegant medical treatments. this includes the delay examination on my injuries and delay of diagnoses
CONTINUE

9.                                   PROPERTY DAMAGE
NAME AND ADDRESS OF OWNER...
N/A

BRIEFLY DESCRIBE THE PROPERTY...
N/A

                        PERSONAL INJURY/WRONGFUL DEATH
STATE NATURE AND EXTENT OF EACH INJ...
                          Severely fractured ankle and in severe pains on my right leg especially when standing and walking, also inability to walk normally and total inability of exercising.
The pain on my ankle and my right wrist prevents me up to this day to pray normally while my wrist is producing pains while bending = CONTINUE

11.                          WITNESSES
              NAME                              ADDRESS
Mr. R. O. Ssagic                      N/A

| 12.a PROPERTY DAMAGE | 12b PERSONAL INJURY | 12c WRONGFUL DEATH | 12d. TOTAL |
|---|---|---|---|
| N/A | 2,000,000 Two million dollar | N/A | 2,000,000 Two millions dollars |

| 13a. SIGNATURE OF CLAIMANT | 13b. Phone number of... | 14. DATE OF CLAIM |
|---|---|---|
| Mohamed | N/A | April 8. 2019 |

Page 2.

## 8. BASIS OF CLAIM (CONTINUES)

diagnoses, refusal to provide treatment, pain medication and even an ice bag, except on one occasion.

I still cant walk normally today, 7+ moths after, I was attacked and I may never walk properly again. At the same time, I still have regular pain on my ankle, wrists, back and on my jaws.

The staff intentionally broke my bones and then refused me proper medical treatment

## 10.                    PERSONAL INJURY - CONTINUES

writing and I cant write continuously at a single seating as I used to do before I was attacked. I have to stop in every few minutes.

Also I still have pains on other parts of my body including on my Jaws, back and my left wrist.

Also till this day I have emotional and mental distress including the fear of being beaten again and being killed, as the officers had told me that they will kill me. I have dreamsand strange night mare of being attacked etc.



**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

_____

Office of the Regional Counsel

400 State Avenue
Tower II, Suite 800
Kansas City, KS  66101


January 26, 2021


Khalfan Khamis Mohamed, #44623-054
United States Penitentiary Administrative Maximum - ADX
P.O. Box 8500
Florence, CO  81226

RE:    Tort Claim TRT-NCR-2019-04561
       Amount of Claim:  $2,000,000.00

       Certified Mail Receipt No:    7018 0360 0002 2080 7585

Dear Claimant:

Your above referenced tort claim has been considered for administrative review
pursuant to 28 C.F.R. § 0.172, <u>Authority: Federal Tort Claims</u> and 28 C.F.R. Part 14,
<u>Administrative Claims under Federal Tort Claims Act</u>:  Investigation of your claim did not
reveal that you suffered any personal injury as a result of the negligent acts or
omissions of Bureau of Prisons employees acting within the scope of their employment.

As a result of this investigation, your claim is denied.  This memorandum serves as a
notification of final denial under 28 C.F.R. § 14.9, <u>Final Denial of Claim</u>.  If you are
dissatisfied with our agency's action, you may file suit in an appropriate U.S. District
Court no later than 6 months after the date of mailing of this notification.

Sincerely,



Richard M. Winter
Regional Counsel

Attachment: 5

EX# 5: PROGRAM STAT: USE OF FORCE And APPL OF RESTRAINTS.

**OPI:**      **CPD/CPB**
**NUMBER:**    **5566.06, CN-1**
**DATE:**      **8/29/14**
**SUBJECT:**    <u>**Use of Force**</u> **and Application of Restraints**



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program

# Statement

OPI:    CPD/CPB

NUMBER:    5566.06, CN-1

DATE:     August 29, 2014

## <u>Use of Force</u> and Application of Restraints

/s/

*Approved*:   Charles E. Samuels, Jr.

             Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following change to Program Statement 5566.06, <u>Use of Force</u> and Application of Restraints, dated November 30, 2005:

proj

**1**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

<u>Print to PDF</u> without this message by purchasing novaPDF (http://www.novapdf.com/)

**Section 6d.**

An inmate who is pregnant should not be placed in restraints unless there are reasonable grounds to believe the inmate presents an immediate, serious threat of hurting herself, staff, or others, or that she presents an immediate credible risk of escape that cannot be reasonably contained through other methods.  For additional guidance refer to Section 13.



# Program

# Statement

**U.S. Department of Justice**

Federal Bureau of Prisons

**OPI:**   CPD/CSB

**NUMBER:**   P5566.06

**DATE:**   11/30/2005

**SUBJECT:**   <u>Use of Force</u> and Application of Restraints

1.    [<u>PURPOSE AND SCOPE</u> §552.20.    The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage,

and to ensure institution security and good order.    Staff are pro<sub></sub>

**2**

© 2020 Matthew Bender & Company, Inc , a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

**authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate:**

**a.     Assaults another individual; b.     Destroys government property; c.     Attempts suicide;**

**d.     Inflicts injury upon self; or**

**e.     Becomes violent or displays signs of imminent violence.**

**This rule on application of restraints does not restrict the use of restraints in situations requiring precautionary restraints, particularly in the movement or transfer of inmates (e.g., the use of handcuffs in moving inmates to and from a cell in detention, escorting an inmate to a Special Housing Unit pending investigation, etc.).]**

Under this rule precautionary restraints may also be used as prescribed by medical staff for medical purposes in accordance with procedures set forth in the Health Services Manual.

The use of restraints on inmates due to mental illness (e.g., to prevent suicide or infliction of self-injury) is subject to this Program Statement's provisions and the Program Statement on

**[Bracketed Bold - Rules]**

Regular Type - Implementing Information

Suicide Prevention Program.     This includes the placement, reviews, and release of inmates from restraints at all Bureau facilities, including medical referral centers.

This policy's purpose is not to discourage employees from using the amount of force necessary to protect themselves from assault, bodily harm, and/or loss of life.     This policy will provide guidance and instruction on appropriate procedures when

confronted with situations that may require the **use of force** to gain control of an inmate.

An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

2.     **PROGRAM OBJECTIVES**.     The expected results of this program

pro

**3**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

are:

a.   Force will ordinarily be used only when attempts to gain voluntary cooperation from the inmate have not been successful.

b.   When force is used, it will be only the amount of force required to subdue an inmate, or preserve or restore institution security and good order.

c.   Confrontation avoidance techniques will be used when feasible to avoid calculated **use of force** situations.

d.   When an inmate must be subdued, the **use-of-force** team technique will be used when feasible.

e.   Any inmate restrained to a bed will be checked every 15 minutes.

f.   Chemical agents will be used as specified and, to the extent practicable, only after a review of the inmate's medical file, unless such a delay would endanger the safety of the inmate, other inmates, staff and the community, result in severe property damage, or effectuate an escape.

g.   Restraints will be applied only for purposes outlined in policy and in authorized methods.

h.   Staff will be trained in confrontation avoidance, **use of force** team technique, use of chemical agents, and application of restraints.

i.   Each **use of force** incident will be documented, reported, and reviewed.

3.   **DIRECTIVES AFFECTED**

a.   **Directive Rescinded**

P5566.05   **Use of Force** and Application of Restraints on Inmates (12/31/96)

b.   **Directives Referenced**

P1380.05     Special Investigative Supervisors Manual (8/1/95)
P3420.09     Standards of Employee Conduct (2/5/99)

pro|

**4**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

P5214.04     HIV, Handling of Inmates Testing Positive (2/4/98)

P5324.03   Suicide Prevention Program (5/3/95)

P5500.11   Correctional Services Manual (10/10/03)

P5500.12   Correctional Services Procedures Manual (10/10/03)

P6031.01   Patient Care (1/15/05)

P6190.03   Infectious Disease Management (6/28/05)

c.   Rules cited in this Program Statement are contained in 28 CFR 552.20-27 and 29 CFR 1910.

**4.   STANDARDS REFERENCED**

a.   American Correctional Association 4th Edition Standards for Adult Correctional Institutions: 4-4190, 4-4191, 4-4202, 4-4203, 4-4206, 4-4281**(M)**, and 4-4405

b. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3A-17, 3-ALDF-3A-17-1, 3-ALDF-3A-28, 3-ALDF-3A-29, 3-ALDF-3A-31, and 3-ALDF-4E-32

c.   American Correctional Association 2nd Edition Standards for the Administration of Correctional Agencies:   2-CO-3A-01

5.   **[TYPES OF FORCE §552.21.]**   Since inmates occasionally become violent or display signs of imminent violence, it is sometimes necessary for staff to use force and restraints to prevent them from hurting themselves, staff, or others, and/or from destroying property.

**[a.   Immediate Use of Force.   Staff may immediately use force and/or apply restraints when the behavior described in §552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order.]**

Section 552.20 refers to Section 1 of this Program Statement.

In an immediate **use of force** situation, staff may respond with or without the presence or direction of a supervisor.

pro

**5**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

**[b.   Calculated Use of Force and/or Application of Restraints.**
**This occurs in situations where an inmate is in an area that can**
**be isolated (e.g., a locked cell, a range) and where there is no**
**immediate, direct threat to the inmate or others. When there is**
**time for the calculated use of force or application of**
**restraints, staff must first determine if the situation can be**
**resolved without resorting to force (see §552.23).]**

Section 552.23 refers to Section 7 of this Program Statement. (1)
**Circumstances.** Calculated rather than immediate use of

force is desirable in all instances corrections workers

encounter.   Although this is not always possible, staff must use

common sense and good correctional judgment in each incident to

determine whether the situation allows for the implementation of

calculated or immediate <u>use of force</u> procedures.

The safety of all persons is a major concern and Bureau of
Prisons staff are required by laws, rules, and regulations,
related to the Bureau of Prisons, to protect others from the
hostile actions of inmates.   Immediate or unplanned **use of force**
by staff is required when an inmate is trying to self-inflict
injuries which may be life-threatening or is assaulting any other
person to include other inmates.   The destruction of government
property may require the immediate **use of force** by staff in some
circumstances.    If the above circumstances are not present,
staff should, if possible, employ the principles of calculated
**use of force**.

Calculated **use of force** is appropriate, for example, if the
inmate is in a secure area or in an area where doors/grills may
be secured, including cases when the inmate is making verbal
threats or brandishing a weapon, provided staff believe there is
no immediate danger of the inmate inflicting injury or harm to
himself or herself or others.   Calculated **use of force** permits

the use of other staff (e.g., psychologists, counselors, etc.) to
attempt to resolve the situation non-confrontationally.

(2)     **Documentation.**   The entire interaction must be
documented in writing and placed in the FOI Exempt section of the

6

pro|

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

documented in writing.

The Warden or Acting Warden, Associate Warden (Correctional Services), Captain, and Health Services Administrator or designee will comprise the After-Action Review Team. Each review must be conducted on the next work day following the incident (see

Section 15). A representative of the Council of Prison Locals at the appropriate level will be provided a copy of the After-Action report in accordance with appropriate laws, rules, and regulations.

The Warden must provide documentation to the Regional Director within two work days after the inmate has been released from

restraints (if applicable). The report will confirm the review was conducted and the **use of force** was either appropriate or inappropriate. This requirement applies to all instances involving the **use of force**, excluding the use of firearms (see the Program Statements on the Correctional Services Manual and the Correctional Services Procedures Manual for additional information on **Use of Force** Team Techniques).

6.    [**PRINCIPLES GOVERNING THE USE OF FORCE AND APPLICATION OF RESTRAINTS** §552.22

a.    **Staff ordinarily shall first attempt to gain the inmate's voluntary cooperation before using force.**]

See Section 7 of this Program Statement for confrontation avoidance procedures prior to any calculated **use of force**.

[b.    **Force may not be used to punish an inmate.**

c.    **Staff shall use only that amount of force necessary to gain control of the inmate. Situations when an appropriate**

**amount of force may be warranted include, but are not limited to:**
**(1)    Defense or protection of self or others;**

**(2)    Enforcement of institutional regulations; and**

**(3)    The prevention of a crime or apprehension of one who has committed a crime.**

d.    **When immediate use of restraints is indicated, staff may**

pro‖

8

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

approval of the Warden or designee.

h.    Restraint equipment or devices (e.g., handcuffs) may not be used in any of the following ways:

(1)    As a method of punishing an inmate;

(2)    About an inmate's neck or face, or in any manner which restricts blood circulation or obstructs the inmate's airways;]

Tape shall not be placed around an inmate's mouth, nose, or neck.  Staff protective equipment must be sufficient to insulate staff from an inmate's spitting or biting, and conform with

29 CFR 1910.1030 and the Program Statement on Infectious Disease Management.    Staff will not use any item or device (e.g., towels, sheets, blankets, hosiery, masks) in **use of force** situations.

[(3)    In a manner that causes unnecessary physical pain or extreme discomfort;]

In general, when applying restraints, staff will use sound correctional judgement to ensure unnecessary pressure is not applied to the inmate.

Although the proper application of restraints may result in some discomfort, prohibited uses of restraints include, but are not limited to: "hogtying", unnecessarily tightness, or improperly applied restraints.  All inmates placed in restraints should be closely monitored.

When it is necessary to use continued restraints after any **use of force** incident, hard restraints (i.e., steel handcuffs and leg irons) are to be used only after soft restraints have proven ineffective, or a past history of ineffectiveness exists.

[(4)    To secure an inmate to a fixed object, such as a cell door or cell grill, except as provided in §552.24.]

Section 552.24 refers to Section 10 of this Program

Statement.

[i.    Medication may not be used as a restraint solely for security purposes.

pro

**10**

© 2020 Matthew Bender & Company, Inc , a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

11.     [USE OF CHEMICAL AGENTS OR NON-LETHAL WEAPONS §552.25.
The Warden may authorize the use of chemical agents or non-lethal
weapons only when the situation is such that the inmate:

a.     Is armed and/or barricaded; or,

b.     Cannot be approached without danger to self or others; and,

c.     It is determined that a delay in bringing the situation

under control would constitute a serious hazard to the inmate or
others, or would result in a major disturbance or serious
property damage.]

Qualified health personnel (Physician, Physician's Assistant,

or nurse) shall be consulted prior to staff using chemical agents

unless the circumstances require an immediate response.

Ordinarily, in a calculated **use of force** situation, the inmate's

medical file must be reviewed by these personnel to determine

whether the inmate has any diseases or conditions which would be

dangerously affected if chemical agents or non-lethal weapons are

used.   This includes, but is not limited to: asthma, emphysema,

bronchitis, tuberculosis, obstructive pulmonary disease, angina

pectoris, cardiac myopathy, or congestive heart failure.   Local

procedures will be developed where 24 hour medical coverage is

unavailable.

12.     [MEDICAL ATTENTION IN USE OF FORCE AND APPLICATION OF
RESTRAINTS INCIDENTS §552.26

    a.   In immediate use of force situations, staff shall seek the
assistance of mental health or qualified health personnel upon
gaining physical control of the inmate.   When possible, staff
shall seek such assistance at the onset of the violent behavior.
In calculated use of force situations, the use of force team
leader shall seek the guidance of qualified health
personnel (based on a review of the inmate's medical record) to
                                                              pro

**20**

© 2020 Matthew Bender & Company, Inc , a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

identify physical or mental problems.   When mental health staff or qualified health personnel determine that an inmate requires continuing care, and particularly when the inmate to be restrained is pregnant, the deciding staff shall assume responsibility for the inmate's care, to include possible admission to the institution hospital, or, in the case of a pregnant inmate, restraining her in other than face down four-point restraints.

b.      After any **use of force** or forcible application of restraints, the inmate shall be examined by qualified health personnel, and any injuries noted, immediately treated.]

If any staff involved in a **use of force** reports an injury, Health Services personnel should provide an immediate examination and initial emergency treatment as required.   Staff may also seek treatment from their personal physician.

13.      **USE OF FORCE IN SPECIAL CIRCUMSTANCES.**   In certain extenuating circumstances, and after confrontation avoidance has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions.

Special cases such as mentally ill, disabled, or pregnant inmates, after consultation with the Clinical Director, must be assessed carefully to determine whether the situation is grave enough to require the use of physical force.

a.      **Pregnant Inmates.**   When pregnant inmates have to be restrained, necessary precautions must be taken to ensure the fetus is unharmed.   Health Services personnel must prescribe the necessary precautions, including decisions about the manner in which the inmate is to be restrained, i.e., whether medical personnel should be present during the application of restraints, whether the inmate should be restrained at the institutional hospital or a local medical facility, etc.

b.      **Inmates with Wounds or Cuts.** Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached by staff in the prescribed protective clothing/gear.   A full body shield should also be

pro

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

used during these encounters to protect staff.   Aggressive inmates, after placement in restraints, should be placed in administrative detention and separated from other inmates.

Ordinarily, inmates of this status must remain in administrative detention until cleared to return to the general population by the Captain, Chief Psychologist, and the Clinical Director with the Warden's approval.

14.   **[DOCUMENTATION OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS §552.27.   Staff shall appropriately document all incidents involving the use of force, chemical agents, or**

**non-lethal weapons.   Staff shall also document, in writing, the use of restraints on an inmate who becomes violent or displays signs of imminent violence.   A copy of the report shall be placed in the inmate's central file.]**

a.   **Report of Incident**. A **Use of Force** Report (BP-E583) will be prepared on the **use of force**, chemical agents/pepper mace, progressive restraints, and non-lethal weapons.   This reporting requirement includes the application of progressive restraints on an inmate who complies with the placement of the restraints.

The report must establish the identity of all involved in the incident; inmates, staff, and others.   It must provide a vivid, detailed description of the incident.   The report, including mental health/medical reports must be submitted to the Warden or designee no later than the end of the tour of duty.   A copy of the report is to be placed in the inmate's central file.   Copies are also to be sent within two work days to:

(1)   Assistant Director, Correctional Programs Division; (2) Assistant Director, Health Services Division;

(3)   Central Office Correctional Services Administrator; (4) Regional Director; and,

(5)   Regional Correctional Services Administrator.

A report is not necessary for the general use of restraints

(for example, the routine movement or transfer of inmates).

pro

**22**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

b. **Use of Restraints Reporting Requirements**

**Documented Reviews.** The following reviews will be documented as indicated:

(a) Fifteen-minute check - **fifteen-Minute Restraints Check Form (24 Hours)** (BP-S0717.055);

(b) Two-hour Lieutenant check - **Two-Hour Lieutenant Restraints Check Form (24 Hours)** (BP-S0718.055);

(c) Health Services Staff Review - **Health Services Restraint Review Form (24 Hours)** (BP-S0719.055); and

(d) Psychology Staff Check - **Psychology Services Restraint Review Form (24 Hours)** (BP-S0720.055).

Staff must complete all forms until the inmate is released from restraints. The forms will be submitted to the Warden as required for periodic reviews of an inmate's placement in restraints. After release from restraints, these forms must be compiled and maintained in the Inmate's Central File and Special Investigative Supervisor's file.

c. **Videotape of Use of Force Incidents.** Staff must obtain a video camera immediately and record any **use of force** incident, unless it is determined that a delay in resolving the situation would endanger the inmate, staff, or others, or would result in a major disturbance or serious property damage.

The video recording will also include any medical examination conducted after:

the application of restraints,

use of chemical agents,

use of pepper mace, and/or

use of non-lethal weapons.

Calculated **use of force** shall be videotaped following the sequential guidelines presented in the Correctional Services

23

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

Manual. The original videotape must be maintained and secured as evidence in the SIS Office. A copy of every videotape, after review by the Warden (within four work days of the incident), unless requested sooner by the Regional Director, will be

provided immediately to the Regional Director for review.

The Regional Director shall forward videotapes of questionable or inappropriate cases immediately to the Assistant Director, Correctional Programs Division, Central Office, for review.

When a threat to the safety of the inmate, staff or others, or property, requires an immediate response, staff are obligated to obtain a camera and begin recording the event as soon as feasible. As soon as control of the situation has been obtained staff must record information on:

injuries;

circumstances that required the need for immediate **use of force**; and

identifications of the inmates, staff, and others involved.

d. **Documentation Maintenance.** The Captain must maintain all documentation, including the videotape and the original BP-E583, for a minimum of 2½ years. A separate file must be established on each **use of force** incident.

15. **AFTER-ACTION REVIEW OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS**. Following any incident involving the **use of force** (calculated or immediate) and the application of restraints, the Warden, Associate Warden (responsible for Correctional Services), Health Services Administrator, and Captain must meet and review the incident. The review is conducted to assess the rationale of the actions taken (e.g., if the force was appropriate and in proportion to the inmate's actions).

The review team should gather relevant information to determine if policy was adhered, and complete the standard After-Action Report (BP-E586), indicating the nature of the review and findings. The BP-E586 should be submitted within two working days after the inmate is released from restraints.

a. **Videotape Review.** The After-Action Review Team should

pro|

24

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

review the actions of the staff for compliance with the Correctional Services Manual and this policy.  At a minimum, this review should include the following:

The Lieutenant displayed professional behavior during the Forced Cell Team technique.

The Lieutenant ensured only the force necessary to control the inmate is used, based on the nature of the incident.

The Lieutenant monitored the actions of the inmate and team members; and was not involved in subduing the inmate unless it is deemed necessary to prevent staff or inmate injury.

The **Use of Force** Team members were wearing the proper protective gear.

Unauthorized items such as towels, tape, surgical mask, hosiery, etc., was not being used.

Introductions were made by the Lieutenant, Use if Force Team members, medical staff, and staff involved in the confrontation avoidance technique as well as

identifying all staff present, including those observing.

**Use of Force** Team members used sound correctional judgment to ensure unnecessary pressure is not applied to the inmate.

**Use of Force** Team members used only the amount of force necessary to gain control of the inmate.

Inabilities to effectively gain control of the inmate are assessed and may indicate that additional training is necessary.

There was continuous operation of the video and breaks were documented and appropriately justified.

Prompt examination of the inmate followed the move and findings were noted on the video tape.

The method of chemical agents used was predetermined and use of devices was in accordance with the Correctional Services Manual.

The inmate was given the opportunity to voluntarily submit to

pro

**25**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

the placement of restraints.

Conversations were appropriate and necessary between team members and individuals during the **use of force**.

b.   **Report Completion**. When this review is completed, an After-Action Review Report (BP-E586) must be completed, as soon as possible, not later than two working days after the inmate has been removed from restraints.   This will ensure that staff with relevant information will be available and any necessary medical follow-up can be immediately provided to ascertain the nature of any injuries involved.

The Warden or designee will attest by his or her signature that the review was conducted and the **use of force** was appropriate or inappropriate.

c.   **Further Investigation**. The reviewers should also decide if the matter requires further investigation.   If deemed appropriate, the Warden will refer the matter for further investigation to the Office of Inspector General, Office of Internal Affairs, or Federal Bureau of Investigation.   Copies of the report must be forwarded to the Regional Director and Assistant Director, Correctional Programs Division, Central Office.

d.   **Report on Restraints Use**.     A report is not necessary for the general use of restraints.   For example, a report is not required in the routine movement or transfer of inmates.

16.   **TRAINING IN THE CONFRONTATION AVOIDANCE/USE OF FORCE TECHNIQUE**. In order to control any potential situation involving aggressive inmates, all staff must be made aware of their responsibilities through ongoing training.   At a minimum, training must cover:

communication techniques,

**26**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

pro

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

Attachment : 6

Ex: 6: PROGRAM STATEMENT: HUNGER STRIKES.

OPI:        **HSD/HSS**
NUMBER:     **P5562.05**
DATE:       **7/29/2005**
SUBJECT:    **Hunger Strikes**



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

OPI:   HSD/HSS

NUMBER:   P5562.05

DATE:   7/29/2005

SUBJECT:   Hunger Strikes

1.   **[PURPOSE AND SCOPE §549.60.   The Bureau of Prisons provides guidelines for the medical and administrative management of inmates who engage in hunger strikes.   It is the responsibility of the Bureau of Prisons to monitor the health and welfare of individual inmates, and to ensure that procedures are pursued to preserve life.]**

2.   **SUMMARY OF CHANGES.**   Section 6 has been expanded to include

proj

1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

pretrial and holdover inmates and ICE detainees.

Section 9 identifies Health Services staff and Food Service staff as those who may offer alternative beverages and nutritional supplements, if authorized by the physician. This section also indicates food and toothpaste may be left in the inmate's cell.

Section 10 describes procedures for notifying the Regional Counsel when an inmate refuses treatment and the initiation of involuntary treatment.

3.   **PROGRAM OBJECTIVES.**   The expected results of this program are:

a.   The health and welfare of any inmate on a **hunger strike** will be monitored.

b.   Food and beverages will be offered to inmates regularly.

c.   When an inmate's life or health is threatened, involuntary medical treatment will be administered.

[**Bracketed Bold - Rules**]

Regular Type - Implementing Information

d.   Every incident of an inmate on a **hunger strike** will be properly reviewed, documented, and reported.

4.   **DIRECTIVES AFFECTED**

a.   **Directive Rescinded**

P5562.04   Hunger Strikes, Inmate (6/20/94)

b.   **Directives Referenced**

P5566.05   Use of Force and Application of Restraints on Inmates (7/25/96)

P6031.01   Patient Care (1/15/05)

P6090.01   Health Information Management (1/15/05)

c.   Rules cited in this Program Statement are contained in

pro|

**2**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

28 CFR § 549.60-66.

5.   **STANDARDS REFERENCED**

a.   American Correctional Association 4th

Edition Standards for

Adult Correctional Institutions: 4-4257 and 4-4397 **(M)**

b.   American Correctional Association 4th

Edition Standards for

Adult Local Detention Facilities: 4-ALDF-4D-15 **(M)** and

4-ALDF-2A-52

6. [**DEFINITION** §549.61.   **As defined in this rule, an inmate is on a hunger strike:**

   **a.   When he or she communicates that fact to staff and is observed by staff to be refraining from eating for a period of time, ordinarily in excess of 72 hours; or**

   **b.   When staff observe the inmate to be refraining from eating for a period in excess of 72 hours.   When staff consider it prudent to do so, a referral for medical evaluation may be made without waiting 72 hours.]**

A **hunger strike** may be announced by the inmate, or observed by staff, even though the inmate may be taking liquids.

**#**   At times, an inmate may not actually engage in a **hunger strike**, but merely make a bid to gain attention.

Other types of inmates (not on inpatient status in a Bureau of Prisons Medical Referral Center or hospitalized in the community) who should be monitored according to this policy include:

**#**   Inmates who are observed to be unable to eat or drink by virtue of mental illness or acute medical conditions.   Although not intentionally on a hunger

strike, these inmates are either unwilling or unable to eat or drink sufficiently to prevent complications.

pro

**3**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

\#   Inmates with metabolic disorders or certain other illnesses, who deviate from normal eating habits or intake of fluid, could experience an immediate, significant hazard to their health and well-being.

In any case, it is also recognized that after long-term deprivation of food and shorter term deprivation of fluid, serious irreversible changes can occur, and sudden death can occur.

Procedures required in this Program Statement apply to pretrial and holdover inmates and ICE detainees.

7. [**INITIAL REFERRAL    §549.62**

   a.   **Staff shall refer an inmate who is observed to be on a hunger strike to medical or mental health staff for evaluation and, when appropriate, for treatment.**]

Each Warden shall establish referral arrangements for the institution.   In addition, staff may consult Health Services anytime they observe an inmate refraining from consuming food and/or liquids prior to 72 hours.

   [**b.   Medical staff ordinarily shall place the inmate in a medically appropriate locked room for close monitoring.**]

Ordinarily, placement in the medically appropriate room is a determination the institution physician makes.   This room will be a single cell observation room (i.e., dry cell or cell with water shut-off capabilities), where no other inmate contact is possible (i.e., other inmates can't pass food or liquid items to the

inmate on **hunger strike** status).

Inmates in Administrative Detention or Disciplinary Segregation may be retained in this status and remain in the SHU unless the physician determines movement to other quarters is medically necessary.

The Warden is to determine the type of observation for **hunger strike** inmates (e.g. continuous, 15 minute checks, routine).

\#   Under no circumstances will inmate companions be used to

**4**

pro|

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

monitor **hunger strike** inmates.

8. [**INITIAL MEDICAL EVALUATION AND MANAGEMENT** §549.63

**a.    Medical  staff  shall  ordinarily  perform  the  following procedures upon initial referral of an inmate on a hunger strike**:

**(1)    Measure and record height and weight; (2)    Take and record vital signs;**

**(3)    Urinalysis;**

**(4)    Psychological and/or psychiatric evaluation; (5)    General medical evaluation;**

**(6)    Radiographs as clinically indicated;**

**(7)    Laboratory studies as clinically indicated.]**

If an inmate refuses the initial medical evaluation, a signed Refusal of Treatment form (BP-A358) must be obtained and also documented in the Progress Notes (SF-600) of the Inmate's Health Record.   (Refer to the Program Statement on Patient Care)

**[b.   Medical staff shall take and record weight and vital signs at least once every 24 hours while the inmate is on a hunger strike.   Other procedures identified in paragraph (a) of this section shall be repeated as medically indicated.**

**c.  When valid medical reasons exist, the physician may modify, discontinue, or expand any of the medical procedures described in paragraphs (a) and (b) of this section.**

**d.    When medical staff consider it medically mandatory, an inmate on a hunger strike will be transferred to a Medical Referral Center or to another Bureau institution considered medically appropriate, or to a community hospital.]**

The decision to transfer an inmate on a **hunger strike** for medical reasons should only be made after consultation with a physician.

**#**   The inmate should be admitted to a community hospital if his medical condition warrants continuous enteral (oral) or intravenous support.

pro

5

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

**#** Local institutions need not transfer an inmate on a **hunger strike** to a Medical Referral Center (MRC) unless an MRC's specific services are required.

**#** Mentally ill inmates who do not eat or drink for more than 30 days, regardless of the apparent reason, should be referred to an MRC for evaluation and treatment of the underlying mental illness.

e.   Medical staff shall record in the appropriate section of the inmate's Health Record, entries for all the medical procedures described in this section. (Refer to the Program Statement on Health Information Management.)

9.   [**FOOD/LIQUID INTAKE/OUTPUT** §549.64

a.   **Staff shall prepare and deliver to the inmate's room three meals per day or as otherwise authorized by the physician.**]

A verbal offer of a meal will not suffice. Food from the food tray may be left in the inmate's cell. Ordinarily, when the food tray is left in the inmate's cell, perishable food items will not be left for more than two hours.

[**b.   Staff shall provide the inmate an adequate supply of drinking water. Other beverages shall also be offered.**

c.   **Staff shall remove any commissary food items and private food supplies of the inmate while the inmate is on a hunger strike. An inmate may not make commissary food purchases while under hunger strike management.**]

An inmate under **hunger strike** management may still purchase non-food items, such as stamps, from the commissary. The inmate is allowed to have toothpaste in the dry cell.

d.   All food and water intake and output will be monitored and recorded as needed or to the extent possible. The Warden shall make this determination after consultation with the physician. This procedure is to continue until ended by a physician.

**#** This means a dry cell must be available for housing **hunger strike** inmates.

**6**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

pro

44623054

Health Services and Food Service staff may offer alternative beverages, including liquid nutritional supplements, if authorized by the physicians. Any beverages other than drinking water must be documented (e.g. BP-S292) and that information relayed to Health Services staff. Acceptance of liquids alone should not be documented as accepting a meal.

10. **[REFUSAL TO ACCEPT TREATMENT** §549.65**

   **a.   When, as a result of inadequate intake or abnormal output, a physician determines that the inmate's life or health will be threatened if treatment is not initiated immediately, the physician shall give consideration to involuntary medical treatment of the inmate.]**

The decision to force treatment upon the inmate is a medical decision, preferably by a written physician's order, with potential legal implications.

When it appears to medical staff that the inmate's condition is deteriorating to the extent that intervention may soon be required, the Regional Counsel must be notified so any legal issues may be addressed. Although legal counsel has been notified, medical staff should not suspend or delay involuntary treatment if the physician is convinced to a reasonable medical certainty that there is an immediate threat to the inmate's life, or permanent damage to the inmate's health.

Regional Counsel will determine whether it is appropriate to contact the local U.S. Attorney's Office.

**#**   In the case of potential involuntary treatment of a pretrial inmate, institution legal staff or the

Regional Counsel must be notified that intervention may be required, in order to determine whether the court should be notified.

**#**   In all such situations, the Regional Counsel will inform the Regional Director.

   **[b.   Prior to medical treatment being administered against the inmate's will, staff shall make reasonable efforts to convince the inmate to voluntarily accept treatment.   Medical risks faced by the inmate if treatment is not accepted shall also be**

proj

7

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Attachment : 7 :

EX: 7 : PROGRAM STATEMENT: STANDARDS OF EMPLOYEE CONDUCT.

OPI:            OGC/ELE
NUMBER:         3420.11
DATE:           12/6/2013
SUBJECT:        Standards of Employee Conduct



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

OPI:    OGC/ELE

NUMBER:    3420.11

DATE:    12/6/2013

SUBJECT:    Standards of Employee Conduct


*/s/*

*Approved*: Charles E. Samuels, Jr.

Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

To provide policies and procedures, referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

pro

1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

Attachment : 8

EX: 8 : PROGRAM STATEMENT : INMATE PERSONAL PROPERY.



**U.S. Department of Justice**

Federal Bureau of Prisons

Program Statement

# Program Statement

OPI:     CPD/CSB

NUMBER:  5580.08

DATE:    August 22, 2011

# Inmate Personal Property

/s/

*Approved*: Thomas R. Kane

Acting Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE**

**§ 553.10  Purpose and scope.**

**It is the policy of the Bureau of Prisons that an inmate may possess ordinarily only that property which the inmate is authorized to retain upon admission to the institution, which is issued while the inmate is in custody, which the inmate purchases in the institution commissary, or which is approved by staff to be mailed to, or otherwise received by an inmate.  These rules contribute to the** pro

**1**

© 2020 Matthew Bender & Company, Inc , a member of the LexisNexis Group  All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

Ammunition or explosives.

Combustible or flammable liquids.

Knives or tools not provided in accordance with the Program Statement **Correctional Services Manual**.

Hazardous or poisonous chemicals and gases.

Narcotics or other controlled substances not dispensed or approved by the institution HSU are also hard contraband.

Medicine the HSU dispensed or approved is hard contraband if not possessed by the inmate for whom it was prescribed or if not consumed or used in the manner prescribed.
Staff must consult the institution pharmacist or other health services staff member in any case involving questions whether a prescribed medication represents contraband.

Medicines the inmate carries into the institution at the time of commitment (e.g., voluntary commitment) will be forwarded to the institution medical staff for disposition. If appropriate, this medicine will be returned to the inmate.

**(2)   Staff shall consider as nuisance contraband any item other than hard contraband, which has never been authorized, or which may be, or which previously has been authorized for possession by an inmate, but whose possession is prohibited when it presents a threat to security or its condition or excessive quantities of it present a health, fire, or housekeeping hazard. Examples of nuisance contraband include: personal property no longer permitted for admission to the institution or permitted for sale in the commissary; altered personal property; excessive accumulation of commissary, newspapers, letters, or magazines which cannot be stored neatly and safely in the designated area; food items which are spoiled or retained beyond the point of safe consumption; government-issued items which have been altered, or other items made from government property without staff authorization.**

The Warden may set limits locally, based on available storage space, on the amount of commissary items, newspapers, magazines, etc., each inmate may retain.

## 5. PROCEDURES FOR HANDLING CONTRABAND

### § 553.13  Procedures for handling contraband.

**(a)   Staff shall seize any item in the institution which has been identified as**

prof

**9**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group All rights reserved Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

**contraband whether the item is found in the physical possession of an inmate, in an inmate's living quarters, or in common areas of the institution.**

**(b)   Staff shall dispose of items seized as contraband in accordance with the following procedures.**

Exceptions to these procedures may occur only upon written authorization of the Warden or designee.

The procedures described in this section apply to and include property found in the inmates physical possession, in an inmates living quarters, or in common areas of the institution.

These procedures also encompass the property of inmates processed through Receiving and Discharge (R&D), such as new commitments and inmates received through transfer.

When religious items are confiscated the chaplain must be consulted as to the validity of the items.

**(1)   Staff shall return to the institution's issuing authority any item of government property seized as contraband, except where the item is needed as evidence for disciplinary action or criminal prosecution.  In such cases, staff may retain the seized property as evidence.**

Seized government property, if not altered, may be placed in normal stock for reissue.

Altered government property, including items an inmate made from government property without staff authorization, will be destroyed at the Warden's discretion.

The Warden may delegate the authority to determine if altered government property is to be destroyed.

The chaplain must be consulted regarding the disposition of religious items confiscated.

**(2)   Items of personal property confiscated by staff as contraband are to be inventoried and stored pending identification of the true owner (if in question) and possible disciplinary action.   Following an inventory of the confiscated items, staff shall employ the following procedures.**

**(i)   Staff shall provide the inmate with a copy of the inventory as soon as practicable.  A copy of this inventory shall also be placed in the inmate's central file.**

Placing a copy of the inventory in the Inmate Central File will assist staff in the investigation of possible tort claims.

**(ii)   The inmate shall have seven days following receipt of the inventory to provide staff with evidence of ownership of the listed items.   A claim of ownership may not be accepted for an item made from the unauthorized use of** prop

**10**

© 2020 Matthew Bender & Company, Inc , a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

**government property. Items obtained from another inmate (for example, through purchase, or as a gift) without staff authorization may be considered nuisance contraband for which a claim of ownership is ordinarily not accepted.**

**(iii)  If the inmate establishes ownership, but the item is identified as contraband, staff shall mail such items (other than hard contraband), at the inmate's expense, to a destination of the inmate's choice.  The Warden or designee may authorize the institution to pay the cost of such mailings when the item had not been altered and originally had been permitted for admission to the institution or had been purchased from the commissary, or where the inmate has insufficient funds and no likelihood of new funds being received.  Where the inmate has established ownership of a contraband item, but is unwilling, although financially able to pay postage as required, or refuses to provide a mailing address for**

**return of the property, the property is to be disposed of through approved methods, including destruction of the property.**

The Confiscation and Disposition of Contraband form (BP-A0402) will be completed.

Ordinarily, the Correctional Systems Manager (CSM) is responsible for authorizing the institution to pay mailing costs.

**(iv)  If the inmate is unable to establish ownership, staff shall make reasonable efforts to identify the owner of the property before any decision to destroy the property is made.**

**(v)  Staff shall prepare and retain written documentation describing any items destroyed and the reasons for such action.**

Destroying contraband will be accomplished as follows:

   Ordinarily, the CSM (for R&D only) or Captain or designee receives the inmate's proof of ownership and determines if an item is contraband.

   When it is determined that the item is to be destroyed, the CSM (for R&D only) or Captain or designee will prepare the written documentation describing the item(s) destroyed and the reasons for this action.

   Ordinarily, property is held for 120 days before it is destroyed.  This delay allows an inmate the opportunity to obtain proof of ownership and/or appeal the decision through the Administrative

pro

**11**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

Remedy Procedure.

The employee who actually destroys the property, and at least one staff witness to the disposal, will state in writing that they have witnessed the destruction.

Records of disposal of property will remain on file for at least two years to ensure the availability of information necessary to an investigation of a subsequent tort claim.

**(vi)   Where disciplinary action is appropriate, staff shall delay disposition of property until completion of such action (including appeals).**

**(c)   Staff shall retain items of hard contraband for disciplinary action or prosecution or both.  The contraband items may be delivered to law enforcement personnel for official use.  When it is determined that the item is not needed for criminal prosecution, the hard contraband shall be destroyed as provided in paragraph (b)(2)(v) of this section.  Written documentation of the destruction shall be maintained for at least two years.**

**(d)   Staff may not allow an inmate to possess funds in excess of established institutional limits.   Staff shall deliver to the cashier any cash or negotiable instruments found in an inmate's possession which exceed the institution's**

**allowable limits.   Funds determined to be contraband shall be confiscated for crediting to the U.S. Treasury.**

All cash and negotiable instruments in the possession of inmates is unauthorized.

Cash and negotiable instruments that were inadvertently delivered to the inmate via the mail and are immediately turned over to staff shall be returned to the mail room to be processed in accordance with the Program Statement **Correspondence**.

All other cash and negotiable instruments found in the inmates possession shall be processed as contraband.  The cash and negotiable instruments shall be turned over to the cashier.

**(1)   Where disciplinary action against the inmate is appropriate, staff shall delay final disposition of the funds until such action (including appeals) is completed.**

**(2)   Prior to a decision on the disposition of funds, staff shall allow the inmate a reasonable amount of time to prove ownership.**

## 6. INMATE TRANSFER BETWEEN INSTITUTIONS AND INMATE RELEASE

pro

**12**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

**(2) The inmate's property may be sent with the inmate to the medical facility when the inmate is not expected to return to the sending institution, will be at the medical facility over 120 days, or for any other justified reason. The Warden at the sending institution shall prepare and place in the inmate's central file written documentation for forwarding the inmate's personal property.**

**(d) The Warden of the medical facility shall return an inmate's personal property ordinarily in the same or equivalent size container as originally used by the sending institution. Property accumulated over that amount, at the option of the inmate, will either be sent to a destination selected by the inmate, at the inmate's expense, donated, or destroyed. If the inmate is financially able but refuses to pay for the mailing, or if the inmate refuses to provide a mailing address for forwarding of the property, the property is to be disposed of through approved methods, including destruction of the property.**

On occasion, staff may allow an inmate to retain more property than he or she brought to the institution. Situations when this might be permitted include when the inmate has been at the institution over three months or when a transfer is unexpectedly effected immediately after the inmate has made significant commissary purchases.

If the inmate is re-designated after completing medical treatment to an institution other than the sending institution, the medical facility is to notify the sending institution of this fact via GroupWise.

The medical institution will send this message when treatment has been completed and the inmate is ready for transfer.
Upon receiving the GroupWise message, the institution retaining the inmates property will arrange for the property to be forwarded to the institution to which the inmate was transferred.

Ordinarily, once every 30 days, staff will inspect the stored property to guard against tampering or pilferage.

## 9. U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE) DETAINEES

ICE has placed limitations on the amount of personal property for detainees who will be deported. Consequently, detainees who transfer to other facilities should have their property limited to the following items:

> Wedding Band (plain, no stones).
> Prescribed Medication.
> Legal Materials (ongoing case).

**17**

pro

© 2020 Matthew Bender & Company, Inc , a member of the LexisNexis Group All rights reserved Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Attachment: 9

EX: 9 : PROGRAM STATEMENT : INMATE MANUSCRIPTS.

Federal Bureau of Prisons

# Program Statement

**OPI:** FPI

**NUMBER:** 5350.27

**DATE:** 7/27/99

**SUBJECT:** Inmate Manuscripts

1. **PURPOSE and SCOPE.** To encourage inmates to use their leisure time for creative writing and to permit the direct mailing of all manuscripts as ordinary correspondence.

2. **SUMMARY OF CHANGES.** This revision updates the Directives Referenced, adds a Program Objective and a Standards Referenced section, and makes other editorial and format changes consistent with current Bureau policy. The requirement for an Institution Supplement has been eliminated.

3. **PROGRAM OBJECTIVE.** The expected result of this program is: Inmates will be afforded the opportunity to write and mail manuscripts for publication.

4. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

PS 5350.07   Inmate Manuscripts (7/16/79)

b. **Directives Referenced**

1

pro

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

P S   5265.10   Correspondence (12/18/97)

P S   5270.07   Inmate Discipline and Special Housing Units

(12/29/87)

P S   5580.05   Personal Property, Inmate (9/30/96)

P S   5800.10   Mail Management Manual (11/3/95)

c.   Rules cited in this Program Statement are contained in 28 CFR 551.80 through 551.83.

**[Bracketed Bold - Rules]**

Regular Type - Implementing Information

PS 5350.27

7/27/99

Page 2

5.   **STANDARDS REFERENCED**

a.   American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:   3-4428 and 3-4429

b.   American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:   3-ALDF-5D-01

c.   American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:   None

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs:   1-ABC-5C-06 and 1-ABC-5D-01

pro

**2**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

6.    [DEFINITION.   §551.80.   As used in this rule, "manuscript" means fiction, nonfiction, poetry, music and lyrics, drawings and cartoons, and other writings of a similar nature.

7.    [MANUSCRIPT PREPARATION §551.81.   An inmate may prepare a manuscript for private use or for publication while in custody without staff approval.   The inmate may use only non-work time to prepare a manuscript.]

8.    [MAILING INMATE MANUSCRIPTS §551.82.   An inmate may mail a manuscript as general correspondence, in accordance with Part

540, Subpart B of this chapter.   An inmate may not circulate his manuscript within the institution.]

Part 540, Subpart B refers to the Program Statement on

Correspondence.

9.    [LIMITATIONS ON AN INMATE'S ACCUMULATION OF MANUSCRIPT MATERIAL §551.83.   The Warden may limit, for housekeeping, fire-prevention, or security reasons, the amount of accumulated inmate manuscript material.]

The Warden may choose to address the issue of accumulation of inmate manuscripts in the Institution Supplement on Inmate Personal Property.

/s/

Kathleen Hawk Sawyer

Director

pro[

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved  Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44623054

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)