IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02516-RBJ-KMT

KHALFAN KHAMIS MOHAMED,

    Plaintiff,

v.

JONES,
HUDDLESTON,
OSAGIE,
BRUSH,
ESPINOZA,
MILLER,
LT. MURTON,
LT. ARMIJO, and
UNITED STATES OF AMERICA,

    Defendants.

---

**MOTION TO DISMISS SECOND AMENDED COMPLAINT IN PART
PURSUANT TO RULES 12(b)(6) AND 12(b)(1)**

---

In his Second Amended Complaint ("SAC"), ECF No. 64, Plaintiff sues under the First and Eighth Amendments and the Federal Tort Claims Act ("FTCA"). Plaintiff's excessive-force, failure-to-intervene, and First Amendment claims against individually named defendants should be dismissed for lack of a *Bivens* remedy, and four Defendants are entitled to qualified immunity. The related official-capacity claims fail for failure to state a claim, as does the FTCA claim for negligent supervision, which is also not exhausted.

## BACKGROUND

Plaintiff, an ADX inmate, was convicted of the al Qaeda-directed bombings of the U.S. Embassies in Tanzania and Kenya in August 1998. *See United States v. Bin Laden*, 156 F. Supp.

1

2d 359, 360 (S.D.N.Y. 2001). While in BOP custody, Plaintiff helped a co-conspirator in the bombings attack a correctional officer. *United States v. Salim*, 287 F. Supp. 2d 250, 294-95, 355 (S.D.N.Y. 2003). Here, he claims that ADX officers violated his rights. Specifically, Plaintiff alleges that on August 23, 2018, while he was on hunger strike, officers beat him and verbally insulted him after he attempted to stop at his cell during an escort. He further alleges that written materials were removed from his cell during this time period, and that medical staff were deliberately indifferent to the injuries that he sustained as a result of the use of force. A detailed timeline of the relevant factual allegations is attached hereto as Exhibit 1.[1]

The following claims should be dismissed:[2]

| Claim | Defendant | Capacity | Bases for dismissal |
|---|---|---|---|
| Excessive Force | Brush | Individual | No *Bivens* remedy |
| | Miller | Individual | No *Bivens* remedy |
| | Espinoza | Individual | No *Bivens* remedy |
| Failure-to-intervene | Armijo | Individual | No *Bivens* remedy |
| | Murton | Individual | No *Bivens* remedy |
| | Osagie | Individual | No *Bivens* remedy; qualified immunity |
| Freedom of Speech | Brush | Individual and official[3] | No *Bivens* remedy; qualified immunity; no injunctive relief |
| Deliberate Indifference | Jones | Individual and official[4] | Qualified immunity; no injunctive relief |
| | Huddleston | Individual and official | Qualified immunity; no injunctive relief |
| | Osagie | Individual and official | Qualified immunity; no injunctive relief |
| Negligent Supervision | U.S. | | Failure to exhaust and state claim |

---

[1] The SAC consists of 30 handwritten pages containing a plethora of allegations. In order to efficiently present the most pertinent allegations relevant to this motion, Defendants have followed the suggestion in this Court's Practice Standards to provide a timeline of the key events. *See* RBJ Practice Standards at 3.

[2] If this Motion is granted, the following claims will remain: Plaintiff's battery claims against the United States (claims 11-13) and Plaintiff's medical malpractice claims against the United States (claims 15A and 15B).

[3] Plaintiff seeks an order that the confiscated materials be returned to him. SAC at 30.

[4] Plaintiff seeks an order that he be evaluated by outside specialists and a psychiatrist. *Id.*

# ARGUMENT

## I. The Court should not imply a *Bivens* remedy for the excessive force, failure-to-intervene, and First Amendment claims.

Plaintiff claims that Brush, Miller, and Espinoza used excessive force; that Armijo, Murton, and Osagie failed to intervene; and that Brush violated his First Amendment rights. *See* Ex. 1 at 1-3. All seven claims should be dismissed pursuant to Rule 12(b)(6) because special factors counsel against implying a novel *Bivens* remedy.

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a limited "implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights" in a case involving a Fourth Amendment claim for unreasonable search and seizure. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Court subsequently recognized a *Bivens* remedy in a Fifth Amendment equal-protection violation case, *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment failure-to-provide-adequate-medical-treatment case, *Carlson v. Green*, 446 U.S. 14 (1980). Since then, the Court "has consistently refused to extend *Bivens* to any new context." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) ("expanding the *Bivens* remedy is now a disfavored judicial activity").

In deciding whether to imply a *Bivens* remedy, a court must first determine whether the claim arises in a context that is different from *Bivens*, *Davis*, and *Carlson*. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (citing *Malesko*, 534 U.S. at 68). The context is new if it differs from previous Supreme Court cases due to, *inter alia*, the constitutional right at issue, the generality or specificity of the official action, the risk of disruptive intrusion by the judiciary into the functioning of other branches, or the presence of special factors that previous *Bivens* cases did not consider. *Abbasi*, 137 S. Ct. at 1860. If the context is new, the court must then assess: (1) whether any

alternative process exists, and (2) whether special factors counsel hesitation in implying a remedy. *See id*. at 1858.

### A.     First Amendment Claim

<u>The First Amendment claim here presents a new context</u>.  The allegedly improper removal of manuscripts and books from Plaintiff's cell involves an entirely different constitutional right and factual context than *Bivens*, *Carlson*, and *Green*.  Indeed, the Supreme Court has never found that *Bivens* extends to First Amendment claims.  *See, e.g.*, *Minneci v. Pollard*, 565 U.S. 118, 124 (2012) (recognizing that the Court has not found a *Bivens* remedy for violations of First Amendment rights); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citations omitted) (same).

<u>There are alternative processes available</u>.  *First*, Plaintiff can pursue a claim under the Small Claims Act, which allows "[t]he head of an agency" to "settle a claim for not more than $1,000 for damage to, or loss of, privately owned property that is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment . . ." 31 U.S.C. § 3723(a).  Congress did not choose to impose individual liability through the Small Claims Act.  *Second*, Plaintiff can seek a remedy under the prison grievance system.  *See* 28 C.F.R. § 542.10; *see also Malesko*, 534 U.S. at 74 (recognizing prison grievance system as available alternative process counseling against extending *Bivens*); *K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016) (same); *see also* ECF No. 64-1 at 4-6 (administrative remedy documents).

<u>There are additional special factors counseling judicial restraint</u>.  *First*, the Supreme Court has observed that there is "legislative action suggesting that Congress does not want a damages remedy" against individual correctional officers because it considered prisoner abuse in the context of the Prison Litigation Reform Act of 1996 ("PLRA") and has "been active in the area of prisoners' rights." *Abbasi*, 137 S. Ct. at 1865.  Congress's decision not to provide a stand-alone

damages remedy "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.*; *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1998) (courts should not imply a damages remedy where Congress's inaction "has not been inadvertent"). Separation-of-powers concerns are heightened in the prison context, where Congress is better suited than the judiciary to "balance the challenges prison administrators and officers face in maintaining prison security against the expansion of the private right of action for damages." *Morgan v. Shivers*, No. 1:14-cv-7921-GHW, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018); *Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial").

    *Second*, the Supreme Court recognized that the threat of personal liability could impede the proper functioning of BOP facilities by causing officials to alter their behavior and judgment to avoid individual liability, at the expense of institutional security and other critical prison-management decisions. *Abbasi*, 137 S. Ct. at 1863. Implying a damages remedy here would have a profound impact on BOP operations because officers' desire to avoid liability may cause them to hesitate in their response to disobedient behavior such as that at issue here. This is precisely the compromise to security and critical management decisions that the Supreme Court envisaged in limiting *Bivens*. *Abbasi*, 137 S. Ct. at 1863. In addition, "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered." *Id.* at 1856. That is why it rests with Congress "to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers . . . ." *Id.*

    Each of these concerns satisfies the "remarkably low" threshold for finding a special factor. Congress did not create a damages remedy in the First Amendment context, and the constant

5

specter of lawsuits will stifle the ability of prison officials to effectively regulate and monitor the items that inmates maintain in their cells. The Court should therefore decline to extend a *Bivens* remedy to Plaintiff's First Amendment claim. *See, e.g.*, *Millbrook v. Spitz*, No. 18-cv-01962-RM-KMT, 2019 WL 4594275, at *4 (D. Colo. Sept. 23, 2019); *Shepard v. Rangel*, No. 12-cv-01108-RM-KLM, 2014 WL 7366662, at *17 (D. Colo. Dec. 24, 2014).

### B.   Excessive Force and Failure-to-Intervene

<u>The claims present a new context</u>. Here, allegations that an inmate stopped unexpectedly during an escort and was then subjected to a use of force in order to bring him under control bear "little resemblance" to *Bivens*, *Carlson*, and *Green*, particularly where that inmate was subsequently convicted by a Disciplinary Hearing Officer of attempted assault. *See* SAC at ¶ 108; *Abdo v. Balsick*, No. 18-cv-01622-KMT, 2019 WL 6726230, at *6 (D. Colo. Dec. 11, 2019). The claims therefore present a new context.[5]

The Supreme Court has emphasized that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. And whether the Tenth Circuit has "implicit[ly]" recognized the extension of *Bivens* to excessive force claims in the Fourth Amendment context,[6] *see Smith*, 2021 WL 1799400, at *4-5, does not address the question of

---

[5] The Court need not decide whether all excessive force and failure-to-intervene claims present new contexts, although courts in this district have often so held. *See, e.g.*, *Abdo*, 2019 WL 6726230, at *6 ("no question" that excessive force claim was new context); *Millbrook*, 2019 WL 4594275, at *3-4 (new context where officer slammed handcuffed inmate's head and shoulders against bars and stuck finger in inmate's anus); *but see, e.g.*, *Smith v. Trujillo*, No. 20-cv-00877-RBJ-NYW, 2021 WL 1799400, at *4-5 (D. Colo. Mar. 26, 2021), *adopted*, 2021 WL 1608829 (D. Colo. Apr. 26, 2021).

[6] The cases cited in *Smith* neither implicitly nor explicitly countenance an extension of *Bivens* in the circumstances presented here. In *Jones v. Theodoroff*, 104 F. App'x 141 (10th Cir. 2004), the Tenth Circuit did not address whether a *Bivens* remedy existed. In *Farmer v. Brennan*, the

whether there are meaningful differences between a particular case (i.e., this case) and previous contexts. *See Abbasi*, 137 S. Ct. at 1859. One meaningful difference, even in "almost parallel circumstances" is enough. *Id.* at 1859. As *Smith* recognized, excessive force claims are "not identical on all fours" to previous *Bivens* contexts. 2021 WL 1799400, at *4. That is sufficient to demonstrate a new context. The same is true for Plaintiff's failure-to-intervene claims – allegations that officers failed to intervene to stop the use of force after an inmate stopped unexpectedly at his cell differ in meaningful ways from *Bivens*, *Carlson*, and *Green*.

<u>There are alternative processes</u>. The availability of *any* alternative process for protecting a plaintiff's interest may counsel against extending *Bivens*.[7] *Abbasi*, 137 S. Ct. at 1858 (citations omitted). *First*, as discussed above, Plaintiff can seek a remedy under the prison grievance system. *See, e.g.*, *K.B.*, 664 F. App'x at 759. *Second*, Plaintiff can bring, and in fact has brought, claims under the FTCA, which, in the wake of *Abbasi*, several courts have acknowledged as an alternative process. *See* 28 U.S.C. § 2680(h) (recognizing remedy for assault by federal law enforcement); *see, e.g.*, *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020), *cert. denied*, (recognizing FTCA as alternative process for excessive force claim); *Silva v. U.S.*, No. 19-cv-02563-CMA-MEH, 2020

---

Supreme Court assumed, without deciding, that a *Bivens* remedy existed for a transsexual prisoner who was beaten and raped by another inmate after being housed in the general population. *See* 511 U.S. 825, 829-30 (1994). Those facts bear no resemblance to the facts here, and *Abbasi* did not recognize *Farmer* as a case in which a *Bivens* remedy had been approved. In *Graham v. Connor*, the Court observed in dicta that the legal standard for analyzing Fourth Amendment excessive force claims under 42 U.S.C. § 1983 is the same as the standard for evaluating excessive force claims under *Bivens*. 490 U.S. 396, 394 n. 9 (1989). That is hardly a formal extension of *Bivens*. Nor were the facts in *Graham* similar to those presented here. *Id.* at 388-89.

[7] An alternative process need not ultimately prove successful, *Bowman v. Sawyer*, No. 19-cv-1411-WJM-KMT, 2020 WL 6390992, at *5 (D. Colo. Nov. 2, 2020), or provide monetary damages. *See, e.g.*, *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988) (declining to extend *Bivens* in the absence of alternative *Bivens* remedy); *Huerta*, 2019 WL 399229, at *15.

WL 7706785, at *6 (D. Colo. Dec. 29, 2020) (same).

*Third*, Plaintiff can seek injunctive relief. SAC at 30. Injunctive relief is "the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74 (availability of injunctive relief is alternative process available to federal prisoners); *see also Abbasi*, 137 S.Ct. at 1863 (same); *K.B.*, 664 F. App'x at 759 (same). Similarly, Plaintiff can invoke the mandamus statute to "compel an officer … of the United States" to address his alleged injuries. *See* 28 U.S.C. § 1361; *see also Millbrook*, 2019 WL 4594275, at *4.

There are additional special factors counseling judicial restraint. The special factors set forth in section I.A., *supra*, counsel against extending *Bivens* to Plaintiff's excessive force and failure-to-intervene claims. The Court should decline to find a remedy for these claims.[8]

## II. Brush is entitled to qualified immunity on the First Amendment claim, and the official-capacity claim also fails.

Qualified immunity represents "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1986). Qualified immunity "is the norm in private actions against public officials," who enjoy a "presumption of immunity when the defense of qualified immunity is raised." *Pahls v. Thomas*, 718 F.3d 1210, 1227) (10th Cir. 2013) (internal quotations omitted). To overcome qualified immunity, Plaintiff must satisfy a heavy, two-part burden, showing that (1) the defendant's own conduct violated a constitutional right, and (2) the right allegedly violated was clearly established at the time of the conduct. *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017).

---

[8] This Court has observed that there is a seeming anomaly in allowing a state inmate to pursue damages for excessive force under 42 U.S.C. §1983 while barring such damages against federal officers. *See Smith*, 2021 WL 1608829, at *2. The Supreme Court has addressed that anomaly, concluding that despite passing Section 1983, "Congress did *not* create an analogous statute for federal officials." *See Abbasi*, 137 S.Ct. at 1854 (emphasis added).

<u>Plaintiff has not plausibly alleged a violation of his First Amendment rights</u>.  Plaintiff alleges that Brush violated his First Amendment rights by removing from his cell 12 notebooks, three or four large manuscripts consisting of over 1,000 pages of material, other "shorter works," notes summarizing 130-150 books, and multiple books, some with several volumes.  SAC at ¶¶ 87-95.  But ADX policy limits inmates to a maximum of eight books and two personal compositions or manuscripts.  *See* Ex. 2, FLM 5580.08B, Inmate Personal Property (Nov. 28, 2019), at 3, 9.[9]  Personal papers are limited to one cubic foot and "[m]anuscripts must not create a fire hazard, a housekeeping problem, or a security concern because of excess paper."  *Id.* at 3-4.  The allegations demonstrate that Plaintiff's materials far exceeded these limits.

To state a First Amendment claim, a prisoner "'must plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.'"  *Al-Owhali v. Holder*, 687 F.3d 1236, 1242 (10th Cir. 2012) (quoting *Gee*, 627 F.3d at 1188).  Plaintiff has pled no such facts.  Indeed, the Tenth Circuit has held that a prison official does not violate a prisoner's First Amendment rights "simply by enforcing a prison regulation limiting the number of books he could keep in his cell."  *Neal v. Lewis*, 414 F.3d 1244, 1248-49 (10th Cir. 2005).  And there are obvious "legitimate administrative and penological objectives" inherent in such limitations, including "fire safety, institutional security, control of the source and flow of property within the prison . . . ."  *Id.* 1248.  Plaintiff has not attempted to refute the government's anticipated "usual justifications" for applying these limits to him.  *See Gee*, 627 F.3d at 1186 (complaint must show why government's anticipated "usual justifications" lack rational connection to challenged action).  Plaintiff has thus failed to allege that Brush violated his First

---

[9] The Court may take judicial notice of BOP policies.  *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1172 (D. Colo. 2010).

9

Amendment rights.

While Plaintiff appears to further contend that prison officials did not comply with BOP procedures regarding confiscated property, he does not allege that *Brush* personally participated in any decisions regarding the disposition of his property. *See* SAC at ¶¶ 99-100 (describing requests made to other prison officials to return written materials). And an alleged failure to adhere to a prison regulation does not amount to a constitutional violation. *See, e.g.*, *Williams v. Miller*, 696 F. App'x 862 (10th Cir. 2017) (holding that "[m]erely showing that [prison officials] may have violated prison policy is not enough" to establish a constitutional violation) (citations omitted).

There is no clearly established law. There is no particularized law that would have made it clear to Brush that he was violating Plaintiff's rights by removing an excess of written materials from Plaintiff's cell. Instead, Tenth Circuit precedent holds that a prison official *does not* violate a prisoner's rights by enforcing such limits. *See Neal*, 414 F.3d at 1248-49 (10th Cir. 2005).

Accordingly, Brush is entitled to qualified immunity.

The related official-capacity claim fails. For the reasons above, Plaintiff has failed to plead a First Amendment violation, and the related official-capacity claim fails for the same reasons.

**III.   Osagie is entitled to qualified immunity on the failure-to-intervene claim**.

Osagie is entitled to qualified immunity on Plaintiff's failure-to-intervene claim.

Plaintiff has failed to allege Osagie's personal participation. To establish a failure-to-intervene claim, Plaintiff must plausibly allege that Osagie observed or had reason to know of a constitutional violation, and had an opportunity to intervene. *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (citing *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008)). The only non-conclusory allegations regarding Osagie's involvement in the August 23, 2018, incident are: (1) Plaintiff "heard Osagie from the [observation] cell's door, very close to where I

was being beaten, saying approvingly 'is he still resisting?'" and (2) Plaintiff called out to Osagie to ask whether he was witnessing the beating, but Osagie never responded. *See* SAC at ¶¶ 76-77.

Plaintiff speculates that because Osagie's voice sounded "very close" and Plaintiff was on a bed in the cell, "Osagie must have seen me and the beatings very easily[.]" *Id.* at ¶ 78. This allegation is conclusory and not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678-79. And the remaining allegations do not plausibly allege that Osagie *actually observed* anything that happened in the observation cell. Indeed, all that can be plausibly inferred is that Osagie was standing near the observation cell and had been told that Plaintiff had been resisting. SAC at ¶ 76. The allegations about what Osagie heard and observed are equally consistent with legal conduct (i.e. that Osagie believed that Plaintiff had been resisting and that the officers were acting lawfully to regain control over Plaintiff). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567-69 (finding that plaintiffs had not "nudged their claims across the line from conceivable to plausible" where alleged conduct was consistent with lawful behavior); *Iqbal*, 556 U.S. at 681 (even though alleged conduct was "consistent" with discrimination, the allegations did not plausibly allege that conduct was discriminatory "given more likely explanations" for the actions).

Thus, Osagie is entitled to qualified immunity because Plaintiff has failed to plausibly allege his personal participation in a constitutional violation. *See, e.g.*, *Pahls*, 718 F.3d at 1228 (emphasizing the importance of identifying specific actions taken by particular defendants).

There is no clearly established law. Plaintiff's conclusory allegations do not plausibly suggest that Osagie had "fair and clear warning" that a failure to intervene in a constitutional violation that he did not personally observe would violate Plaintiff's constitutional rights. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted) (requiring identification of a case where an officer acting under similar circumstances committed a constitutional violation); *see also*

11

*Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added).

## IV. Deliberate Indifference Claims

Plaintiff brings *Bivens* and injunctive-relief claims asserting that Jones, Huddleston, and Osagie were deliberately indifferent to his medical needs by (1) refusing to examine or treat his ankle; (2) denying him pain medication; and (3) delaying an x-raying of his jaw and wrists.

### A. Jones, Huddleston, and Osagie are entitled to qualified immunity.

A deliberate indifference claim has two components: (1) an objectively serious deprivation of care for a serious medical need; and (2) subjective knowledge, and disregard, of an excessive risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994). The objective prong requires that the alleged deprivation be "'sufficiently serious'" such that "a prison official's *act or omission* must result in the denial of the 'minimal civilized measure of life's necessities.'" *Id.* 834 (emphasis added). A prisoner must show "acts or omissions sufficiently harmful" that they "evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To meet the objective component based on a delay in care, Plaintiff must allege that a delay "resulted in substantial harm." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).

To satisfy the subjective prong, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 828. In addition, Plaintiff's allegations must plausibly show that each Defendant's mental state was criminally culpable, "akin to 'recklessness in the criminal law.'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). This requirement is intended to "isolate[] those who inflict punishment." *Farmer*, 511 U.S. at 837, 839 (it is not enough that an official "should have known" about a serious risk; instead, the official must actually perceive that risk and deliberately ignore it). A showing of negligent or inappropriate care is insufficient to

plead the subjective prong.  *Self*, 439 F.3d at 1233, 1235.

Each of Plaintiff's alleged injuries will be addressed in turn.

a. <u>Broken ankle</u>

<u>Failure to plead subjectively culpable intent</u>.  As detailed in the timeline of the care that Plaintiff alleges receiving, *see* Ex. 1 at 3-4, Jones, Huddleston, and Osagie repeatedly examined and provided treatment for Plaintiff's ankle.  While the existence of a fracture was not immediately recognized, it was ultimately diagnosed and treated with a splint, followed by a hard cast (at the direction of an orthopedist), and by providing Plaintiff a wheelchair.  SAC at ¶¶ 119, 139.  Plaintiff received multiple x-rays and his ankle fracture healed.  *Id.* at ¶¶ 120, 122; ECF No. 64-1 at 9.

These facts do not plausibly show that Jones, Huddleston, or Osagie disregarded a known, substantial risk of harm with criminally reckless intent.  *See Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018), *cert. denied*, 140 S. Ct. 252 (2019) (medical providers "do not act with deliberate indifference when they provide medical treatment even if it is subpar"); *see also Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (even "grossly negligent" medical judgment "is not subject to second-guessing in the guise of an Eighth Amendment claim.").  The Supreme Court has held that "the question whether … additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment" that does not give rise to an Eighth Amendment claim.  *Estelle*, 429 U.S. at 107; *see also Sherman v. Klenke*, 653 F. App'x 580, 588 (10th Cir. 2016) (where "'the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors'" (quoting *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987)).  Similarly, here, disputes concerning whether an x-ray should have been ordered sooner or whether ice was indicated are classic examples of medical judgments that are insufficient to establish a

constitutional violation. *Id*. at 107; *see also Irons v. Samu*, No. 06-cv-02254-PAB-BNB, 2010 WL 749797, at *10 (D. Colo. March 2, 2010) ("the application of ice is within the discretion of the health care provider."). Plaintiff has therefore not sufficiently pleaded the subjective element of deliberate indifference as to Jones, Huddleston, or Osagie, entitling each to qualified immunity.

<u>Failure to plead objective deprivation</u>. Plaintiff must allege that he suffered a serious harm as a result of any allegedly deficient treatment. *See Stafford v. Stewart*, 461 F. App'x 767, 769 (10th Cir. 2012) ("[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely the symptoms presented at the time the prison employee has contact with the prisoner." (internal citation and quotation marks omitted)). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). Plaintiff received the proper casting upon discovery of his ankle fracture, and his ankle healed. *See* SAC at ¶¶ 119, 139; ECF No. 64-1 at 9. The only harm that Plaintiff attributes to the delay in diagnosis is that he experienced pain during the delay, which is the subject of Plaintiff's separate claim about pain (discussed below). Plaintiff's claim about his ankle – as distinct from his claim about pain – does not meet the objective component.

<u>No clearly established law</u>. Plaintiff has not alleged that Jones, Huddleston, or Osagie violated any clearly established law "particularized to the facts of the case." *White*, 137 S. Ct. at 551-52. Defendants are aware of no precedent finding that prison medical providers violate the Constitution when they examine an inmate, order and review x-rays, and confer with an outside orthopedic specialist about the course of care to be administered.

    b. <u>Failure to treat pain</u>

<u>Failure to plead personal participation</u>. Plaintiff alleges that his requests for pain

14

medication were not filled by the commissary during his hunger strike, but that when he ended his hunger strike, he was able to obtain medications from the commissary, including ibuprofen, aspirin, and naproxen sodium.[10]  SAC at ¶¶ 146, 164-165; *see also id.* at ¶ 122 (ibuprofen provided by medical staff on December 6, 2018).[11]  Plaintiff has not alleged that Jones, Huddleston, or Osagie were responsible for any decision not to allow him to obtain medication from the commissary.  *Id.* ¶ 164 (asserting that "commissary" did not fill his requests for pain medication).  They are therefore entitled to qualified immunity.

<u>Failure to plead subjectively culpable intent</u>.[12]  The well-pled facts do not plausibly show that Jones, Huddleston, or Osagie disregarded a known, substantial risk of harm with criminally reckless intent regarding Plaintiff's complaints of pain.  When Plaintiff stopped hunger-striking—a matter entirely within his control—he was able to get pain medication from the commissary.  *Id.* at ¶¶ 164-165.  At its core, Plaintiff's claim arises from his opinions that he should have received pain medication while on hunger strike and/or that he should have received different pain medication.  However, "a difference of opinion . . . as to the optimal pain-management regimen does not amount to deliberate indifference."  *Todd v. Begelow*, 497 F. App'x 839, 842 (10th Cir. 2012);

---

[10] *See* BOP Program Statement P6541.02 (Nov. 17, 2014) (providing procedures for purchasing OTC medications, as well as procedures permitting indigent inmates to obtain OTC medications), *available at* https://www.bop.gov/policy/progstat/6541_002.pdf (last visited July 20, 2021).
[11] Plaintiff also claims that his pain was exacerbated during forced feedings, SAC at ¶¶ 147-148, 150-151, but he has no constitutional right to avoid forced feedings.  *Al-Adahi v. Obama*, 596 F.Supp. 2d 111, 120-121 (D.D.C. 2009) (force feedings and use of restraints during feedings arise from "a need to preserve the life of the Petitioners."); *Couch v. Godinez*, No. 13-cv-1100-JPG, 2014 WL 860801, at *5 (S.D. Ill. March 4, 2014) (citing *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011)) ("It is well established that prison authorities have a right, and indeed a duty, to force-feed an inmate who persists in a hunger strike[.]"); *Parmelee v. Clark*, No. CV-13-5046-EFS, 2013 WL 3777093, at *2 (E.D. Wash. July 17, 2013) ("It appears a prisoner would have no constitutionally protected right in avoiding forced nutrition . . . in response to a 'hunger-strike.'").
[12] For purposes of this Motion only, Defendants do not argue the objective component with respect to Plaintiff's claim regarding the alleged failure to treat his pain.

*Johnson v. Correct Care Sols., LLC*, 2018 WL 7372075, at *9 (D. Colo. Nov. 21, 2018) ("Even if Defendants had in fact failed to provide Plaintiff with medication other than Aleve and Tylenol, [t]he failure to provide stronger pain medication does not constitute deliberate indifference." (internal quotations and citations omitted)). And such a difference of opinion particularly negates an inference of criminally reckless intent in the context of a hunger strike, where pain medications may be legitimately refused. *See, e.g.*, *Lucio v. Santos*, 600 F. App'x 480, 481-82 (7th Cir. 2015) (refusal to prescribe acetaminophen because inmate was on hunger strike was a legitimate medical reason); *Lewis v. UTMB Medical Staff*, No. 2:19-cv-223, 2019 WL 8012672, at *7 (S.D. Tex. Dec. 13, 2019) (recommending dismissal of deliberate indifference claims for failure to treat pain because plaintiff alleged that defendants denied him pain medication because he was on hunger strike), *adopted*, No. 2:19-CV-223, 2020 WL 838537 (S.D. Tex. Feb. 20, 2020). Plaintiff has therefore not sufficiently alleged that Jones, Osagie, and Huddleston acted with criminally reckless intent. *Cf. Slusher v Suthers*, No. 01-cv-0229-PSF-BNB, 2006 WL 2846452, at *9 (D. Colo. Sept. 29, 2006) (granting summary judgment in favor of prison medical staff because they knew that ibuprofen and other OTC medications could be purchased at prison canteen).

No clearly established law. There is no clearly established law demonstrating that every reasonable officer would have known, beyond debate, that the management of Plaintiff's complaints of pain amounted to a constitutional violation. *See Al-Kidd*, 563 U.S. at 741.

   c. <u>Wrists and jaw</u>

Plaintiff alleges that he did not receive x-rays of his wrists and jaw until October 18, 2018. SAC at ¶ 117. However, Plaintiff does not sufficiently allege any underlying need for x-rays of his wrists and jaw. Although Plaintiff alleges that he experienced swelling and pain in his jaw and wrists, the x-rays were ultimately taken and were found to be normal. *Id.* at ¶ 115, 117.

Accordingly, Plaintiff has not established an objective deprivation resulting in the denial of the "minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834 (internal quotations omitted). Moreover, the allegations do not demonstrate that Jones, Huddleston, and Osagie each knew they were depriving Plaintiff of essential medical care with respect to his wrists and jaw. *See id.* at 837-38. Finally, Plaintiff cannot point to any clearly established law demonstrating that every reasonable officer in Defendants' position would have known, beyond debate, that a delay in x-raying Plaintiff's wrists and jaw amounted to a constitutional violation. *See Al-Kidd*, 563 U.S. at 741. Jones, Osagie, and Huddleston are therefore entitled to qualified immunity.

### B. Plaintiff's official-capacity claims should be dismissed.

Plaintiff brings his deliberate indifference claims against Jones, Huddleston, and Osagie in both their individual and official capacities. SAC at 3 n.1. Plaintiff's failure to allege deliberate indifference also requires dismissal of his official-capacity claims.[13]

### V. Negligent Supervision Claim (Claim 14)

Plaintiff brings a negligent supervision claim against the United States under the FTCA, which fails both because it is unexhausted and because he fails to state a claim for relief.[14]

<u>Failure to exhaust administrative remedies</u>. Prior to filing an FTCA action, a plaintiff must exhaust his administrative remedies. *See* 28 U.S.C. § 2675. The Tenth Circuit has repeatedly stressed that this presentment requirement is "'jurisdictional and cannot be waived.'" *See, e.g.*,

---

[13] To the extent Plaintiff may seek money damages for his official-capacity claims, such damages are not available. *See Matthews*, 744 F.Supp.2d at 1167.

[14] Plaintiff also asserts two claims for medical malpractice under the FTCA. SAC at ¶¶ 162-169. Plaintiff is required to provide a certificate of review in connection with his medical malpractice claims within sixty days of service of the SAC. *See* Colo. Rev. Stat. § 13-20-602. In the event that Plaintiff does not provide a certificate of review on or before August 23, 2021, Defendants intend to file an additional motion to dismiss the medical malpractice claims on that basis.

*Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quoting *Bradley v. United States by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)). A claim is properly presented to an agency only if the claim "serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Barnes v. United States*, 707 F. App'x 512, 516 (10th Cir. 2017) (internal quotations and citations omitted). The key inquiry is whether the administrative claim notifies the agency of the need to investigate specific conduct, because "'Congress wants agencies to have an opportunity to settle disputes before defending against litigation in court.'" *Lopez*, 823 F.3d 976 (internal quotations and citations omitted).

Courts routinely dismiss FTCA claims where critical facts related to those claims were not included in the administrative claim. In *Barnes*, the plaintiff's negligent training and supervision claims were dismissed because the administrative claim included no mention of any possibility that the plaintiff's injuries were caused by negligent training and supervision. 707 F. App'x at 516; *see also Lopez*, 823 F.3d at 977 (dismissing FTCA claim where administrative claim did not give notice that agency needed to investigate whether VA hospital was negligent in credentialing doctor who allegedly provided negligent care).

Here, Plaintiff's administrative claim focused on his allegations that he was beaten and did not receive proper medical treatment. *See* Ex. 3, Decl. of Paula Trujillo at ¶ 10 and Att. 2. Similar to the claim in *Barnes*, the claim makes no mention of the possibility that either the alleged beatings or Plaintiff's injuries were the result of negligence by persons in the officers' supervisory chain. *Id.* If Plaintiff had alleged facts related to a failure to supervise, those allegations would have required investigation into completely different aspects of the incident and BOP's operations. Since the agency was not afforded an opportunity to investigate this claim, it must be dismissed under Fed. R. Civ. P. 12(b)(1). *See Lopez*, 823 F.3d at 977 (finding that district court lacked

subject matter jurisdiction over FTCA claim that had not been properly exhausted).

<u>Failure to state a claim</u>.  In order to state a claim for negligent supervision under Colorado law, a plaintiff must allege that the defendant "knew his employee posed a risk of harm to the plaintiff and that the harm that occurred was a foreseeable manifestation of that risk."  *Keller v. Koca*, 111 P.3d 445, 446 (Colo. 2005) (citations omitted); *see also Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988) ("[A] person who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm may be directly liable to third parties for harm proximately caused by his conduct.").  Here, Plaintiff has made no allegations that any BOP supervisory official knew that any of the officers involved in the alleged beatings posed an unreasonable risk of harm to either him specifically or to any other inmate(s).  Although Plaintiff alleges that several of the officers have a "reputation" of abusing prisoners and then fabricating incident reports against those prisoners, SAC at ¶ 67, Plaintiff does not plead specific facts regarding these incidents nor does he allege that any of the officers' supervisors were aware of these "reputations."  Indeed, the allegation that the officers fabricated incident reports to cover up abuses suggests that BOP supervisory officials *would not* have known about the alleged abuse.  Accordingly, Plaintiff has failed to state a claim of negligent supervision under Colorado law.  *See De Gomez v. Adams Cty.*, No. 20-cv-01824-CMA-NYW, 2021 WL 1581241, at *12 (D. Colo. Feb. 23, 2021), *adopted*, 2021 WL 1577793 (D. Colo. April 22, 2021) (recommending dismissal of negligent supervision claim because complaint failed to sufficiently allege that the employer "knew that a particular employee (or employees) posed an undue risk of harm to inmates").

## CONCLUSION

The Court should dismiss the following claims of the SAC (ECF No. 64): the First Amendment claim (against Brush); the excessive force and failure-to-intervene claims (against

Brush, Miller, Espinoza, Murton, Armijo, and Osagie); the deliberate indifference claims (against Osagie, Huddleston, and Jones); and the negligent supervision claim (against the United States).

Respectfully submitted on this 27th day of July, 2021.

MATTHEW T. KIRSCH
Acting United States Attorney

s/ *Jennifer R. Lake*
Jennifer R. Lake
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: jennifer.lake@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on July 27, 2021, I served the foregoing document, including copies of any unpublished decisions cited therein, on the following non-CM/ECF participant in the manner indicated:

Khalfan Khamis Mohamed (U.S. mail)
Reg. No. 44623-054
ADX – Florence
P.O. Box 8500
Florence, CO 81226

s/ *Jennifer R. Lake*
Jennifer R. Lake
United States Attorney's Office