**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02516-RBJ-MDB

KHALFAN KHAMIS MOHAMED,

    Plaintiff,

v.

JONES,
HUDDLESTON,
OSAGIE,
BRUSH,
ESPINOZA,
MILLER,
LT. MURTON,
LT. ARMIJO, and
UNITED STATES OF AMERICA,

    Defendants.

---

**DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

---

In the Second Amended Complaint, ECF No. 64, Plaintiff, an inmate at the United States Penitentiary Florence—High ("USP Florence"), asserts, among other claims, *Bivens* claims for excessive force, failure to intervene, and deliberate indifference against the individually named Defendants. These claims relate to a use of force against Plaintiff and subsequent medical treatment he received for injuries sustained during the use of force. Plaintiff also asserts official-capacity claims concerning the medical treatment he received. He seeks monetary damages for the individual-capacity claims, and an injunction ordering the government to arrange for an examination "by an expert in broken bones" as a remedy for the official-capacity claims.

Pursuant to recent Tenth Circuit and District of Colorado precedent, Plaintiff has not

1

stated cognizable *Bivens* claims.  In addition, the allegations do not give rise to a plausible inference that he currently has a broken bone, and therefore he has not established that he has standing to pursue an injunction requiring an examination "by an expert in broken bones."

Accordingly, Defendants are entitled to judgment on the pleadings for Plaintiff's claims for excessive force, failure to intervene, and deliberate indifference (Claims 1-10).

## RELEVANT BACKGROUND

Plaintiff, a USP Florence inmate, was convicted of the al Qaeda-directed bombings of the U.S. Embassies in Tanzania and Kenya in August 1998.  *See United States v. Bin Laden*, 156 F. Supp. 2d 359, 360 (S.D.N.Y. 2001).  He alleges that on August 23, 2018, while he was housed at the ADX and on a hunger strike, Defendants Brush, Miller, and Espinoza beat, threatened, and verbally abused him after he attempted to stop at his cell during an escort.  ECF No. 64 ¶¶ 20-43, 54-57, 71-74.  He further alleges that Defendants Murton, Armijo, and Osagie were present at various times during the alleged beatings but failed to intervene.  *Id.* ¶¶ 46-52, 59-66, 76-84. As a result of the uses of force, Plaintiff alleges that he suffered a fracture of his right ankle, pain in his wrists and jaw, a bleeding nose, and lacerations and bruises.  *Id.* ¶¶ 114-115, 118.  Plaintiff was later found guilty of attempted assault by a Disciplinary Hearing Officer related to the incident on August 23, 2018.  *Id.* ¶ 108.

Defendant Jones, a nurse, examined Plaintiff twice on the day of the use of force.  *Id.* ¶¶ 130-131.  Defendant Jones allegedly told Plaintiff that the swelling in his ankle would go away on its own, allegedly refused to let Plaintiff see a doctor or physician's assistant, and did not provide pain medication or ice.  *Id.* ¶ 132.  Plaintiff alleges he was subsequently seen by Defendants Jones, Huddleston (also a nurse), and/or Osagie (a physician's assistant) on multiple

occasions. *Id.* ¶¶ 137-38, 141, 144, 149, 154, 157.

On August 31, 2018, Defendant Osagie ordered an x-ray of Plaintiff's ankle. *Id.* ¶¶ 149, 152. Plaintiff alleges that he was initially told that the x-ray showed "twisted muscles," but was told the next day that his ankle was actually fractured. *Id.* ¶¶ 119, 139, 162. He alleges that he was initially given a splint, and that a hard cast was later applied to the ankle. *Id.*

Plaintiff alleges that on October 18, 2018, he received x-rays of his wrists and jaw and was told the results were normal. *Id.* ¶ 117. He also received periodic x-rays of his ankle, which showed that the fracture was continuing to heal. *Id.* ¶¶ 120, 122. His cast was removed on November 16, 2018. *Id.* ¶ 122.

On December 6, 2018, Plaintiff was evaluated by a physician who noted that his ankle fracture had healed and that his wrist x-rays were normal. ECF No. 64-1 at 9. The physician prescribed Ibuprofen at that time. *Id.* Plaintiff admits he received Ibuprofen for continued pain, and that he was able to purchase pain medication from the commissary after his hunger strike ended. *Id.* ¶¶ 122, 164-65.

Plaintiff further alleges that his ankle and wrists were again examined on January 9, 2018. *Id.* ¶ 123. In April 2019, he alleges that he was provided pain medication and a compression sock for swelling in his ankle. *Id.* ¶ 125. He claims continuing pain and swelling in his ankle, pain in his wrists and jaw, and nosebleeds. *Id.* ¶¶ 116, 169. He has been prescribed medications for depression, and purportedly has been told that he may have PTSD. *Id.* ¶¶ 126-128.

In addition to seeking monetary damages for his *Bivens* claims, Plaintiff seeks an injunction requiring Defendants to arrange for an examination "by an expert in broken bones, and follow his recommendation on treatment" as a remedy for his official-capacity deliberate-

indifference claims. *Id.* at 30.

Defendants previously filed a Motion to Dismiss Second Amended Complaint in Part, ECF No. 71, seeking dismissal, among other claims, of the excessive-force and failure-to-intervene claims for lack of a *Bivens* remedy, and the deliberate-indifference claims based on qualified immunity. The Court denied the portion of the Motion to Dismiss seeking dismissal of the excessive-force, failure-to-intervene, and deliberate-indifference claims. *See* ECF No. 120. The Motion to Dismiss was briefed, and the Court's order was issued, before the Supreme Court issued its decision in *Egbert v. Boule*, 596 U.S. 482 (2022), and before the Tenth Circuit issued its decision in *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022).

Following the issuance of *Egbert*, Defendants filed a motion for reconsideration of the Court's ruling that a *Bivens* remedy was available for Plaintiff's excessive-force and failure-to-intervene claims. ECF No. 128. The Court denied the motion for reconsideration. ECF No. 151. Defendants then filed an interlocutory appeal, which was dismissed for lack of jurisdiction. ECF Nos. 156, 174.

In light of *Silva* and the continually evolving precedent in the Tenth Circuit and this District on the availability of *Bivens* remedies for inmate excessive-force, failure-to-intervene, and deliberate-indifference claims, Defendants now file this Motion renewing their arguments that the Court should not recognize *Bivens* remedies for Plaintiff's excessive-force and failure-to-intervene claims. Defendants also assert—for the first time—that Plaintiff's deliberate-indifference claims are not cognizable *Bivens* claims based on this recent precedent. Finally, Defendants assert that Plaintiff does not have standing to pursue his official-capacity deliberate-indifference claims.

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." In evaluating a Rule 12(c) motion, the Court accepts "the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Ramirez v. Dep't of Corr's, Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citations omitted). "Documents attached to the pleadings . . . are subject to full consideration in a court's review of a Rule 12(c) motion." *United States v. Zazi*, 356 F. Supp. 3d 1105, 1114 (D. Colo. 2018) (citations omitted).

## ARGUMENT

### I. Plaintiff fails to state cognizable *Bivens* claims.

Recognizing a *Bivens* cause of action is an "extraordinary act" and thus, "in most every case, no *Bivens* action may lie." *Egbert v. Boule*, 596 U.S. 482, 492, 497 n. 3 (2022) (cleaned up). After *Egbert*, the Tenth Circuit has held that "in virtually all circumstances," no *Bivens* claim should be recognized, and "lower courts expand *Bivens* claims at their own peril." *See Silva v. U.S.*, 45 F.4th 1134, 1140, 1146 (10th Cir. 2022).

Courts must undertake a two-step inquiry in determining whether to recognize a *Bivens* damages remedy against an individual federal official. At step one, the Court asks whether the claim arises in a "new context" different from the three specific "instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Those three instances include: (1) a Fourth Amendment case against federal agents who allegedly manacled a man and threatened his family during an arrest, *Bivens*, 403 U.S. 388, 396 (1971); (2) a Fifth Amendment case brought against a congressman, *Davis v.*

*Passman*, 442 U.S. 228, 248-49 (1979); and (3) an Eighth Amendment case against prison officials who failed to provide any medical care to an inmate, resulting in his death, *Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980). Claims raising only "similar allegations" to prior cases—even where the claims assert "almost parallel circumstances"—present a new context. *Egbert*, 596 U.S. at 495. At step two, the Court determines if there are any alternative remedies to a damages suit, or whether any other "special factors counsel[] hesitation" in creating a new damages remedy. *Abbasi*, 582 U.S. at 136.

Here, Plaintiff's excessive-force, failure-to-intervene, and deliberate-indifference claims all present new contexts, and the Bureau of Prisons Administrative Remedy Program is an alternative remedy, among others, that precludes Plaintiff's *Bivens* claims.

    *1. Plaintiff's excessive-force and failure-to-intervene claims present new contexts.*

Claims 1-6 allege that Defendants Brush, Miller, and Espinoza beat, threatened, and verbally abused Plaintiff during an escort, and that Defendants Armijo, Murton, and Osagie failed to intervene in the beatings. These claims do not resemble the three recognized *Bivens* contexts. Although *Carlson* also involved an Eighth Amendment claim, that case did not involve allegations of excessive force or failure to intervene. And although *Bivens* involved excessive-force claims, they were brought under the Fourth Amendment and did not involve any allegations that correctional officers used unreasonable force, or failed to intervene in a use of force, against an inmate. Thus, as in *Egbert*, any similarities between Plaintiff's claims and these two cases are "superficial." *See Egbert*, 596 U.S. at 495 (explaining that claims raising "almost parallel circumstances" to prior claims recognized in cases like *Carlson* still present only "superficial similarities")

6

In *Silva*, the Tenth Circuit applied *Egbert* to an inmate's Eighth Amendment excessive-force claim and found that the "claim clearly constitutes an expansion of *Bivens* because a claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." 45 F. 4th at 1137 (cleaned up). In light of *Egbert* and *Silva*, several courts in this District have recently found that Eighth Amendment claims brought by inmates involving allegations of excessive force and/or failure to intervene present new contexts. *See, e.g., Mostafa v. Garland*, No. 20-cv-00694-PAB-SKC, 2024 WL 37977, at *12 (D. Colo. Jan. 3, 2024) ( "*Silva* dictates that [plaintiff's] excessive force claim arises in a new context"); *Mohamed v. Santisteven*, No. 21-cv-02676-NYW-MDB, 2023 WL 6376709, at *9 (D. Colo. Sept. 29, 2023) (finding that "[t]he Tenth Circuit's ruling in *Silva* . . . changed the legal landscape" and that therefore plaintiff's excessive-force and failure-to-intervene claims involved "dissimilar factual allegations" to *Bivens*, *Davis*, and *Carlson*); *see also Abdo v. Balsick*, No. 18-cv-01622-KMT, 2019 WL 6726230, at *5-6 (D. Colo. Dec. 11, 2019) (holding that "there is no question" that Plaintiff's Eighth Amendment claims for excessive-force and failure-to-intervene "differ in meaningful ways from the previous *Bivens* contexts").

Accordingly, Plaintiff's excessive-force and failure-to-intervene claims here present new contexts.

    2. *Plaintiff's deliberate-indifference claims present a new context.*

Claims 8-10 allege that Defendants Jones, Huddleston, and Osagie were deliberately indifferent to Plaintiff's medical needs. But despite the alleged delay in diagnosis and treatment of his ankle fracture, Plaintiff acknowledges that he was examined multiple times, received

7

multiple x-rays, and that his ankle fracture was treated with a splint and a hard cast. Plaintiff also admits that the x-rays did not show any injuries to his wrists and jaw, and documents attached to the Second Amended Complaint—which the Court can consider on a Rule 12(c) motion—state that the x-rays of Plaintiff's ankle showed that the fracture healed.

Of the three recognized *Bivens* contexts, only the claim allowed in *Carlson* has any relation to Plaintiff's deliberate-indifference claims. In *Carlson*, the Supreme Court permitted an Eighth Amendment claim to proceed against prison officials who failed to provide *any* medical care to an inmate, resulting in his death. 446 U.S. at 16 n.1 (1980). While *Carlson* also involved a deliberate-indifference claim, that mere categorization does not show that the claims involve the same context. *See Silva*, 45 F.4th at 1140 (observing that the Supreme Court has declined to recognize a *Bivens* remedy even where a claim bears "close resemblance to the facts of" prior cases like *Carlson*). Indeed, the circumstances of the claim asserted in *Carlson* are distinguishable from Plaintiff's claims in important respects.

In *Carlson*, the deprivation in care was in the context of a medical emergency that caused death within hours. 446 U.S. 14, 16 (1980). The defendants allegedly did not follow the advice of doctors, failed to provide medical attention for several hours following an asthmatic attack, permitted a non-licensed nurse to inject a contraindicated drug that worsened the asthma attack, and delayed the inmate's transfer to an outside medical facility. *Id.* at 16 n.1. By contrast, here Plaintiff alleges that he received multiple examinations and x-rays, and that his ankle fracture was treated with a splint and a hard cast. He does not allege that he received contraindicated treatment that worsened his symptoms or that Defendants failed to follow medical advice from other professionals. In other words, Plaintiff's allegations implicate a disagreement with the

8

management and treatment of his ankle fracture; those allegations are not similar to the fatal asthma attack at issue in *Carlson*.

These differences between Plaintiff's allegations and those in *Carlson* show that Plaintiff's claims would fall within the Supreme Court's broad understanding of a "new" *Bivens* context. *See Egbert*, 596 U.S. at 495 (explaining that claims raising "almost parallel circumstances" to prior claims recognized in cases like *Carlson* still present only "superficial similarities"); *Mohamed*, 2023 WL 6376709, at *9-10 (concluding that despite "broad similarities with *Carlson*," plaintiff's claims for delay or denial of medical care presented a new context); *Ajaj v. United States*, No. 15-cv-02849-RM-KLM, 2020 WL 5758521, at *11-12 (D. Colo. Sept. 28, 2020) (holding that inmate's deliberate-indifference claim presented new *Bivens* context); *Abdo*, 2019 WL 6726230, at *6 (plaintiff's claims for failure to render medical aid for injuries "sustained when prison guards responded to a perceived safety threat by using deterrent spray" presented a new *Bivens* context).

    3. *Special factors counsel against recognizing new Bivens claims.*

Once a court determines that the factual allegations present a new context, the Court next considers whether special factors counsel against extending *Bivens* to a new claim. *Abbasi*, 582 U.S. at 136. In *Silva*, the Tenth Circuit emphasized two particular "special factors," either one of which independently forecloses new *Bivens* relief: (1) if the context is such that "Congress is better suited to weigh the costs and benefits of providing a remedy," or (2) if adequate alternative remedies are available to the plaintiff. 45 F.4th at 1139. The existence of alternative remedies alone bars *Bivens* relief. *See Egbert*, 596 U.S. at 493 ("a court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, 'an alternative

9

remedial structure.'") (internal quotations omitted).

In *Silva*, the Tenth Circuit determined that the BOP's Administrative Remedy Program provides federal prisoners an alternative remedial structure. *See* 45 F.4th at 1141-42 (upholding the dismissal of inmate's *Bivens* Eighth Amendment excessive force claim because the BOP's Administrative Remedy Program qualified as an alternative remedy available to the inmate). Following *Silva*, the Tenth Circuit again affirmed in a case involving an Eighth Amendment deliberate-indifference claim that the BOP's Administrative Remedy Program "is sufficient to foreclose a *Bivens* claim despite any factual similarity between" the plaintiff's claim and *Carlson*. *Noe v. U.S. Gov't*, No. 23-1025, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023). Here, the BOP's Administrative Remedy Program was available to Plaintiff. *See* ECF No. 64-1 at 2-9 (documentation concerning Plaintiff's administrative remedy requests attached as exhibits to Second Amended Complaint). Therefore, Plaintiff's *Bivens* claims are foreclosed.

Moreover, Plaintiff has another alternative remedy: he can raise allegations of misconduct by BOP employees under the Inspector General Act of 1978. That Act directs the Attorney General to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General," and authorizes the Department to investigate allegations by any Department employees and refer the same to the Office of Professional Responsibility or another internal affairs office. 5 U.S.C. App. 3 §§ 8E(b)(2), (d). Any person, including Plaintiff, may report such alleged misconduct. This congressionally-authorized process further counsels against implying a damages remedy. *See Abbasi*, 137 S. Ct. at 1862 (acknowledging that DOJ OIG investigation counseled against *Bivens*

remedy).

Since this case presents *Bivens* claims that arise in new contexts, and since alternative remedies were available to Plaintiff, the Court should decline to recognize *Bivens* remedies for Claims 1-10.

## II. Defendants are entitled to judgment on the pleadings for Plaintiff's official-capacity deliberate-indifference claim.

The Second Amended Complaint indicates that in addition to seeking damages against Defendants Huddleston, Osagie, and Jones in their individual capacities, Plaintiff also intends to pursue his deliberate-indifference claims against them in their official capacities. *See* ECF No. 64 at 3 n.1 ("the three medical staff: Jones, Huddleston and Osagie in the three deliberate indifference claims, are each respectively, sued under both official and individual capacities"). As a remedy for those claims, Plaintiff seeks an injunction "to arrange for me to be examined by an expert in broken bones, and follow his recommendation on treatment, including surgery." ECF No. 64 at 30.

To establish standing for his official capacity claims, Plaintiff "bears the burden of demonstrating the following three elements: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (citations omitted). "Although a plaintiff may present evidence of a past injury to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective relief." *Id.* (citations omitted). The Tenth Circuit has noted that "[w]here a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance." *Id.* at 1024 (citations omitted). Thus, "[a]n inmate seeking an injunction on the ground that there is a contemporary violation of

11

a nature likely to continue must adequately plead such a violation." *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994) (cleaned up).

Here, Plaintiff's allegations in support of his deliberate indifference claims primarily concern past events. *See* ECF No. 64 ¶¶ 129-158. Plaintiff conclusorily alleges that he doesn't "believe that my fracture was healed during the cast removal." *Id.* ¶ 169. But this allegation is unsupported by any specific allegations giving rise to a plausible inference that the fracture did not heal, and is contradicted by documents Plaintiff attached to the Second Amended Complaint stating that x-rays showed that Plaintiff's fracture had healed as of December 6, 2018. ECF No. 64-1 at 9 (stating that Plaintiff was "evaluated by the physician on December 6, 2018, at which time the ankle fracture was noted to be healed"). Indeed, the only specific, non-conclusory allegations Plaintiff makes concerning ongoing harm with respect to his ankle are that he continues to have "pain and swelling of his right ankle," ECF No. 64 ¶ 116, and that he cannot engage in prolonged standing, prayers, or other activities "without experiencing serious pain and risking to trigger a *fresh* fracture," ECF No. 64 ¶ 169 (emphasis added); *see also id.* ¶ 116 (identifying the "permanent physical injuries" as "pain and swelling of his right ankle" and failing to identify a current ankle fracture). Thus, Plaintiff's own allegations imply that he does *not* have a current fracture.

In sum, the allegations fail to give rise to a plausible inference that Plaintiff is suffering from ongoing harm in the form of a fractured ankle. *See Higby v. Williams*, No. 20-CV-1339-PAB-KLM, 2021 WL 3039019, at *4 (D. Colo. June 25, 2021), *recommendation adopted* 2021 WL 3032746 (D. Colo. July 19, 2021) ("[plaintiff] does not have standing to seek injunctive . . . relief as to injuries that have already been addressed"); *Mostafa v. Barr*, No. 20-cv-00694-PAB-

12

NYW, 2021 WL 330167, at *9 (D. Colo. Jan. 30, 2021) (dismissing official-capacity claims for injunctive relief where the allegations in the complaint "focused solely on past conduct of the various Defendants and fail[ed] to support an inference . . . that there is any likelihood that the same conduct is likely to recur in the future"); *cf. Jabarah v. Wray*, No. 21-cv-01047-NYW-NRN, 2024 WL 816410, at *9 (D. Colo. Jan. 30, 2024) (dismissing official-capacity equal-protection claim seeking injunctive relief because allegations did not show that inmate faced an "actual threat that he will be deprived of appropriate religious meals"). And "[a]bsent any continuing or imminent violation, there is no redressability, as there is no harm for prospective injunctive . . . relief to remedy." *Bellinger v. Matevousian*, No. 20-cv-03451-RMR-KMT, 2022 WL 180633, at *4 (D. Colo. Jan. 20, 2022) (citations omitted) (dismissing inmate's claims concerning encumbrances on his inmate accounts for lack of standing because allegations did not demonstrate the existence of an ongoing or imminent injury). In other words, if Plaintiff's ankle is not currently fractured then an evaluation by "an expert in broken bones" would not redress any ongoing harm.

Accordingly, Defendants are entitled to judgment on the pleadings for Plaintiff's official-capacity deliberate-indifference claims (Claims 8, 9, and 10) because Plaintiff has failed to plausibly allege a relevant ongoing harm or redressability.

## CONCLUSION

For the reasons set forth above, Defendants Brush, Miller, Espinoza, Armijo, Murton, Osagie, Jones, and Huddleston are entitled to judgment on the pleadings for Claims 1-10 in the Second Amended Complaint.

Respectfully submitted on this 16th day of September, 2024.

MATTHEW T. KIRSCH
Acting United States Attorney

s/ *Jennifer R. Lake*
Jennifer R. Lake
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: jennifer.lake@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on September 16, 2024, I served the foregoing document, including copies of any unpublished decisions cited therein, on the following non-CM/ECF participant in the manner indicated:

Khalfan Khamis Mohamed (U.S. mail)
Reg. No. 44623-054
USP Florence - High
P.O. Box 7000
Florence, CO  81226

                                              s/ *Jennifer R. Lake*
                                              Jennifer R. Lake
                                              United States Attorney's Office