IN THE UNITED STATES DISTRICT COUR
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02516-RBJ-MDB

KHALFAN KHAMIS MOHAMED,

    Plaintiff,

v.

JONES,
HUDDLESTON,
OSAGIE,
BRUSH,
ESPINOZA,
MILLER,
LT. MURTON,
LT. ARMIJO, and
UNITED STATES OF AMERICA,

    Defendants.

---

ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

---

This matter is before the Court on defendants' motion for judgment on the pleadings as to claims 1 through 6 and 8 through 10. ECF No. 182. Defendants' motion is granted.

**FACTS**

Plaintiff Khalfan Khamis Mohamed, an inmate at the United States Penitentiary Florence ADMAX (ADX Florence), filed suit against eight BOP officials pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the officers beat, threatened, and verbally abused him, ECF No. 64 ¶¶ 20–43, 54–57, 71–74, or witnessed the abuse and failed to intervene, ECF No. 64 ¶¶ 46–52, 59–66, 76–84. Mr. Mohamed

1

also alleges that officers denied him timely medical attention for injuries sustained in the beating. ECF No. 64 ¶¶ 130–132.  Specifically, he describes that although he had visible injuries and complained of broken bones and severe pain, defendant Jones initially refused to allow him to see a doctor and refused to provide him pain medication or ice.  ECF No. 64 ¶ 132.  Eight days after the beating, Mr. Mohamed received medical examination and treatment for his broken ankle, and two months later, he received medical examination for his wrists and jaw.  ECF No. 64 ¶¶ 117, 149, 162.  This conduct, Mr. Mohamed alleges, violated the Eighth Amendment, the First Amendment, and the Federal Tort Claims Act (FTCA).  *See* ECF Nos. 1, 64.  He seeks monetary damages for his claims against the officers and an injunction requiring defendants to provide him examination and treatment by an orthopedic specialist.  ECF No. 64 at 30.

       After reviewing defendants' first and second motions to dismiss, then-Magistrate Judge Nina Y. Wang issued a 79-page recommendation, which I accepted and adopted on May 18, 2022.  *See* ECF No. 103; ECF No. 120.  Accordingly, I granted defendants' motions to dismiss as to plaintiff's First Amendment claim (claim 7) and as to the FTCA claims of negligent supervision and performance (claims 14 and 15), denied defendants' motion to dismiss as to the FTCA battery claims (claims 11 through 13), and—the genesis of this motion—denied defendants' motions to dismiss as to the Eighth Amendment claims (claims 1 through 6 and 8 through 10).  *See* ECF No. 120 at 13.

       In finding that a *Bivens* remedy was available for claims 1 through 6, I reasoned that there was "no meaningful difference" between the Eighth Amendment excessive force and failure-to-intervene claims at issue here and the Eighth Amendment deliberate indifference claim for which the Supreme Court provided a *Bivens* remedy in *Carlson v. Green*, 446 U.S. 14 (1980). *See* ECF No. 120 at 4.  Furthermore, I reasoned, even if the excessive force and failure-to-

2

intervene claims presented a new context, there were "no special factors counseling against extending a *Bivens* remedy." ECF No. 120 at 5.

On June 8, 2022, the Supreme Court issued its decision in *Egbert v. Boule*, 596 U.S. 482, which addressed two questions: (1) whether a cause of action exists under *Bivens* "for First Amendment retaliation claims," and (2) whether a cause of action exists under *Bivens* for Fourth Amendment claims "against federal officers engaged in immigration-related functions." *See* U.S. Supreme Court, Grant of Petition for Certiorari, November 5, 2021, https://www.supremecourt.gov/docket/docketfiles/html/qp/21-00147qp.pdf. The majority in *Egbert* declined to provide a *Bivens* remedy in those two enumerated contexts.

Defendants then moved for reconsideration of the denial of their motion to dismiss counts 1 through 6, arguing that *Egbert* foreclosed the analysis on which I relied in finding that a *Bivens* remedy should be implied for plaintiff's Eighth Amendment excessive force and failure-to-intervene claims. *See* ECF No. 128 at 1. On October 24, 2022 I concluded that defendants' arguments under *Egbert* did not warrant the "extreme remedy" of reconsideration. *See* ECF No. 150 at 3. I reasoned that "*Egbert* d[id] not vitiate the preceding decades of precedent," and that it did not follow from *Egbert*'s *"*recognition of the pervasive effects of the immigration context on a Fourth Amendment claim" that all future *Bivens* claims—particularly those vindicating other constitutional rights—would be foreclosed. *See* ECF No. 150 at 7–8. I was unpersuaded by defendants' suggestion to extrapolate from *Egbert* that the Supreme Court had rendered *Bivens* a dead letter. I therefore denied reconsideration.

On December 22, 2022 defendants appealed the denials of their motion to dismiss and motion to reconsider. *See* ECF No. 156. On May 7, 2024 the Tenth Circuit dismissed the appeal for lack of interlocutory appellate jurisdiction. *See* ECF No. 173. During the pendency of that

appeal, the Tenth Circuit issued several other decisions interpreting *Egbert* and suggesting that *Bivens* hailed from an "*ancien regime*" in which the Supreme Court had "routinely" and improvidently "implied causes of action."  *See Rowland v. Matevousian*, 121 F.4th 1237, 1241 (10th Cir. 2024).  Based on "the continually evolving precedent in the Tenth Circuit and this District on the availability of *Bivens* remedies," defendants now move for judgment on the pleadings as to claims 1 through 6 and 8 through 10.[1]  ECF No. 182 at 4.  They believe *Bivens* claims pursuant to the Eighth Amendment for excessive force, failure to intervene, and deliberate indifference are no longer "cognizable" based on this recent precedent.  ECF No. 182 at 4.  They also assert Mr. Mohamed does not have standing to pursue his deliberate indifference claims.  ECF No. 182 at 4.[2]

## STANDARD OF REVIEW

This motion for judgment on the pleadings was filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Rule 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  The time limitation has been interpreted to permit courts to refuse to consider Rule 12(c) motions filed after discovery has closed and dispositive motions have been filed.  *See*, *e.g.*, *S.E.C. v. Wolfson*, 539 F.3d 1249, 1265 (10th Cir. 2008) (concluding that the district court did not err in denying a

---

[1] They request judgment on the pleadings as to counts 1 through 10, but claim 7 has already been dismissed.  *See* ECF No. 120 at 13.  I therefore treat this motion as requesting judgment on the pleadings only as to the Eighth Amendment *Bivens* claims that currently remain.

[2] Defendants do not challenge Mr. Mohamed's FTCA claim against the United States; they challenge only the claims against individual officers for damages and injunctive relief.  *See* ECF No. 182 at 2 (arguing that "[d]efendants are entitled to judgment on the pleadings for Plaintiff's claims for excessive force, failure to intervene, and deliberate indifference (Claims 1–6 and 8–10)").  Because I conclude Mr. Mohamed's claims are not cognizable, I do not discuss standing in detail in this order.

Rule 12(c) motion filed after the parties had moved for summary judgment and noting that because there was sufficient admissible evidence to rule as a matter of law, "the time for properly testing the sufficiency of the complaint had passed"); *see also Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1212 (D. Colo. 2020) (quoting 5C Charles Alan Wright et al., Fed. Prac. & Proc. § 1367 (3d ed.)) ("A district court has discretion to deny a Rule 12(c) motion if a party engages in 'excessive delay.'"). Here, discovery has not yet commenced, and there are no other dispositive motions pending. I conclude defendants have not engaged in excessive delay and therefore find no basis to decline to consider the motion.

In evaluating a Rule 12(c) motion, the court accepts "the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." *See Ramirez v. Dep't of Corr's, Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citing *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 556 (10th Cir. 1999)). "A motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

## ANALYSIS

I first briefly describe the history and evolution of the *Bivens* remedy, as it informs my understanding of binding precedent here. I then explain my conclusion that recent Tenth Circuit precedent compels a ruling in favor of defendants here. I observe, however, several ways in which this result sits uneasily within the universe of still-operative *Bivens* precedent.

### I. *Bivens* law.

In 1971 the Supreme Court issued the landmark *Bivens* decision, finding an implied cause of action that allowed the plaintiff to seek damages from federal agents who had allegedly violated his Fourth Amendment rights. By the early 1980s "the Supreme Court had fashioned a claim for damages in three constitutional contexts: the Fourth Amendment's Search and Seizure Clause, the Fifth Amendment's Due Process Clause, and the Eighth Amendment's Cruel and Unusual Punishments Clause." *See Silva v. United States*, 45 F.4th 1134, 1138 (10th Cir. 2022) (citing *Bivens*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)). Since that time, however, the Court has "approached *Bivens* with increasing disfavor." *Silva*, 45 F.4th at 1138; *see also Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017) (noting that "the Court's expressed caution as to implied causes of actions under congressional statutes led to similar caution with respect to actions in the *Bivens* context, where the action is implied to enforce the Constitution itself").

In 2017 the Court set forth a two-step approach that courts were to follow when determining whether relief was available under *Bivens*. *See Abbasi*, 582 U.S. at 139–40; *see also Silva*, 45 F.4th at 1139 (describing that "as of *Abbasi*, courts analyzed *Bivens* claims in a two-step process"). First, "a court had to ask whether 'the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'" *Silva*, 45 F.4th at 1139 (quoting *Abbasi*, 582 U.S. at 139) (alteration in original). Second, *only if* the case were different— "in other words if the 'context [were] new'—then a court [was to] analyze whether the 'special factors counselling hesitation' apply such that it should not expand *Bivens*." *See id*. (quoting *Abbasi*, 582 U.S. at 136, 140). The Court reaffirmed this two-step framework as recently as 2020. *See id*. (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

In 2022 the Supreme Court issued an opinion in *Egbert*, 596 U.S. 482, holding that *Bivens* remedies were not available there for the petitioner's First and Fourth Amendment claims. Although the Court in *Egbert* "d[id] not overrule *Abbasi* or *Hernandez*," it "appeared to alter the existing two-step *Bivens* framework." *Silva*, 45 F.4th at 1139 n.4 (citing *Egbert*, 596 U.S. 482). Under *Abbasi*, courts had considered whether special factors counsel against affording a *Bivens* remedy at the second step only after concluding at the first step the context at issue meaningfully differed from those of the seminal cases. By contrast, the Court in *Egbert* observed that the two steps "'often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" *Id*. at 1139 (quoting 596 U.S. at 492).

The Tenth Circuit has thus instructed courts in this circuit to determine whether a *Bivens* remedy is available under *Egbert* by asking "if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *See id*. at 1139 (citing 596 U.S. at 496) (internal quotations omitted). Two such reasons, the Tenth Circuit has held, are that "'Congress is better positioned to create remedies in the [context considered by the court],'" or that "'the Government already has provided alternative remedies that protect plaintiffs.'" *Noe v. United States Gov't*, No. 23-1025, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) (unpublished), cert. denied sub nom. *Noe v. Berkley*, 144 S. Ct. 2562 (2024) (quoting *Silva*, 45 F.4th at 1139).

This circuit has concluded that under *Egbert*, "courts may dispose of *Bivens* claims" for either of these "*two independent* reasons." *Silva*, 45 F.4th at 1139) (emphasis and alterations in original); *see also Noe*, 2023 WL 8868491, at *3 (quoting this language from *Silva*). In its order dismissing defendants' interlocutory appeal in this case, the Tenth Circuit again emphasized that in addition to rejecting a *Bivens* cause of action based on "[a]lmost any difference between the

7

case at hand and the three [*Bivens*] precedents," courts "may *also* deny a *Bivens* remedy when 'the Government already has provided alternative remedies.'" *Mohamed*, 100 F.4th at 1220 (quoting *Egbert*, 596 U.S. at 497) (emphasis added).

## II.     Analysis under *Silva*.

The recognition of the "independent reasons" foreclosing *Bivens* relief in *Silva* is outcome-determinative here. It suggests that courts need not ask whether the instant case presents a new *Bivens* context before considering whether special factors suggest there should not be a remedy; instead, courts need only ask (1) whether some remedy is already available, or (2) whether Congress would be best suited to construct a remedy in that context. *See* 45 F.4th at 1139. Here, because the alleged misconduct took place within a federal prison, the BOP's internal grievance program is an available remedy. *See* ECF No. 64-1 at 2–9 (exhibits to the Second Amended Complaint documenting Mr. Mohamed's administrative remedy requests); *see also* ECF No. 182 at 10 (citing ECF No. 64-1 at 2–9 for the proposition that the grievance program is an available remedy for Mr. Mohamed's complaints).[3]

---

[3] Defendants identify the Inspector General Act of 1978 as providing an additional alternative remedy for Mr. Mohamed's *Bivens* claims. *See* ECF No. 182 at 10. They argue that this statutory remedy permits Mr. Mohamed to report "'allegation[s] of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice'" and have those allegations investigated by the Department. *See* ECF No. 182 at 10 (quoting U.S.C. App. 3 §§ 8E(b)(2), (d)). The Tenth Circuit has suggested that the possibility of investigation by the Office of Inspector General would suffice as an alternative remedy in the context of allegations against a USMS officer (though it has not addressed that remedy in the context of allegations against a BOP official). *See Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024) (holding that "the internal USMS grievance procedure and the Department of Justice's Office of the Inspector General (OIG) investigation procedure [we]re adequate alternative remedies" foreclosing a *Bivens* remedy"). But because I find the availability of the BOP's grievance process to be dispositive here under *Silva*, I do not reach whether the OIG investigative process is an adequate alternative remedy in this context.

Under *Silva*, that remedy would foreclose any of Mr. Mohamed's *Bivens* claims—the excessive force, failure-to-intervene, and deliberate indifference claims.  See 45 F.4th at 1141. In *Silva*, the court held that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's [excessive force] *Bivens* claim." *Id*.  This alternative remedy was sufficient, the court reasoned, because it operated to deter unconstitutional conduct.  See *id*. (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 62 (2001)) (noting the BOP's administrative grievance program provides a "'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring'").  Notably, the court in *Silva* did not conduct an inquiry into whether the case presented a "new context," explaining that "[b]ecause the Supreme Court has recognized independent means of disposing of *Bivens* claims, [it] focus[ed] [its] analysis on the alternative remedial schemes available to Plaintiff." *Id*.

I cannot see how *Silva*'s rationale would not compel the conclusion that the BOP's grievance program similarly forecloses the *Bivens* claims here.  There is no suggestion in either *Silva* or *Malesko* that the adequacy of the BOP's grievance program might differ based on the type of unconstitutional conduct alleged.  See, *e.g.*, *Malesko*, 534 U.S. at 62 (explaining generally that "[i]nmates in respondent's position . . . have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief . . . and grievances filed through the BOP's Administrative Remedy Program").  Likewise, the court in *Silva* did not make specific findings that the grievance program permitted deterrence of excessive force claims in particular; instead, it stated generally that the "BOP Administrative Remedy Program is an adequate . . . means" to address "allegedly unconstitutional actions" by an officer against a prisoner.  *Id*.

Thus, I am bound by *Silva* to conclude that Mr. Mohamed's *Bivens* claims here (claims 1–10) are foreclosed by the available remedy of the BOP administrative grievance process, without inquiry into whether any presents a previously recognized *Bivens* context under *Abbasi*.

### III. <u>Additional note</u>.

The analysis required by *Silva* sits uneasily with other operative circuit precedent. Application of *Silva* to permit any alternative remedy to foreclose a *Bivens* claim is in tension with other precedent instructing courts to continue to conduct (and presumably, give effect to) the *Abbasi* framework.[4] Indeed, courts have widely acknowledged that the holdings *Silva* derived from *Egbert* appear to conflict with the precedent *Egbert* purported to leave intact. *See Silva*, 45 F.4th at 1139 n.4 (declining to "address or resolve any tension" between *Egbert* and *Abbasi* or *Hernandez* because doing so was "not necessary to dispose of the appeal" before the court). Other courts in this circuit have likewise noted the tension. *See*, *e.g.*, *Bivens v. Blaike*, No. 21-cv-783-PAB-NYW, 2022 WL 2158984, at *3-4 (D. Colo. June 15, 2022) (noting the

---

[4] It is possible here that Mr. Mohamed's deliberate indifference claims would indeed fall within recognized *Bivens* context, as they resemble the deliberate indifference claims at issue in *Carlson*, 446 U.S. 14. In both *Carlson* and here, the plaintiffs alleged that they did not receive timely medical attention for a serious condition, ultimately received care that was grossly inadequate, and suffered serious harm as a result. *Compare* ECF No. 64 ¶¶ 130–132 *with* 446 U.S. at 16 n.1. Under *Abbasi*, if these claims did not present a new context, a *Bivens* remedy would be available even if other remedies were also available. *See Abbasi*, 582 U.S. at 136–37 (noting that "the first question is whether the claim arises in a new *Bivens* context" and that an alternative existing remedy may "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a *new and freestanding remedy* in damages") (emphasis added and internal quotations omitted). *Egbert*, as understood by *Silva*, quietly alters this framework to cast the alternative remedy inquiry as an independent reason to deny *Bivens* relief (without respect to whether the claims arise in a recognized context). Though it conflicts with *Abbasi*, that recent precedent is binding and is dispositive here.

"lack of guidance" in *Egbert* on what if any changes it purports to make to the *Abbasi* framework). And *Egbert* has spawned varied interpretations in this circuit.

To be sure, the Tenth Circuit post-*Egbert* has generally treated the questions of whether Congress is better positioned to provide a remedy and whether an alternative remedy already exists as dispositive, without any inquiry into whether the claim presented a "new context" under *Abbasi*. *See Silva*, 45 F.4th at 1141–42 (noting that "[b]ecause the Supreme Court has recognized independent means of disposing of *Bivens* claims, we focus our analysis on the alternative remedial schemes available to Plaintiff" and concluding that "Plaintiff's *Bivens* claim [wa]s foreclosed by the availability of the BOP Administrative Remedy Program to address his complaint"); *see also Noe*, 2023 WL 8868491, at *3 ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* . . . the availability of the ARP [the BOP Administrative Remedy Program] is sufficient to foreclose a Bivens claim despite any factual similarity between the two [cases]."); *Straker v. Stancil*, No. 23-1311, 2024 WL 4381106, at *2 (10th Cir. Oct. 3, 2024) (unpublished) (identifying the "two independent reasons" that might foreclose *Bivens* relief and concluding that "[b]oth reasons foreclose[d] recognizing a *Bivens* remedy" there without inquiring into the newness of the context). This approach, which appears to prevail in the Tenth Circuit post-*Egbert*, is the one I have applied to reach the result here.

Still, other Tenth Circuit opinions have suggested that vestiges of the *Abbasi* framework should be included in the post-*Egbert Bivens* analysis. For example, the court in *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352 (10th Cir. 2024), described that its *Bivens* analysis focused on "a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy" in the given context. *Id*. at 1357. But to answer that

11

question, the court in *Logsdon* considered several factors relating to both the newness of the context (differences in the law enforcement conduct and category of defendant at issue) *and* the existence of other remedies for misconduct. *See id*. at 1357. The court seemed to ultimately suggest the existence of alternative remedies should be viewed as a distinguishing fact creating a new context. *See Logsdon*, 91 F.4th at 1357 (emphasizing "three features of this case not considered by the Supreme Court in *Bivens*: (1) the nature of the law-enforcement conduct, (2) the category of defendant, and (3) the existence of other remedies for misconduct").[5] This approach essentially merges the two *Abbasi* steps into one but retains some of their content.

In another case, *Rowland v. Matevousian*, 121 F.4th 1237 (10th Cir. 2024), the court suggested still another version of superficial adherence to the *Abbasi* framework. The court first noted that it "must embark upon the two-step *Bivens* inquiry to see if [the plaintiff's *Bivens*] claims are cognizable." *Id*. at 1242. "In other words," the court explained, "we must *first* examine whether Mr. Rowland's case arises in a new *Bivens* context," and then "[s]*econd*, we must consider whether there are special factors suggesting that the 'the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. (quoting *Egbert*, 596 U.S. at 492) (emphasis in original). The court made an initial finding that the case presented a new context before ultimately concluding that the BOP's Administrative Remedy Program foreclosed relief. *See id*. at 1243–44.

---

[5] This analytical framework—though it does not appear in these terms in *Silva*—may be reconcilable with *Silva*'s holding. It would suggest, as *Silva* did, that recognizing a *Bivens* remedy is inappropriate when an alternative remedy is available (because the alternative remedy creates a new context, so providing a *Bivens* remedy would require an expansion from the seminal cases). *See Logsdon*, 91 F.4th at 1357.

It is difficult to square the court's approach in *Silva* with its instructions in *Rowland*. Whereas in *Silva*, the court needed consider only the existence of an alternative remedy "[b]ecause the Supreme Court has recognized independent means of disposing of *Bivens* claims," 45 F.4th at 1141, the court in *Rowland* appeared to believe it was required to first consider whether the facts presented a new context before considering any other factors that might foreclose relief, *see* 121 F.4th at 1243. For several reasons, I conclude that *Silva*'s binding language requires the Court to treat the BOP's grievance program as foreclosing *Bivens* relief notwithstanding the seemingly contradictory instruction in *Rowland* to "*first*" consider whether the case presents a new *Bivens* context.

First, *Rowland* does not itself clearly uphold the *Abbasi* framework. It is unclear to me why the court in *Rowland* described an obligation to "first" perform a "new context" analysis, when it ultimately concluded that the alternative remedy independently foreclosed relief. *See id*. at 1244 (observing that "this court has held[] the 'availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.'") (quoting *Silva*, 45 F.4th at 1141). It seems from *Rowland*'s logic that a court need not *first* determine that the context is new to reach the question of whether other factors indicate a judicial remedy is inappropriate. Indeed, *Rowland* relies on the same language from *Silva* that I find dispositive here to impliedly subvert the same *Abbasi* framework it initially enumerated.

In addition, I am unsure about *Rowland*'s fidelity to the *Abbasi* analysis in the first instance. The court there—after performing a cursory analysis under *Abbasi*— eventually suggested that perhaps the entire inquiry was unnecessary. Instead, the court suggested, if "the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no." *Id*. (quoting *Egbert*, 596 U.S. at 504

13

(Gorsuch, J., concurring)). Based on Justice Gorsuch's concurring observation, the court in *Rowland* concluded that Mr. Rowland's "*Bivens* claim fails on that independent basis alone." *Id*.

I cannot understand the court's reliance on Justice Gorsuch's comment as an "independent basis" for denying *Bivens* relief, particularly when juxtaposed with its purported fealty to the *Abbasi* two-step framework. If it were true that "recognizing a *Bivens* action" by definition "improperly merges the 'Constitution's separation of legislative and judicial power,'" none of the two-step analysis would be needed at all. *See id*. (quoting 596 U.S. at 491). *Bivens* remedies would be *per se* unavailable—an even more drastically restrictive approach than those in *Silva* and *Logsdon*. I find *Rowland*, at best, to be uninformative regarding the proper *Bivens* analysis *post* Egbert.

In short, I note the lack of unified guidance on how courts are to conduct *Bivens* inquiries under *Egbert*. For the reasons I have explained, I rely primarily on *Silva* and *Logsdon* in this disposition.

**ORDER**

For the reasons above, I am bound by *Silva* to conclude that the alternative remedy of the BOP's administrative grievance program here forecloses Mr. Mohamed's claims alleging excessive force, failure to intervene, and deliberate indifference under *Bivens*. Defendants' motion for judgment on the pleadings as to claims 1 through 6 and 8 through 10 of the operative complaint, ECF No. 182, is therefore GRANTED. The individual defendants are dismissed. Because the government does not seek dismissal of the remaining FTCA claims (claims 11 through 13), the United States remains as a defendant.

DATED this 6th day of January, 2025.

BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge