IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Mohamed v. Jones et al. No. 1:20-CV-02516-RBJ-MDB.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 21 2025

JEFFREY P. COLWELL
CLERK

## PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT FOR THE PURPOSE OF THE INJUNCTIVE AND DECLARATORY JUDGMENT RELIEFS

Plaintiff respectfully files this motion, requesting the court to allow his attached third amended complaint in which limits his requests for relief to; the injunction that would require the government (gov.) to treat his ankle, and declaratory judgment that merely acknowledge the violation of his rights. In so requesting he stats the following:

### The Dismissal Of All Bivens Claims

On Jan. 6, 2025 the court issued its order on government's motion for judgment on the pleadings. The order, doc.199, concluded that plaintiff's nine claims cannot proceed under Bivens. It therefore dismissed all Bivens claims. While the order it doesn't appear to particularly mention the dismissal of plaintiff's official capacity claims (from which plaintiff sought an injunction for his broken leg treatments) plaintiff's understanding of the order is that those claims are also dismissed. So, As the court's order apparently endicates; all it's left for plaintiff is his FTCA claims, so far.

### Plaintiff Asks the Court to Allow the Proposed Amended Complaint, Partly, For the same reasons The Court Allowed Government's Motion.

In accepting government's argument..., the court concluded that the "defendants have not engaged in excessive delay" because "here discovery not yet commenced, and there are no other dispositive motions pending" Doc. 199 p.5. That's true with plaintiff's request to amend, especially when plaintiff's proposed amendment is almost identical to his previously filed/operating complaint, doc. 64. As stated below:

### The Proposed Amendment is identical to the Previous/operative one, Doc.64 and, Therefore, No New Answers May be Necessary:

The proposed amendment, Exh.1 attached here re allege the previously allegations in doc. 64. Those 12 claims are as follows.

At p.14 doc.199 "The individual defendants are dismissed. Because the gov. does not seek dismissal of the... FTCA claims..., the United states remains as a defendant".

1.

• **The Excessive Force & Failure to Intervene claims:** These first six claims are the same claims alleged before. They even retain the same paragraph numbers. Plaintiff merely rewrote them and made some insignificant little changes mostly in grammer and spelling.

• **Deliberate Indifference Claims:** These're also the same previously submitted claims. However, they carry different paragraph numbers. As for the allegations directly made against the three medical staff: Jones, Huddleston, and Osagie; are the same. But, on the physical and emotional injury, plaintiff added some new allegations to clarify (on physical injuries) that his broken ankle was never adequately treated and the ankle, currently, is not healed; plaintiff continues to suffer. See proposed Amendment Complaint at 86-94

• **Battery claims:** These're also, essentially, the same previously alleged claims but with different numbers of paragraphs.
In sum, the proposed amendment is largelly the same as the previous one. For that reason, plaintiff believe, the parties may not need to file further responsive pleadings, especially, since there's no damages or compansative relief sought

**The Injunction Is Appropriate Here Because the Government Failed to Treat Plaintiff's Foot and He continue to suffer:**
As plaintiff clarify in his proposed amendment at 86-94; he wasn't timely and adequately assessed and treated. And for the last 6+ years he never been free from the pain and sufferings caused by his fractured ankle. Moreover, he has always requested for proper treatment such as surgery but the staff don't even want to discuss that particular injury. Hence plaintiff asks the court's intervention here, ordering the gov. to adequately treat plaintiff's ankle.

**Plaintiff Request Declaratory Judgment For Two Legitimate Reasons**
Plaintiff has atleast two reasons for which he request the declaratory judgment (D.J)
**First Reason:** To resolve the controversy for the purpose of the Motion for compassionate release: In Nov. 2023, the sentencing commission added new reason for compassionate release (C.R). The reason or an extra ordinary and compelling reason called "victim of Abuse." Under this provion, a prisoner may qualify for judge's consideration of his c.r. if he's victim of abuse. But such abuse must be establish by the BoP or by the court's proceedings. See 18 U.S.C. § 3582 at 1B1.13(b)(4).

Here, plaintiff has already filed his motion for C.R. See Doc. 2244 docketed on Dec. 9, 2024, U.S. v. Mohamed, 98-CR-1023 (LAK) S.D.N.Y. This plaintiff's objective here is sufficient for this court to issue the D.J. relief, especially when the gov. deny any liability. See Hooper v. City of Tulsa, 71 F.4th 1270, Lexis 13-14 (10th Cir. 2023) (stating that "a plaintiff bringing a declaratory judgment claim meets" the Article III's burden of "the fact alleged...show that there is a substantial controversy, between parties having adverse legal interests." See also State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 983 (10th Cir. 1994) (stating that the court in deciding whether to issue D.J. should "weigh two questions. Will a declaration of right... serve to clarify or settle legal relation in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceedings? If an affirmative answer can be had to both questions, the trial court should hear the case"). Plaintiff's objective here satisfy the above requirements.

SECOND REASON: The acknowledgment of plaintiff's violated rights. By maliciously assaulting him, seriously injuring him, failing protecting him, and deliberately and indifferently denying him the necessary medical treatments the BOP and its staff violated plaintiff's constitutional rights. The D.J. will declare just that. See Haaland v. Brackeen, 599 US 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of relience and repose secured by res judicata.")

CONCLUSION:

For the above stated reason, the court should allow the proposed amended complaint to proceed.

Jan. 14, 2025

Khalfan Kh. Mohamed
U.S.P. Florence, Box 7000
Florence, Co 81226-7000

Khalfan Kh. Mohamed
s/Muhammed

---

CERTIFICATE OF SERVICE

I, Khalfan Kh. Mohamed, hereby certify that on Jan. 14, 2025 have mailed my motion for third amended compl. with the proposed amendment attached to court office of clerk, U.S.D.C. 901-19th St., Room A 105, Denver, Co 80294.

Khalfan Kh. Mohamed
U.S.P. Florence, Box 7000
Florence, Co 81226

Khalfan Kh. Mohamed
s/Muhammed

3.

Attachment /EXH: 1

- Proposed Amended Complaint.





FILED
UNITED STATES DIST___ __ COURT
DENVER, COLORADO

JAN 2 1 2025

JEFFREY P. COLWELL
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.    20-CV-02516-RBJ-MDB
(To be supplied by the court)

Khalfan Khamis Mohamed , Plaintiff

v.

Jones, Nurse, Ind & off capacities ,

Huddleston, Nurse, Ind & off. capacities ,

Osagie, Phys. Ass. Ind & off capacities .

Brush, officer. Ind & off capacities . , Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

### PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be
served by filing a notice of change of address. Failure to keep a current address on file with the
court may result in dismissal of your case.*

Khalfan Kh. Mohamed, Reg # 44623-054, U.S.P. High. Box 7000
(Name, prisoner identification number, and complete mailing address)

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

___    Pretrial detainee
___    Civilly committed detainee
___    Immigration detainee
___    Convicted and sentenced state prisoner
_✓_   Convicted and sentenced federal prisoner
___    Other: *(Please explain)* _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If
more space is needed, use extra paper to provide the information requested. The additional
pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: Jones, Nurse, Not Known
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law? _✓_ Yes ___ No *(check one)*. Briefly explain:

He was on duty employed by the BOP at the ADx

Defendant 1 is being sued in his/her _✓_ individual and/or _✓_ official capacity.

2.

<u>DEFENDANTS</u>

Espinoza, Officer, Ind & off capacities.

Miller, officer, Ind & off. Capacities.

Murton, Lt., Ind & off capacities.

Armijo, Lt., Ind. & off. capacities.

United states of America.

Defendant 2:  Huddleston, Nurse, Not Known .
        (Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law? ✓ Yes ___ No (*check one*).  Briefly explain:

He was on duty & Employed by BOP at ADx in all Relev.

times.

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3:  Osagie, P. A.,  Not Known
        (Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law? ✓ Yes ___ No (*check one*).  Briefly explain:

He was on duty & Employed by BOP at ADx in all

Relev. times.

Defendant 3 is being sued in his/her ✓ individual and/or ✓ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___    42 U.S.C. § 1983 (state, county, and municipal defendants)

___    *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
       (federal defendants)

✓    Other: (*please identify*) 28 U.S.C § 1331 (Fed. Question); 5 U.S.C § 702 (APA)

4.

## B. DEFENDANTS' INFORMATION

Defendant 4: Brush, Officer, Not Known.
Ind.& off. capacities.
He was on duty & Employed by BOP, at ADX in all Rel. times.

Defendant 5: Espinoza, Officer, Not Known.
Ind.& off. capacities.
He was on duty & Empl. at ADX, by BOP in all Relev. times.

Defendant 6: Miller, Officer, Not Known
Indiv.& off. capacities.
He war on duty & Empl. by BOP at ADX, in all Relev. times.

Defendant 7: Murton, Lt. Not Known.
Ind.& off. capacities.
He was on duty & Empl. by BOP at ADX in all Relev. times.

Defendant 8: Armijo, Lt. Not Known
Ind.& off. capacity [1]
He was on duty & Empl. by BOP at ADX in all Relev. times.

Defendant 9: United States of America.

[1] Note on Capacities & Reliefs Sought:

Capacities:
In this proposed 3rd. Amend. Complaints each and all defendants
sued under both: individual and official capacities.

Reliefs soughts:
Plaintiff requests Injunctive relief under the three medical claims: tre-
atment for his broken ankle... Moreover, for all 9-constitutional claims (1-9)
plaintiff asks Declaratory judgment, as he specied in the "Request for relief"
p.26. Plaintiff doesn't know whether decl. judg. can be issued against the staff and
the gov. at the same time... If yes, plaintiff request that order. Otherwise, the order
should be as comprehensive as is allowed.
As for the Battery claims, plaintiff's request is at p.26. as well.

5.

**D.      STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  <u>EXCESSIVE FORCE AGAINST BRUSH</u>

Supporting facts:

1. The word "my cell" in all below mentioned allegations, unless stated otherwise, shall mean Cell #108, Range A-Lower, in C-unit, at the ADX-Florence. That's for all dates between 8·19·2018 and 8·23·2018, while "my cell" shall mean cell #406, Range B-upper in the same stated unit for all dates from 8·25·2018 on wards. That's so because I was housed in cell 108 until the evening of 8·24·2018, when I was moved to cell 406.

2. In the morning of Monday, 8·20·2018 at the breakfast tray, I started and declared my peaceful protest in the way of hunger strike ("H·st") while I was housed in cell 108.

3. I sent several written requests to some senior staff members within the ADX declaring my H·st. That included; the unit manager, Mr. Pockor, the ADX Medical Director; Dr. Oba, along with Physician assistant (" P·A") who was also my long time medical provider, A·Osagie, and to one of the ADX's high-level SIS officials. I also, verbally, told the C-unit officers of my H·st.

4. The main purpose of informing these staff of my H·st. was to give the authority a notice, so I could be afforded all necessary medical attentions with accordance to BOP's relevant program statement.

5. The H·st. does not violate any policy or regulation of the BOP. Since early 2000s I've gone in to more than 10-different H·sts. However, I've never been disciplined for violating any policy as a result of my H·st.

6. It's my practice in all H·st., including this one at issue here, to refrain from eating and drinking any thing except some water, even before declaring my H·st. In this H·st, my last meal taken was the dinner, on evening of 8·19·2018.

7. On evening of 8·22·2018, at the dinner tray, I had already missed a total of a consecutive trays. The BOP's, relevant H·st. policy requires the medical staff to perform the initial H·st. medical assessment (M·Ass) once a hunger-striking prisoner misses his 9th. consecutive meal, and in some cases, the assessment may be performed even earlier. No such assessment were performed on me in this H·st.

8. Also, in the same evening, the case manager; Carlson, came to me and said that the unit manager, Pockor, has received my request that I sent him declaring my H·st, and said that the unit officers, Lieutenant ("Lt") Armijo, and the unit Team are informing the warden's office, the captain, and the medical staff on my H·st, and that every one was aware of my H·st, ever since I started refusing trays, Monday morning.

## D. STATEMENT OF CLAIMS

9. Next morning of 8-23-2018 I wake up feeling very weak, dizzy, tied and with heavy headache. I had missed 10-consecutive trays by that time, but there was no M.Ass performed on me.

10. At the lunch time, after refusing the 11th. consecutive tray, the three unit officers: MILLER, Baca, and BRUSH wanted me to submit to hand-cuffing so they could remove my food; commissary items. BRUSH told me that since I had refused 11-consecutive trays, they had to remove my pers-onal food items. I submitted to handcuffing.

11. The BOP's program statement requires the removal of food items and drinks from a Hunger striking prisoner's cell after he refuses the 9th. consecutive tray. However, the policy doesn't authorise the removal of Non-food items, such as books, legal materials, cosmetics...etc.

12. The officers escorted me to the range-law library about 30-feet away from my cell. It was around 11:40 A.M.

13. Each of the tree officers was physically much bigger than myself. They, collectively, would easily make 600+lbs. BRUSH and Baca each was over 200lbs, while MILLER was close to 200lbs. My self, on 8.26.2018, three days later, I weighed 138 lbs.

14. Because I was too weak and dizzy, I couldn't put on my training shoes as I usually do when I go out of my cell. I was escorted to the law library wearing a pair of socks and shower sleepers.

15. The three officers noticed my extreme and obvious physical weakness to the extent that officer Baca, seeing me I could hardly walk and appearing dizzy and sick, asked me as they escort me to the law library, " Mohamed, are you ok? I said "No, I'm not ok". He said "yea, I can see that, you need to eat man!

16. Even though I was physically weak, I was in full control of my feeli-ngs and emotions. I made sure that I stay calm, peaceful, and respect-ful to the staff. This has been my behavior in all my H.st's. I've never behaved otherwise.

17. After I was placed in the law library, I could see BRUSH removing almost every thing from my cell as he was putting them in plastic bags.

18. About an hour later since I was placed in the law library, the three officers cameback and BRUSH told me that Lt ARMIJO wanted me to take off my personal clothes and put on the BOP's-provided khakis. I told BRUSH that the policy doesn't require a hunger-stiking prisoner not to have personal clothes while he's in H.st. It doesn't. I asked to speak with Lt. ARMIJO, and BRUSH said ok, and the officers left.

## D. STATEMENT OF CLAIMS

19. About 10-minutes later, the three officers came back and BRUSH told me that Lt. Armijo wanted me to be taken to his office so we can talk there. However, because I had previously learned that the staff often beat up prisoners in the Lt's office because there's no camera in it, I said "No, the Lt. can come here and speak with me, or, put me back into my cell and the Lt. come there and speak with me".

20. At that point, BRUSH said "ok, we take you back to your cell. He then put handcuffs on me, doubled lock the cuffs, and then the three officers started to escort me through the hall-way towards my cell.

21. By that moment my previously mentioned Hist. symptoms, supra at 9 were worsening rapidly, but I continued to stay calm.

22. As I was escorted, at no time I did become ever released from the restraints, no did the officers lose their control of my hands. I never moved suddenly, became angry, combative, resistive, attempted to assault any officer, or even raised my voice.

23. When I arrived at my cell, I stopped, thinking that the officers have missed my cell, and looking towards it, I said calmly and without posing any threat "here is my cell, you told me that you're going to put me back into my cell".

24. Per my own experience, it's a normal practice for a prisoner who's escorted to his cell or to any other destination that he's aware of, to stop at that cell or destination when he and the escorting officers reach there. It's not normal to do otherwise. Neither it's normal or is a policy for a prisoner to ask officers' permission to stop at such known destination, or declare to the officers that "now I'm stopping".

25. At that moment, officer BRUSH immediately, without any warning nor any need, threw me against the wall in the area between my cell #108 and cell #107, while aggressively, maliciously, and sadistically smashing my head multiple times against the wall, at the same time shouting "stop resisting, stop resisting" while in fact, I was not resisting at all.

26. BRUSH's above statement was just a pretext that he chose to make up to justify his malicious and sadistic violence. I had previously learned that prison guards regularly use such similer statements when they unprovokedly beat up prisoners.

27. I never sisisted neither shown any sign of resistance, and I had no energy in me even if I wanted to resist. I said as loudly as I could "I am not resisting... I never resisted any thing... You told me that you're going to put me back into my cell". As the beating on me were going on that day, I repeated these and similer statements in attempt to show that I was being tourtured maliciously and sadistically.

8.

## D. STATEMENT OF CLAIMS

28. The smashing of my head against the wall brought me an excruciating and exteme pain that I've never experienced in my life. I thought that my head was basting open. The smashing of my head and other beatings that followed also worsen my previously stated Hist. symptoms. Supra at 9.

29. I then found my self being crushed on to the ground, face-down, while BRUSH and another officer, most likely, MILLER, punching and kicking me, and also spitting on me.

30. As soon as I was put on the ground, officers also restrained my legs with the leg cuffs, and from this moment to the end of the beatings in the observation cell ("obs.c.") I was fully restrained with the hand and leg cuffs.

31. Many officers, possibly 10-or-more, now swarmmed into the range like insects and all of them were taking part in punching and kicking me as well as spitting on me. The officers carried out these malicious and sadistic attacks all over my body.

32. As I was on the ground, now lying on my jaw, BRUSH placed his working boot on my neck to the jaw, and used it as a weapon by pressing it maliciously, while moving it right and left as if he was trying to crush some thing solid, leaving me with another deadly pain.

33. At one moment as BRUSH's boot still on my neck and other officers were beating me, I found my self that I couldn't breath, and had to cry out that "can't breath, I can't breath... you're trying to kill me."

34. As I was on the ground, also, BRUSH, with help from other officers, made a concerted attempts to break my arms, legs, feet and toes. BRUSH was twisting and manipulating them aggressively in order to break them. I cried out in excruciating pain again, "he's breaking my legs and my hands, they're trying to kill me."

35. When BRUSH, MILLER, and their fellow officers were trying to break my bones and attacking me, my feet were vulnerble open, because those shower-sleepers I had when I was escorted to the law library, supra at 14, had come or taken off by the officers once the attacks started.

36. BRUSH and his fellow officers made multiple threats and verbal abuse against me. For example, BRUSH said, shouting on me "we gonna fuckin kill you ..., no one's gonna believe you", "scream louder, bitch! this's America, not an Iraq or Afghanistan", or similer statements.

37. The above death threats as well as the cursings, racial slurs, spittings and many other kinds of abuse, continued up to the end of those beatings in that day.

9.

## D. STATEMENT OF CLAIMS

38. I don't knew for sure for how long I was being tortured in that particular area, see supra at 25, but I assumes that the beating went on for several minutes, subject to the discovery determination. I was struck at least 70 times at that spot, before I was struck more as I was being escorted to the Obs. C., and then, within it.

39. When I was on the ground and then in the following beatings to the end of the beating in the Obs. C., the officers always forced my upper body and head down, so I couldn't identify most of the officers who were torturing and abusing me.

40. I was then violently made to stand up and walk through the hallway towards the entrance of the Range A-C unit, while the officers continue to maliciously beating me, as at the same time jacking me up by the handcuffs from behind, using the cuffs themselves as another tool and method to punish me with, and as a result, delivering me another excruciating pain.

41. I could not walk straight because of the worsening H.St symptoms, supra at 9, and because of the deadly pain all over my body, and especially, my right ankle which I believed was already broken by BRUSH and his collegues. I had to limp in the excruciating pain as the beatings, spittings, and all other kinds of abuses and threats continue.

42. I had no doubt that the officers intended to murder me because they tortured me without limit. I wished they had already murdered me due to the etxreme pain I was forced to go through.

43. Because of the excruciating pain, the limping, and the physical weakness…, etc; all most all moves I made were the result of officers' physical assault on me… I couldn't control my movements. But at no time I'd ever tried to attack any one. Never.

44. Not long after I wass assaulted, I heard that BRUSH had been promotted and made a Lt. and he along with Lt. Murton have been transferred to other prisons… ADX's officers fear no consequences.

## CLAIM TWO: FAILURE TO INTERVENE AGAINST Lt. ARMIJO

45. I hereby incorporates by reference the above made allegations: 1-44.

46. When we reached the entrance of the Range-A, the officers un intentionally and very briefly eased their grip off my head, and so I could raise my head and see Lt. Armijo and Lt. Murton standing next to each other above the stairs of the entrance, as they were witnessing me limping in pain while the officers continue to maliciously attack and abuse me.

47. When I saw the two Lt's, I repeated my previous crying, see supra 27, even louder because I was expecting them to stop the beatings, and wanted them

10.

## D. STATEMENT OF CLAIMS

to Know that I was being tortured maliciously. However, the two Lts didn't stop the beatings even though each possessed realistic opportunity to do so.

48. Each of the two Lts saw me being attacked while I was limping in pain, fully restrained, and each heard and saw me begging for their intervention.

49. ON information and belief, Lt. Armijo and Lt. Murton have been present in the unit and witnessed the beatings previously; before I had seen them there standing by, witnessing the beatings.

50. ON information and belief, Lt. Armijo was the unit's Lt. ON 8-23-2018 and therefore, was incharge of the unit daily operations and the unit officers.

51. Later that day after the beatings stopped, Lt. Armijo along with some officers entered into the obs. C. where I was put, and Armijo lied to me; Armijo asked me what happened..., and asked me to explain the events. But I told him that he already knew every thing, because of what officer Blush had told me earlier that day. See supra at 16-19. I also told Armijo that I have seen him standing by with Lt. Murton witnessing me being beaten... etc. See supra at 46-48. Armijo, however, denied all that and claimed that he didn't know any thing, and that he had just came in that moment to report to his duty. Armijo further told me that he was treating my above statement as an insult's to him.

52. Later on, in 9-12-2018 when I was housed in cell #406, Lt. Armijo with another Lt. named Alexander, came to my cell and both made even larger effort trying to convince me that Armijo was not present at the time of the attack on me in 8-23-2018. They both suggested that I was confusing him (Armijo) with another Lt. Sukdeo[2] who migh have been present in the unit at the time of the attack. I said NO, I didn't confuse him with any one... He was there and I saw him.

### CLAIM THREE: EXCESSIVE FORCE AGAINST OFFICER MILLER

53. I hereby incorporates by reference the above made allegations; 1-52

54. Passing the entrance while the beating continue, I was then pushed into the obs. C., under Lt. Murton's orders and supervision.

[2] This may suggest or show that Lt. Sukdeo was also present during the attack and possibly played a role in it... He and others might qualify as additional defendants after discovery. (I so wrote in the Amend. Compl. doc. 64; the gov. discovery response of Nov. 22. 2024, confirmed that Lt. Sukdeo actually was there at the time.)

11.

## D. STATEMENT OF CLAIMS

55. As I was being pushed into the obs.c. through beatings, officer MILLER with a huge effort maliciously and sadistically hit me on my face with his knee multiple times, delivering me another excruciating pain on my face.

56. Because my upper body and head were being constantly forced down, see supra at 39, MILLER, whom I believe was at the time one of the officers holding me from back through the handcuffs, had to sneak himself in order to hit my face...Without such huge efforts MILLER couldn't get into my face.

57. Officer MILLER was also one of the officers who initiated the beating on me that day, supra at 29. Moreover, MILLER was the #1 unit officer on 8.23.2018. officer BRUSH couldn't have accomplished his initial attacks on me without MILLER's and very likely, BACA's full support and agreement.

## CLAIM FOUR: FAILURE TO INTERVINE AGAINST Lt. MURTON

58. I hereby incorporates by reference the above made allegations; 53-57.

59. Soon after I reached the entrance of the range, supra at 46-49, Lt. MURTON took full control of the ongoing torture against me. From that moment to the end of the beatings, MURTON was maliciously and sadistically giving orders to the officers on how to beat me.

60. MURTON started by ordering the officers to place me in the obs.c. while at the same time verbally abusing me. Forexample, he told me "you wanna hunger strike in the G.P.( thats General Population units; ie: in oppose to the H-unit where I first knew him as an officer several years before) this's what you gonna get mother fucker...etc.

61. MURTON also told me that I had to walk straight, not limping and also stay silent not to cry out, otherwise, he said, I'll be beaten more. He told me that even after I had already said to him that I can't walk straight because I believed the officer have broken my leg.

62. Because I couldn't walk straight and couldn't be silent, under MURTON orders and supervision, I was beaten more.

63. The obs.c. in c-unit, is located beyond the entrance to the Range-A, at the opposite side to the unit officers' and Lt's offices. The obs.c. has no camera in it, and for that reason officers beat prisoners there.

64. Later that day I learned that officer BRUSH lied in the incident report that he fabricated against me. He claimed that I had committed the prohibitted act of "attempting to assault him", while I was being escorted to the obs.c. In reality, however, BRUSH and his fellow officers had told me that they were taking me back into my cell. supra at 19-20.

12.

## D. STATEMENT OF CLAIMS.

65. In the Obs.C., MURTON kept giving orders to the officers who were physically torturing me, such as "put him against the wall, bend, bend him over..., place him on the bed." He also said to the officers "show this dirty Arab terrorist what's ADX." At another time he told me, in response to my crying out that I never resisted any thing, see supra, at 27, "look at you an Arab (or he said "Arabic") bitch, you think there gonna be any one who gonna believe you, you must be crazy".

66. At another time, as officer ESPANOZA was maliciously hitting me any my face, MURTON told him "keep it to the body" which I alleges that he was trying to avoid an incriminating evidence.

67. On information and belief, Lt. MURTON, officer BRUSH and ESPANOZA, all have long history and reputation in abusing prisoners at the ADX, including using of excessive force against them and then fabricating incident report against those prisoners.

68. I personally heard prisoners who've been abused by BRUSH and ESPANOZA. In one specific case, ESPANOZA participated in torturing a prisoner whose several ribs were fractured in the torture, about a year after I was tortured.

69. Several years prior to 8-23-2018 torture on me, MURTON used excessive force against me when he was an officer, in one of my H.sts when I was housed in the H-unit.

## CLAIM FIVE: EXCESSIVE FORCE AGAINST OFFICER ESPANOZA

70. I hereby incorporates by reference the above made allegations: 1-69.

71. ESPANOZA worked in perfect coordination with Lt. MURTON in torturing me in the Obs.C. As MURTON, I knew ESPANOZA since H-unit.

72. ESPANOZA and other officers that I couldn't identify, maliciously beat me, spate on me, and verbally abused me, causing me to go through excruciating pain and great deal of humiliation.

73. At one moment, ESPANOZA was very aggressively pulling my beard and ears up and down, forcing me to follow his movements in order to reduce the deadly pain that he was causing me, while other officers were holding me to stay put. ESPANOZA also maliciously and sadistically hit me on my face. See supra at. 66.

74. Among ESPANOZA's statement to me in the Obs.C. is "stupid little terrorist, you think this's Saudi Arabia, this's United States of America..., son of a bitch... we got your leader, Bin Laden, we soon gonna send you where he's... hell", or some other statement in that meaning. He also said "this's not H-unit".

23.

### D. STATEMENT OF CLAIMS

### CLAIM SIX: FAILURE TO INTERVINE AGAINST OSAGIE

75. I hereby incorporates by reference the above made allegations: 1-74.

76. The P.A. OSAGIE was among the senior ADX staff who witnessed the beatings against me and chose not to stop them. As I was being maliciously and sadistically beaten and abused in the Obs.C, I heard OSAGIE from the cell's door, very close to where I was being beaten, saying approvingly "is he still resisting?" while, in fact, I was not resisting and was in full restraints.

77. After hearing OSAGIE's above statement, I repeated my previously made statement that I never resisted any thing, and also said "are you also OSAGIE witnessing this, see how they beat me?" OSAGIE never replied.

78. OSAGIE's voice was very close from where I was being beaten. At that moment I was already placed on the concrete bed inside the Obs.C. The bed is several feet high from the Obs.C. floor, and OSAGIE must've seen me and the beatings very easily and without any efforts. OSAGIE must also have heard my forever repeated statement that I never resisted any thing before his above mentioned approving statement and after it when I repeated my statement.

79. I knew OSAGIE from at least as early as 2002, and his voice and accent are obviously identifiable to me and to any one who knew him.

80. OSAGIE was a top BOP's/ADX's official who had a realistic opportunity to stop the torture against me in that day, but decided to be deliberate indifferent.

81. OSAGIE was at the time a fully trained law enforcement, BOP's senior staff. See Program statement: OPI, HRD/PDB No. 33000.3, of 5.5.2017 (Employment), section.11 Detailing the training staff must receive... including medical staff with exception of Doctors.

82. Furthermore, all BOP's staff, or at least the ADX's, including OSAGIE himself would in times work as regular prison guards. I have seen OSAGIE at different occasions wearing the BOP Guards' uniforms and working as one of them.

83. The only meaningfull difference between OSAGIE and, say, Lt. MURTON and others, is that OSAGIE was both; a fully trained prison guard as well as a medical professional, while MURTON was only a prison guard. OSAGIE could've either of these two positions he hold to stop the abuses, but he chosed to use neither.

84. After OSAGIE's above statement the tortures continued and even worsen. But eventually stopped. By that time I had been beaten for perhaps 15-minutes, un stop. The beatings stretched over possibly 50-miters or more; from cell #108, supra at 25, to the obs.c. during which I was struck over 150-times.

14.

## D. STATEMENT OF CLAIMS:

### PHYSICAL INJURIES

85. I hereby incorporates by reference the above made allegations 1-84

86. The BOP's malicious assault of 8.23.2018 against me resulted into multiple serious physical injuries some of which persist to this day

87. The Fractured Ankle: Following the assault of 8.23.2018 and the x-ray of my right ankle taken on 8.31.2018, I was diagnosed with an acute fracture on my right ankle. As a result of this serious injury; I was put on splint that was replaced by a hard cast as well as in a wheel chair for over two months; from 9.3.2018 to 11.16.2018.

88. Lack of Timely & Adequate Treatment: Even though it was obvious to the staff that I had suffered from serious injuries on 8.23.2018 including the injury on my feet; the staff refused to provide me with any treatment or adequate assessment on the injuries until 8.31.2018 when finally I received an x-ray for my ankle. Moreover, besides the splint, hard cast, and the wheel chair I was provided with as stated above; the ADX staff completely refused to provide me any pain medication or other treatment to reduce the excruciating pain I was going through due to the fracture and other injuries...The only "treatment" I was provided between 9.4.2018 the day of my diagnosis and 4.23.2019 was one time ice bag and 14 Ibuprofen tablets given to me on 12.6.2018. My requests for pain medication and physical therapy all were ignored even though the staff recognized the seriousness of injury and its associated excruciating pain. On 1.9.2019 for example; in one interaction with an ADX new P.A (replacing A. Osagie) following my sick-call request; the P.A. saw my swollen ankle and told me that the pain from the serious fracture may remain for the rest of my life and I'll have to learn to deal with it, but she refused to provide me with any medication for pain. She insisted that I must purchase some pain medication from the Commissary even though I had already told her that I've tried to do so but the medication never helped regardless of repeated requests for pain reliever, I had to endure the excruciating pain without any pain killer or any other sort of treatment until 4.23.2019 when Dr. Oba prescribed me with sulindac 200mg tab. for pain and a compression garment/sock for the swelling on the ankle...Since then to this day I've been on pain medication and sock for pain and the swelling...But the medication has lost its strength- it no longer relieve me from pain.

89. Moreover: the ADX staff increased the severity and prolonged the healing of my fractured ankle due to their decision to cut corners and ignoring the orthopedist's relevant advise. For example, Jones, the nurse, told me on

15.

## D. STATEMENT OF CLAIMS

9-4-2018 as he brought me the wheel chair and apply a splint on my ankle, that: withing the few coming days the orthapest should exame my injury. But he never did. On 9-12-2018, Dr. Oba, now replaing the splint with a hard cast, per my enquiry, said; the orthopedist couldn't see me but he saw the x-Ray film... and instructed him (oba) to put me in hard cast... He also instructed Dr. Oba that the cast must stay for three weeks, removed, new x-ray taken. After the x-Ray, if the ankle still unhealed, he should put second cast for another three weeks, and then remove and x-ray again, if not heal after two casts in six weeks the surgery must follow. The ADX chose to ignore that.

90. As stated above; the cast remained on me for almost two months, never got changed. The ADX took another x-ray with the cast on, contrary to the orthopedist advice on 9-25-2018 and another one, also with the cast on 10-23-2018. Both of these x-ray purported to show that the fracture was healing.

91. After three or four weeks the cast was pretty much loose, cracked stinks... But was never changed regardless of my requests.

92. The P.A. OSAGIE removed the old rotten and stinking cast on 11-16-2018... The pain of my ankle was still excruciating one and the swelling was at the same size as the day the cast was put in me. I requested for pain medication and physical therapy but OSAGIE refused, saying that my ankle had healed.

93. CURRENT & CONTINUING ANKLE INJURY: As stated above; I still suffers from extreme pain and the swelling on my ankle. Currently, i'am on Meloxicam 7.5 tab. for pain. However, as stated earlier; after 6+ years the pain medication no longer effective. Due to the excruciating pain, I often limps when I walk especially after several minutes of walking. Also, because of pain, for more than a year now I ceased doing any exercise. That's because any exercise involving my feet is almost impossible due to the continuing pain... When I did try to exercise in the past by carefully choosing what to do; the result was further triggering and provoking the old, but unhealed ankle injury. I don't believe that my ankle had heal when the ADX (Osagie) told me so in 2018

94. I've repeatedly continued to complain to the medical staff about the ongoing terrible pain and swelling in my fractured ankle. I've been doing so in every medical interaction for my chronic care assessment, which usually comes every six months or so. The staff refused even to discuss the ankle injury because, I believe it's connected to that malicious assault against me

16.

## D. STATEMENT OF CLAIMS

95. **Other Injuries:** Apart from the fractured ankle, the 8-23-2018 assault on me caused other injures. These include but not limited to:

**Wrists:** My both wrists were left swollen and with excruciating pain. I believed were broken. In the first two months, the pain was at about 8 out of 10. To this day the pain exist and I can't use my wrists in some activities, like some push-ups I used to before the assault. The ADX refused to provide an x-ray until 10-18-2018, when finally my wrists and jaws were x-rayed... The staff told me no injury were found.

**Jaws:** Also received serious enjury... The pain was 8 out of 10 for the first two months as well... I couldn't sleep on my side in the period shortly after the assault... As it was alleged above; Blush and his colleges targeted my arms and jaws... supra 32 (Jaws), 34 (hands/wrists). To this day, my jaws occasionally delivers extrem pain and discomfort especially when I consume hard stuff like nuts and even hard apple. Some days, I wake up while I can't open my mouth wide open. As stated, ADX deliberately delayed the x-ray until 10-16-2018

**Legs:** Both were swollen. Even the left ankle that wasn't actually broken, I thout initially was... and so with my toes... All were discolored for the first few weeks... To this day my toes hurt. About two years ago I foundout that I can no longer jogging even absent fractured ankle. Booth of my feet deliver an extreme pain when I try to jog. My left leg hurts when I take a walk... Some time in 2024 I was provided with a leg brace.

**Bleeding Nose:** Few hours following the assault my nose started to violently bleed and remained so for two or three days. For the next two years I occassionally bled, but I always did when I bent over for any long period of time, like when I write few pages down. Now, my nose bleeds accassionally during long writing, but not as heavely as used to be.

**Back:** Following the assault I experience an excruiating back pain. For the first two to three weaks the pain was at 7 out of 10. Over time it disreased. However, the pain is still here and some times I am forced to pray while seating enstaid of standing. After years of refusal to help, the staff provided me with Lidocaine Patch 5% in 2024.

**Lacerations & Bruises:** with excruciating pain. My left wrist received a serious and deep cuts. To this day; over six-years later the scars remain. That's, as it was detailed earlier, supra at 40; ADX staff used the cuffs, as a tool of torture against me.

96. All of these injures as well as the fracture on my ankle were directly and maliciously caused by the 8-23-2018's assault on me. None existed previously.

17.

## D. STATEMENT OF CLAIMS

## EMOTIONAL INJURIES

97. The malicious assault of 8.23.2018 on me also resulted to multiple and severe emotional injuries. When the assault was carried out I was free of the below mental conditions, and wasn't on any medication for emotional or psychological condition. Now, as I writes and over six years since the assault, I am on three different medications for that purpose, these're: (1) buspirone 15 mg tab; (2) Escitalopram oxalate 10 mg tab. and: (3) Mirtazapine 30 mg tab. And since 2019 to date. At any given time I've been put on atleast two different medications due to the severerity of my conditions. These conditions are summarized below:

98. In early 2019 I was diagnosed with "specified Depressive Disorder" that caused among other conditions; depressive mood, difficulty in concentration and negative ruminative thoughts. Moreover, my conditions continued to worsen, and in 2020 I was further diagnosed with "unspecified mood disorder. Furthermore, in early 2022 I was diagnosed with Posttraumatic stress disorder" (PTSD), following the relevant assessment by the BOP psychology staff that found me experiencing, among many other serious conditions, "severe anxiety" and "severe depression", that caused "suicidal ideation".

99. Based on the above PTSD diagnosis I was qualified for pertcipation in the "Resolve" psychology program. The Resolve is one of several program under the First Step Act and is designed primarily for those prisoners who have traumatic history... The program takes close to a year to complete. I did.

100. As mentioned above, one of the conditions found in me is the suicidal thoughts... I've never had this before the malicious assault of 2018. I've seriously thought of ending my own life due to the many conditions and issues that have resulted from that violent act against me... My life has been completely destroyed ever since. The only thing that holds me back from ending my life is the lack of relevant religious ruling that would allow me to end my own life.

## CLAIM SEVEN: DELIBERATE INDIFFERENCE AGAINST JONES

101. I hereby incorporates by reference the above made allegations: 1-100.

102. JONES, a nurse, came with the "force team" and a camera to perform the medical Assessment (M. Ass) related to the beating, after those beatings against me stopped in the Obs.c.

103. JONES's M. Ass was superficial, not real; I complained to him in front of the camera about the substantial pain all over my body, especially

## D. STATEMENT OF CLAIMS

My right ankle that was already and obviously swollen to about ½ of orange size in either side. Jones noticed the swelling and said he'll comeback.

104. Jones cameback about an hour later without the camera. I complained to him again. I told him that I think my ankle was broken, that I couldn't walk due to the excruciating pain, and that I needed an x-ray to check my jaws, wrists, and especially my ankle. However, Jones refused all these and other requests. Jones said that the swelling will go away themselves, and refused my requests to see the Doctor or at least the P.A. as he refused me any pain medication or even an ice bag.

105. Jones even though my injuries and symptoms including the swellings on my both ankles, on my wrists, one side of my face, cutt by the handcuff on my left wrist, lacerations and bruises all over my body; refused to exame my injuries. In response to my complaint of the excruciating pain, Jones tolme "Mohamed, you must take your trays, this would be alot easier if you eat. He then left. I never saw Jones taking any notes.

106. Moreover, when I asked Jones to Assess me for my H.st. because I had already missed 11 consecutive trays, Jones said that the medical staff were aware of that, but he was only asked to assess me for the use of force encident. Jones ignored my complaint on the then worsening symptoms related to the H.st. See supra at 10 (H.st. symptoms).

107. The injuries sustained, along with my worsening H.st. symptoms, were very obvious, serious, and substantial, easily noticeble and recognizable by any one who saw them; supra at 15. regardless whether he's a medical professional or not. Furthermore, Jones as well as Huddleston, knew that the force was used against me, and in the use of force injuries are to be expected.

108. Jones' and other medical staff's refusal to assess me for my H.st. in that day despite them being required to do so by the relevant BOP's program statement was an attempt to avoid any medical record indicating that I was beaten while I was substantially weak on H.st. Moreover, Jones' refusal in that day as well as Huddleston's and Osagie's subsequent refusal to exame my substantial and obvious injuries, denial of givin me any pain medication, and the denial of ordering an earlier X-ray, were motivated by but not limited to their effort to avoid making any record of my injuries that I sustained from the 8.23.2018 attack. They also wanted to punish me for my being on H.st. and therefore, used my obvious and serious medical needs as a tool to force me out of the H.st.

19.

## D. STATEMENT OF CLAIMS

109. JONES also saw me several more times for the M.Ass. in relation to my H.St. Each time, JONES totally refused to assess my injuries, provide me with pain medication, refer me to the Doctor, or even to issue me with a bag of ice for my ankle; ON 8.27.2018 JONES led HUDDLESTON in conducting M.Ass. for the H.St. JONES saw me hobbling my way to the cell door; cell #106, while my ankle was without sock, obviously exposed to show them the seriousness of my injury. My right ankle was swollen to about 75% of an orange size, while my four small toes were almost black and obviously swollen to about 3/4 of an inch. I complained about the excruciating pain, and that I can't sleep, pray or walk, and that I wish to kill myself... I further asked for pain medication or at least a bag of ice, an x-ray and to see the Doctor. JONES, however, refused each of my request and even to look at my injuries. He only conducted the H.St. assessment, and told me "once you eat, we'll exime you".

110. JONES also led the M.Ass. for the H.St. on 9.3.2018; 9.5.2018, and participated in several other H.St. assessments. In all and each of those times, JONES refused to assist in my serious medical needs.

111. Unrelated to JONES' inaction, on 8.31.2018 I received the x-ray for my right ankle. ON 9.3.2018, JONES told me that the x-ray shows "twisted muscles", there's no fracture. Then, on 9.5.2018, after assessing me for H.St. in the morning, JONES came back in the evening with a wheel chair, and applied a splint on my ankle, saying that the x-ray shows I've sustained a fracture. However, he refused to provide me with any pain medication or even a bag of ice, again.

## CLAIM EIGHT: DELIBERATE INDIFFERANCE AGAINST HUDDLESTON

112. I hereby incorporates by reference the above made allegations; 1-111

113. HUDDLESTON, a Nurse, conducted the first H.St. assessment in my cell ON 8.26.2018. He saw me nabbling in excruciating pain while my ankle was nakedly exposed with an obvious and substantial swellings, as I was telling him that I can't walk, pray in reguler position or sleep due to the excruciating pain on my ankle and, to a less extent, other areas of my body. I begged HUDDLESTON for an x-ray, pain pills or an ice, or at least to reffer me to the Doctor. However, even though he acknowledged that he was aware of the use of force against me few days earlier, HUDDLESTON refused even looking at my obvious and serious injuries. He told me that "I'm here to do the H.St. assessment... any treatment for your injuries that you want, that will come after you come off your H.St. That's all we care about right now.

114. HUDDLESTON apart from hearing my complaints about the substantial pains and that I wish to kill myself due to the unbearable pains, he witnessed the obvious and serious injuries on my body including the swellings and other injuries and symptoms stated earlier. See supra at 109.

115. HUDDLESTON also saw me on other occassions often with JONES or OSAGIE. This include on: 8·27·2018, 8·31·2018, and 9·3·2018. In each of these times, they refused to treat my injuries.

## CLAIM NINE: DELIBERATE INDIFFERANCE AGAINST OSAGIE

116. I hereby incorporates by reference the above made allegations: 1-115.

117. On 8·29·2018(?) OSAGIE, the P·A· ordered me to be escorted from cell#604 to the medical room downstairs for the H·st· m·Ass· OSAGIE witnessed my uncovered, obvious and substantially swollen right ankle... Moreover, he observed my crying-in pain face, heard my complaints about the excruciating pains on my ankles, wrists, jaws and other areas of my body... I further told OSAGIE that because of the pain, I couldn't pray in the regular way or sleep, and that I wish to die. However, OSAGIE only performed the H·st· assessment and absolutely refused to look at my injuries, order for the x-ray, issue pain medication, or even a bag of ice. OSAGIE wanted me to come off H·st· in order to get the treatment including the x-ray. He said "every thing will be alright if you eat".

118. After the H·st· assessment, under OSAGIE's order, I was tightly strapped and tied with the legcuffs right on the broken ankle on the wheel chair, and then pushed to the medical unit for the force feeding. After the feeding, OSAGIE ordered me to walk back and forth with the heavy legcuffs on my painful ankle. When I told OSAGIE that I can't walk, he insisted even though him and every one present could easely observe my crying face due to the pain I was in. For the fear of being beaten again, I had to walk and obey OSAGIE.

119. After the walk, I was once again strapped in the same previously described manner and left on the same fixed, excruciating position for about two hours.

120. On 8·31·2018 OSSAGIE and HUDDLESTON assessed me again for the H·st· They again refused all my requests mentioned above, even though by now my ankle had swollen to about 90% of an orange size.

121. I was then strapped in the same described manner, supra at 118, pushed to the medical unit and then forcefully fed. In this day, I repeated, on camera, my previously repeated requests for an assessment and x-ray, especially for my ankle..., stating that it was broken. OSAGIE initially refused

again, and now claiming that I had been already assessed on the injuries, which I denied.

122. After the force feeding and the above conversation, OSAGIE once again forced me to walk and again rejected my statement that I couldn't. My facial expression was once more ful of crying in pain. But I had to obey.

123. After the forceful walk, OSAGIE very briefly pretended to exame my right ankle. The whole process lasted in a few seconds. He then ordered for the X-Ray.

124. OSAGIE didn't infact exame my ankle following my complaints enfront of the camera. He pretended as such for the purpose of the camera review, later on. OSAGIE, as well as JONES and HUDDLESTON knew all along that I was facing substantial harm. OSAGIE could've ordered for the X-Ray long before that, had he not chosen to be deliberate and indifferent.

125. After ordering for the X-Ray, OSAGIE again recklessly ordered me to be strapped in the same previously stated manner. After two hours of the excruciating pain, I was X-Rayed. After the X-Ray, I was forced to walk back to C-unit, possibly 300-400 mitters away, limping my way to the unit. I couldn't refuse, because I knew I could be beaten again.

126. After the above forced walk my ankle pain and swellings worsen within the next two days, forcing me to cry as I've never before in excruciating pain.

127. ON 9-3-2018 OSAGIE warned me in my cell not to complain again on camera or write to the superior staff. He said he didn't want to see me going through more problems. So, I didn't complain again for fear of another beatings. OSAGIE saw me several more times but refused to give me pain medication. However, once, he ordered a bag of ice for my ankle.

CLAIM TEN: BATTERY AGAINST THE U.S. BASED ON THE ATTACK AGAINST ME THAT TOOK PLACE OUTSIDE CELL #108 & ON THE GROUND. 20-40

128. I hereby incorporates by reference the above made allegations: 1-127.

129. The united state (u.s.) is liable under the colorado law because its agents and employees wantonly and willfuly subjected me to harmfully contacts and attacks. Officer BRUSH initiated these harmful attack in the area between cell #108 and #IA by wantoly and willfuly smashing my head against the wall. see supra at 25. The smashings were painful with excruciating pain. Id at 28. BRUSH and others then punched, kicked me and spate on me, causing more pain and harm. Id 29. Thereafter, possibly 10 or more officers wanto

22.

nly and willfully participated on punching and kicking me...All over my body.Id at 31. BRUSH also, with help from others, wantonly and willfuly placed his working boot on my neck and jaw and then aggressively pressed his boot...causing me further harm and pain.Id at 32. BRUSH also wantonly and willfuly deprived me of breathing.Id at 33. BRUSH and other, with the same motives, attempted to break my legs, hands, toes...etc.Id at 34.Moreover, BRUSH and others made death threats and other threats on me.Id at 36.Possibly, Iwas wantonly and willfuly beaten in that area for several minutes.Id 35. As a result of these and other related wanton and willful acts by the BOP's staff, I sustained serious physical and emotional injuries.Supra at 86-96

## CLAIM ELEVEN: BATTERY AGAINST THE U.S. BASED ON THE ATTACK AGAINST ME THAT TOOK PLACE AFTER I WAS MADE STAND UP & ON THE WAY TOWARDS THE OBSERVATION CELL: 40-52

130. I hereby incorporates by reference the above made allegations;1-129.

131. The U.S. here is further liable under the FTCA per the Colorado law because its agents and employees After committing the above stated battery;supra;129, then continued to wantonly and willfuly beat me after forced me to stand up.Beside kickicking, punching me and spitting on me the similarly wantonly and willfuly jacked me up by the handcuffs from behind, using the cuffs as a method and tool for punishment and thereby, causing me another excruciating pain and harm.Supra at 40.They further, under the same motive, beat me because I couldn't walk straight and because I kept crying and complaining .Id at 41. These wanton and willful attacks caused substantial and serious physical and emotional injuries on me.Supra at 86-96

## CLAIM TWELVE: BATTERY AGAINST THE U.S. BASED ON THE ATTACK AGAINST ME THAT TOOK PLACE INSIDE THE OBSV.CELL:54-74

132. I hereby incorporates by reference the above made allegations:1-131

133. The U.S. here is further liable under the FTCA and the colorado law, because its agents and employees after committing the above batteries;129,131 they continued to wantonly and willfuly beat me inside the obs.c.These beatings were carried out by MILLER, ESPANOZA, and others under Lt's MURTON's orders.Id at 55, 65-66, 73. Beside and along the beatings, ESPANON and others spate on me, cursed me, or otherwise verbally abused me, and pulled my beard, all; wantonly and willfuly...All these violent acts caused me excruciating pain...and long time physical and emotional injuries and damages. Supra at 86-96.

## I: STATEMENT OF CLAIMS
## CAUSES OF ACTION:

**134. EXCESSIVE FORCE CLAIMS (1,3 & 5)** The government and its employees (sued under both; individual and official capacities) violated my constitutional rights under the Eighth Amendment. The Eighth Amendment of the U.S. Constitution; per the Supreme Court's and the Tenth Circuit's precedents, prohibits the malicious and sadistic use of force... These BOP staff did exactly that. They used the excessive force maliciously and sadistically... as I was in full restraints, non-procative, and posed no threat.

**135. FAILURE TO INTERVINE CLAIMS (2,4 & 6)** The government and its three employees also violated my constitutional rights by choosing to standby while other staff maliciously and sadistically attacked me. The three staffs: MURTON, ARMIJO, and OSAGIE, each had realistic opportunity to stop the violence against me but chose not to. In the case of MURTON, himself supervised and directed others on how to effectively beat and harm me. The Supreme Court and the Tenth Circuit's precedents established that the Eighth Amendment rights of a prisoners are violated by those officials who fail to stop others from committing such unnecessary force. That's, the Eighth Amendment requires the staff to stop their collegues' violence against prisoners. These three officials chose to be deliberate and indifferent toward that responsibility.

**136. DELIBERATE INDIFFERANCE CLAIMS (7,8 & 9)** The goverment and its three medical staff; JONES, HUDDLESTON, and OSAGIE have violated my constitutional rights under the Eighth Amendment by being deliberate and indifferent toward my serious and substantial medical needs. The actions and omissions of these three staff constituted serious harm to me by unnecessarily failed to provide timely and edequate medical cares. Their refusal to adequately exame my serious injuries, providing the necessary diagnosis, the treatments including pain relievers... as well as intentionally delaying my ankle x-ray as well as the x-ray of my Jaws and wrists ..., all these were committed deliberately... My serious needs were both substantial and obvious... Per the Supreme Court's and the Tenth Circuit's precedents: these staff violated my constitutional rights... Their acts and omissions increase the injury and prolonged them as well as prolonging the period of healing. The staff for last 6 years refused to adequately treat my ankle... I'm suffering, as a result.

**137. BATTERY CLAIMS (10,11 & 12)** The U.S. goverment is liable per the FTCA under colorado law. That's because the government's agents wantonly and willfully attacked me And their wanton attacks caused a serious harm, injuries and damages on me. Their wanton and willful motive is evident through their verbal abuses and threats.

2A.

**E.     PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you
were incarcerated? ✔ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one
previous lawsuit, use additional paper to provide the requested information for each previous
lawsuit. Please indicate that additional paper is attached and label the additional pages
regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                 Erick Holder, et al

Docket number and court:                 07-cv-02697-MSK-BNB.

Claims raised:                           Several Const. Claims.

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)   Trial, partial relief granted.

Reasons for dismissal, if dismissed:     _____

Result on appeal, if appealed:           _____


**F.     ADMINISTRATIVE REMEDIES**

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal
court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or
judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

        ✔ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

        ___ Yes ___ No (*check one*)

5

G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed
to identify the relief you are requesting, use extra paper to request relief. Please indicate that
additional paper is attached and label the additional pages regarding relief as "G. REQUEST
FOR RELIEF."* Therefore, I am requests the court to grant the following reliefs:

A. An Injunction: based on the three medical claims (Delib. Indiff. claims, 7,8 & 9) that
the government immediately provides me the necessary treatment including the
relevant, and adequate surgery for my right ankle and all appropriate follow-ups
thereafter to ensure proper and complete healing.

B. Declaratory Judgment in all 9-constitutional claims against the named BOP's staff
and the government (or: against either; as permitted by law). The Declaratory
Judgment should declared particularly that the defendants are liable for the
physical and emotional injuries alleged in the complaint.

C. Award of 2 million dollars for the three FTCA-Battery claims.

D. Filing fees & other expenses: copying, mailing...etc, and attorney fees if an attorney will
help in any way in the case

E. If applicable: Nominal & Punitive damages..
F. All and any other additional relief this court finds appropriate.

H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this
complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746;
18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending or modifying
existing law; (3) the factual contentions have evidentiary support or, if specifically so identified,
will likely have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_Mohammed_
(Plaintiff's signature)

_January 14, 2025_
(Date)

(Form Revised December 2017)

26

EXH: 2

## DECLARATION OF MAILING:

I, Khaifan Kh Mohamed declares under penalty of perjury, pursuant to 28 U.S.C.§ 1746 that on January 14, 2025 have submitted for mailing my motion for leave to file my 3rd. Amend. complaint along with the proposed amended complaint as attachment. The legal mail, I submited to the appropriate staff, with sufficient postages for first class mailing, address to:

Office of the clerk
U.S.D.C,
901-19th St., Room A 105
Denver, CO 80294-3589.


January 14, 2025
Khaifan Kh Mohamed
U.S.P- Florence, Box 7000
Florence, CO 81226



Legal mail

Office of the clerk
United States District Court
901-19th st. Room A 105
Denver, Co 80294-3589

Khalfan Kh. Mohamed #44623-054
US-P. Florence P.O box 7000
Florence, Co 81226

Legal mail

JAN 15 2025

FEDERAL PRISON CAMP
P.O. BOX 5000
FLORENCE, COLORADO 81226

DATE: _____

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

legal mail