Exh: 1:

Attach. 1:

Defendant's Dicl. of Expert Witnesses.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02516-RBJ-MDB

KHALFAN KHAMIS MOHAMED,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

**DEFENDANT'S DISCLOSURE OF EXPERT WITNESSES
PURSUANT TO FED. R. CIV. P. 26(a)(2)**

---

Pursuant to Fed. R. Civ. P. 26(a)(2)(C), the United States, through undersigned counsel, hereby discloses the following Federal Bureau of Prisons ("BOP") employees as non-retained experts who are not specifically employed to provide expert testimony and whose duties do not regularly involve giving expert testimony:

    1.    **Captain James Sturgill.** Captain Sturgill is the Complex Captain of the Federal Correctional Complex in Florence, Colorado ("FCC Florence"). He formerly held positions at the Federal Correctional Institution ("FCI") in Victorville, California; USP Thomson in Illinois; and USP McCreary in Kentucky. He has been the Complex Captain at FCC Florence since October 2022. He has been employed with the BOP in positions of increasing responsibility for eighteen years.

1

In his current position, Captain Sturgill is responsible for the overall safety and security of all correctional institutions at FCC Florence. During his employment with the BOP, Captain Sturgill has received various trainings on uses of force on inmates and has provided training to BOP correctional officers on uses of force. Based on his duties, responsibilities, and experience, Captain Sturgill has extensive knowledge of, familiarity with, and expertise concerning use of force and related BOP policies.

**The subject matter on which Captain Sturgill is expected to present evidence (Fed. R. Civ. P. 26(a)(2)(C)(i)):**

Captain Sturgill is expected to provide testimony concerning policies and practices at FCC Florence that are relevant to Plaintiff's claims, and his experience with the implementation of those policies. These may include, for example, policies and practices regarding immediate uses of force and preservation of video footage of immediate uses of force.

**Summary of the facts and opinions to which Captain Sturgill is expected to testify (Fed. R. Civ. P. 26(a)(2)(C)(ii):**

Captain Sturgill is expected to testify about the BOP policies concerning immediate uses of force, including BOP Program Statement 5566.06 and the use of force model. Specifically, BOP Program Statement 5566.06 Section 5(a) provides that staff may immediately use force and/or apply restraints when an inmate becomes violent or displays signs of imminent violence in a manner that "constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order." Captain Sturgill will testify about examples of signs that inmates display that indicate imminent violence, including turning their bodies, clenching, and attempting to break away during escorts. Captain Sturgill will further testify that BOP policy

allows staff to use the "amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage, and to ensure institution security and good order." *Id.* at Section 1 (citing 28 C.F.R. § 552.20); *see also id.* at Section 6(c)-(d). Staff must use reasonable correctional judgment in determining how to respond when an inmate displays signs of imminent violence. Staff may respond to a disruptive inmate with or without the direction or presence of a supervisor. *Id.* at Section 5(a). Staff may temporarily apply restraints to an inmate to prevent the inmate from hurting himself, staff, or others. *Id.* at Section 6(d). It is imperative that staff respond to, and obtain control of, every disruptive situation as swiftly and decisively as possible to effectively maintain the safe, secure, and orderly operation of the facility. Any delays in responding to disruptive behavior can result in physical injury and/or destruction of government property. Captain Sturgill will also testify about the specific security considerations within the United States Penitentiary—Administrative Maximum ("ADX") facility. Those specific considerations include, but are not limited to, the challenges of housing BOP's most violent, disruptive inmates in a manner that protects the safety of staff and inmates while also providing life enhancing programs.

Captain Sturgill is further expected to testify that he reviewed the two videos of the use of force against Plaintiff that occurred on August 23, 2018 (Bates Nos. USA000406-407), and he will testify about his opinions about the use of force. Captain Sturgill will testify that the video footage shows staff escorting Plaintiff while maintaining two points of contact in accordance with BOP Policy. The video footage then shows Plaintiff attempt to pull away from staff and appear to resist while one of the officers is pointing in the opposite direction, towards the wall. It appears as though Plaintiff was being disruptive and staff told him to face the wall, which is the

3

proper technique to try to deescalate the situation when an inmate is being disruptive. Plaintiff continued to try to pull away from the officers, and in response the officers placed Plaintiff against the wall. The officers held Plaintiff against the wall. Plaintiff can be seen moving around after he is placed against the wall. The second officer applied restraints to Plaintiff's ankles. Additional officers then responded to the scene.

The videos depict the officers beginning to escort Plaintiff down the corridor. It then appears that Plaintiff tried to dig his heels in and lower his body weight, which is a typical tactic inmates use to resist officers. There appears to have been a scuffle as officers tried to regain control of Plaintiff, and 2-3 officers fell to the floor along with Plaintiff. The officers then regained control of Plaintiff on the ground. The videos do not depict any officer punching, kicking, or spitting on Plaintiff. The videos also do not depict any officer placing their shoe(s) on Plaintiff's neck or attempting to break any of Plaintiff's limbs.

Captain Sturgill will testify to his opinion that the correctional officers had no reasonable alternative but to use immediate force to regain control of Plaintiff. Plaintiff's behaviors in pulling away from officers, resisting the escort, and attempting to move around while he was being held against the wall put the officers at risk of physical harm and cannot be tolerated in a prison setting, particularly at the ADX. It was imperative that the officers regain control of Plaintiff as quickly as possible before the situation escalated further.

Captain Sturgill will further testify to his opinion that based on his review of the video footage, the force used against Plaintiff was not excessive, and the use of force complied with BOP policies. He will testify that the use of force was an appropriate response to Plaintiff's display of signs of imminent violence, and that the use of force was conducted in accordance

4

with BOP policies and principles of sound correctional management and judgment. He will also testify that the video footage does not support Plaintiff's allegations that he was beaten, kicked, punched, and/or tortured.

Finally, Captain Sturgill is expected to testify about BOP's Electronic Posted Picture File ("EPPF"). He will testify that the EPPF is a system by which BOP identifies inmates who pose a particular threat to staff or other inmates, including a history of assault upon a staff member. Pursuant to BOP Program Statement 5510.11, all correctional staff are required to certify monthly that they have reviewed all inmates on the EPPF who are housed at their institution. Captain Sturgill will testify that he has reviewed records to which he has access in the course of his duties at the BOP that show that, at the time of the use of force, Plaintiff was listed on the EPPF. Captain Sturgill will testify that the EPPF included information about Plaintiff's involvement in a serious assault on a staff member at another institution which left the officer blind in one eye. Finally, Captain Sturgill will testify that Plaintiff's history of assaulting a staff member would have informed a reasonable officer's reaction to Plaintiff's displays of imminent signs of violence.

2.     **Dr. Christopher Betts.** Dr. Betts is the Clinical Director for the United States Penitentiary in Florence, Colorado ("USP Florence"), and has served in that role since August 2024. Dr. Betts has been employed by the BOP since 2019 in positions of increasing responsibility. He previously worked at FCI Oxford in Wisconsin and in FCI Milan in Michigan. He received his medical degree in 2012 from Ross University.

5

As Clinical Director of USP Florence, Dr. Betts is responsible for oversight of the operations of the Health Services Department to ensure proper care of all patients. In connection with his employment with the BOP, Dr. Betts has access to records maintained in the ordinary course of business by the BOP, including inmate medical records.

**The subject matter on which Dr. Betts is expected to present evidence (Fed. R. Civ. P. 26(a)(2)(C)(i)):**

Dr. Betts is expected to testify about his previous examinations of Plaintiff, his opinions about the current status of Plaintiff's injuries from the August 23, 2018, use of force, and historical information from Plaintiff's medical records (to which Dr. Betts has access in the course of his duties as Clinical Director).

**Summary of the facts and opinions to which Dr. Betts is expected to testify (Fed. R. Civ. P. 26(a)(2)(C)(ii):**

Dr. Betts is expected to testify about the history of Plaintiff's injuries from the August 23, 2018, use of force based upon his review of Plaintiff's medical records. Specifically, he will testify that those records reflect that Plaintiff sustained a fractured ankle, that the BOP treated the fractured ankle, and that the fracture healed. He will testify that the records do not reflect that Plaintiff sustained any other significant injuries from the August 23, 2018, use of force.

With respect to more recent complaints of pain, Dr. Betts will testify that Plaintiff's medical records reflect that he complained of intermittent pain in his leg and ankle in March 2022. Plaintiff reported to BOP medical staff that he had previously been prescribed medication that was effective, and the medical records note that he agreed with a plan to put him back on that same medication. The medical staff advised Plaintiff to notify them if the medication was

6

not effective. Approximately one month later, in April 2022, the medical records reflect that Plaintiff reported that he still had pain in his right leg, but the medical records describe the location of that pain as the "upper right back" of his leg—not his ankle. The musculoskeletal examination for that encounter was of Plaintiff's knee. BOP medical staff started him on a new medication to manage the pain.

Dr. Betts will testify that Plaintiff's medical records further reflect that in October 2022, Plaintiff complained of sharp pain in his ankle that increased with weight bearing activities but decreased with medication. Medical staff noted that his ankle was stable upon examination and that he had full strength in his lower extremities, but they did note tenderness in his ankle. The records reflect that medical staff planned to follow up with a plan for pain medication.

Dr. Betts will testify that Plaintiff's medical records further reflect that in February 2023, Plaintiff again reported pain in his right leg, but the medical records note that he specifically reported pain in his right thigh from an injury that was unrelated to the previous ankle fracture. Plaintiff was prescribed medication for the pain. One month later, Plaintiff had a chronic care appointment and again reported intermittent pain in his right leg, which this time he attributed to the previous ankle fracture, but he denied current pain. Plaintiff requested to be prescribed an anti-inflammatory medication that he had previously been on, and medical staff prescribed the requested medication.

Dr. Betts will testify that there are no records of additional complaints about ankle pain for more than a year, until May 2024, at which time Plaintiff again reported pain from the previous ankle fracture. His gait was noted to be normal without a limp. BOP medical staff re-started Plaintiff on a medication that he reported had previously been effective, and they also

7

prescribed him a lidocaine patch (a topical anesthetic). Approximately one month later, the medical records reflect that Plaintiff reported that the medication was helping his ankle pain. In November 2024, Plaintiff complained of swelling in his lower extremities, but denied any pain. That complaint does not appear to have been related to the previous ankle fracture.

On March 21, 2025, Dr. Betts saw Plaintiff for a chronic care appointment. Dr. Betts will testify that he examined Plaintiff's ankle, and that he had full range of motion in his ankle and no swelling, but the ankle was tender. Dr. Betts ordered an x-ray of Plaintiff's ankle, renewed his prescription for an anti-inflammatory medication and the lidocaine patch, and also prescribed Tylenol. Dr. Betts will testify that the x-ray of Plaintiff's ankle confirmed that the previous fracture is healed, there is no current fracture, and there is no joint malalignment. Nevertheless, Dr. Betts arranged for Plaintiff to be seen by a local orthopedist, Dr. Patterson. Dr. Betts will testify that the records from Dr. Patterson's examination reflect that Dr. Patterson recommended an ankle brace, and that the BOP has provided Plaintiff with the brace.

3. **Dr. Jacob Patterson.** Dr. Patterson is an orthopedic surgeon at St. Thomas More Orthopedic Clinic in Cañon City, Colorado. He earned his medical degree from the University of Texas in 1991. The Bureau of Prisons regularly uses contract physicians, often from St. Thomas More Orthopedic Clinic, to examine and treat inmates for orthopedic issues requiring specialized care. Dr. Patterson examined Plaintiff's right ankle on May 13, 2025.

8

**The subject matter on which Dr. Patterson is expected to present evidence (Fed. R. Civ. P. 26(a)(2)(C)(i)):**

Dr. Patterson is expected to testify about his examination of Plaintiff on May 13, 2025, his discussion with Plaintiff during that examination, and his opinions and conclusions about Plaintiff's complaints of pain in his right ankle.

**Summary of the facts and opinions to which Dr. Patterson is expected to testify (Fed. R. Civ. P. 26(a)(2)(C)(ii):**

Dr. Patterson is expected to testify to the facts, conclusions, and opinions set forth in his clinical note dated May 13, 2025, which has been produced to Plaintiff at USA002226-2227. Specifically, Dr. Patterson is expected to testify that Plaintiff reported experiencing pain in his right ankle when he exercises at a level of 6-10, and that he did not report any other orthopedic complaints. Dr. Patterson is expected to testify that the x-rays of Plaintiff's ankle show a previous fracture in the right ankle that is well healed, and that his examination revealed no obvious deformities of the right ankle. Dr. Patterson did note some chronic swelling in the right lateral ankle, and some tenderness on the lateral side of the right ankle. Dr. Patterson is expected to testify that he concluded that Plaintiff has mild posttraumatic degenerative joint disease of the right ankle, and that he recommended that Plaintiff use a lacer-type ankle brace that can be worn under a shoe and requires no metal implants.

DATED: July 25, 2025.

> PETER MCNEILLY
> United States Attorney
>
> *s/ Jennifer R. Lake*
> **Jennifer R. Lake**

9

Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0301
Fax: 303-454-0407
jennifer.lake@usdoj.gov

Counsel for Defendant

## CERTIFICATE OF SERVICE

      I hereby certify that on July 25, 2025, I caused the foregoing document to be sent by U.S. mail to the following:

Khalfan Khamis Mohamed (U.S. mail)
Reg. No. 44623-054
USP Florence - High
P.O. Box 7000
Florence, CO  81226

                                        *s/ Jennifer R. Lake*
                                        Jennifer R. Lake
                                        United States Attorney's Office